**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

EDWARD A. BILISKI,                          :
    Plaintiff,                          :
                                               :
        v.                          : Civil Action No. 06-740-GMS
                                               :
RED CLAY CONSOLIDATED SCHOOL                 :
DISTRICT BOARD OF EDUCATION, *et al.,*       :

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com
Attorney for Plaintiff

Dated: October 29, 2007

## TABLE OF CONTENTS

                                                                **PAGE**

**TABLE OF AUTHORITIES**                                          **I**

**NATURE AND STAGE OF PROCEEDINGS**                              **1**

**SUMMARY OF ARGUMENT**                                          **2**

**STATEMENT OF FACTS**                                           **3**

**STANDARD OF REVIEW**                                           **7**

**ARGUMENT**

   **I. THE PLAINTIFF HAD A "PROPERTY INTEREST" IN
      CONTINUED EMPLOYMENT WITH THE DEFENDANTS.
      THE PLAINTIFF COULD  NOT BE "DEPRIVED" OF THIS
      PROPERTY INTEREST BY THE DEFENDANTS UNLESS THE
      DEPRIVATION WAS ACCOMPANIED BY PROCEDURAL
      SAFEGUARDS WHICH SATISFIED THE MINIMUM
      REQUIREMENTS OF PROCEDURAL DUE PROCESS UNDER
      THE FOURTEENTH AMENDMENT**                                 **9**

**CONCLUSION**                                                   **18**

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Alexander v. Polk* , 750 F.2d 250 (3d Cir. 1984)                                16

*Anapol v. University of Delaware*, 412 F. Supp. 675 (D. Del.1976)              12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)                          7

*Bishop v. Wood*, 426 U.S. 341 (1976)                                           10

*Board of Regents v. Roth*, 408 U.S. 564 (1972)                                 10

*Celotex Corp. v. Catrett*,  477 U.S. 317 (1986)                                8

*Childers v. Joseph*, 842 F.2d 689 (3d Cir. 1988)                               7

*City of Newark v. Unemployment Ins. Appeal Bd.*,
802 A.2d 318 (Del. Super. 2002)                                                16

*Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532 (1985)                       10

*Elmore v. Cleary*, 399 F.3d 279 (3d Cir. 2005)                                 11

*Fuentes v. Shevin*, 407 U.S. 67 (1972)                                         14

*Gilbert v. Homar*, 520 U.S. 924  (1997)                                        12

*Hawkins v. Board of Public Education*, 468 F.Supp. 201 (D. Del. 1979)          10,13,14

*Hickey v New Castle County*, 428 F.Supp. 606 (D. Del. 1977)                    13

*Hugh v. Butler County Family YMCA*, 418 F.3d. 265 (3d Cir. 2005)               7,8

*Jones v. UPS*, 214 F.3d 402, (3d Cir. 2000)                                    8

*Knotts v. Bewick*,  467 F.Supp. 931 (D. Del. 1979)                             12,13

*Marshall v. Lauriault*, 372 F.3d 175 (3d Cir. 2004)                            10

*Kelly v. Sayreville*, 107 F.3d 1073 (3d Cir. 1997)                             11

*Mathews v. Eldridge*, 424 U.S. 319 (1976)                                      12

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)              7

*Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163 (3d Cir. 1999)              16

*Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003)                      11

*Washington v. Autozoners, Inc.*, 452 F.Supp.2d 546  (D. Del. 2006)            7

**CASES**                                                                      **Page**

*Zinermon v. Burch*, 494 U.S. 113 (1990)                                         9

**STATUTES AND COURT RULES**

USCS Const. Amend 14, Sec. 1                                                     9

2 U.S.C. §1983                                                                   9

Fed. R. Civ. P. 56©                                                             7

Fed. R. Civ. P. 56(e)                                                           8

## NATURE AND STAGE OF PROCEEDINGS

The Plaintiff, Edward Biliski ("Biliski") was formerly employed as a computer technician by the defendant Red Clay Consolidated School District ("District") and defendant Red Clay Consolidated School District Board of Education ("Board"). Biliski's claims against the District and the Board arise under 42 U.S.C. §1983 based on the defendants' failure to comply with the minimum requirements of Procedural Due Process under the Fourteenth Amendment in connection with the termination of Biliski's employment . See, Complaint (D.I. 1), §15 through §17 (A-). The defendants have filed an Answer to the Complaint which generally denies all of the material allegations in the Complaint. (D.I. 15) (A-). Discovery has been completed. On October 29, 2007, Biliski filed a Motion for Summary Judgment. This is the Plaintiff's Brief in support of his Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

1. Based on the Defendants' personnel regulations and policies, the plaintiff's employment could not be terminated except for "just cause." That expectation was legally sufficient to create a "property interest" in continued employment that was entitled to protection under the Fourteenth Amendment.

2. The defendants "deprived" the plaintiff of his property interest in continued employment in violation of his rights under the Fourteenth Amendment when they terminated his employment without providing him with a pre-termination hearing.

3. The doctrine of "collateral estoppel" precludes the defendants from re-litigating the issue whether they had "just cause" to terminate plaintiff's employment.

## STATEMENT OF FACTS

The historical facts which led to the termination of Biliski's employment are not in dispute. On or about March 20, 2001, the plaintiff was hired by the defendants Board/District as a computer technician.  Plaintiff's employment with the Board/District continued from March 20, 2001 through August 8, 2006.  On August 8, 2006, plaintiff was called off his work assignment and directed to go to the District's human resources office.  When plaintiff arrived at the office, he met with his immediate supervisor, Ted Ammann ("Ammann") and Debra Davenport ("Davenport"), the District's Manager of Human Resources. (Complaint, §10) (A2); (Answer, §10) (A6).

At this meeting, plaintiff was given a series of three Memos, which contained allegations relating to plaintiff's job performance.    Each Memo was from Ammann and was dated August 7, 2006.[1]  At the conclusion of the meeting, plaintiff was handed a letter from Davenport dated August 8, 2006.  The letter stated:

> This letter is a followup to the meeting held today with me and Mr. Ammann.  Due to poor work performance, your name will be submitted to the Board of Education for termination.  If approved your date of termination will be effective August 11, 2006.

In the Complaint, Biliski alleged that he did not receive any advance notice that the meeting was going to take place or that the District intended to terminate his employment (Complaint, §12) (A2-A3).  Although the allegations in Paragraph 12 are "denied" by the defendants, they have not produced any evidence to rebut the allegations in Paragraph 12.  At this meeting, according to Biliski, Ammann read the memos aloud  to him.  When Biliski tried to respond to the allegations, Davenport told him to be quiet and listen to Ammann.  According to Biliski, he wanted to rebut the allegations, but was not given any opportunity to do so. Biliski then became very agitated and was told to leave the building, which he did. At that point, Biliski believed that there was no recourse to appeal Davenport's decision to fire him. (Biliski, pp. 191-195) (A12-A13).

---

[1] These Memos are reproduced in the Appendix at A57 through A59.

After the meeting on August 8, 2006, Biliski did not receive any further notices or communications from the defendants concerning his termination. (Biliski, pp. 226-227) (A15). After he returned home on August 8th, Biliski re-read the letter (A33) that Davenport gave him and realized that the Board had to approve his termination. (Biliski, pp. 195-196) (A13). Biliski then made phone calls to the individual Board members and left messages on their answering machines to ask them not to fire him until they heard his side of the story. He received return calls from three of the Board members. (Biliski, pp. 7-10) (A9-A10). On August 16, 2006, Biliski had delivered to the District Office a written response that he had composed to the allegations which led to his firing. (A34 through A48). Biliski's response was given to Diane Dunmon ("Dunmon"), who made copies of the document and had it distributed to the Board members. (Dunmon, p. 13) (A18).[2]

According to the defendants, all terminations of District employees have to be approved by the Board. (Davenport, p. 29) (A31); (Becnel, p.6) (A22).[3] The decision to terminate an employee is generally initiated by the District who makes a formal recommendation to the Board. Although the Board has the final say on the subject, the Board generally follows the recommendation made by the District. (Becnel, pp. 4-6) (A21-A22). In Biliski's case, Davenport testified that she received the three Memos dated August 7th from Ammann, attended the meeting With Ammann and Biliski on August 8th, and then sent a recommendation to Dunmon that Biliski be fired. Also, according to Davenport, she probably gave the August 7th letters to Dunmon, but she does not have a specific recollection of doing that. (Davenport, pp. 22-27) (A30-A31). According to Dunmon, she received a "form" from Davenport which recommended that Biliski be fired. The form itself did not specify any reasons for the termination. According to Dunmon, if an employee is pending termination, she would typically discuss the matter with Davenport. In Biliski's case, she does not have any specific recollection of any discussions, other than the fact that there were "performance issues." (Dunmon,

---

[2] Dunmon is the District's Deputy Superintendent and is Davenport's direct supervisor. (Dunmon, pp. 2-3) (A16).

[3] Irwin J. Becnel, Jr. ("Becnel") has been a member of the Red Clay Board of Education for 17 years. He has been President of the Board since 2003. (Becnel, p.3) (A21).

pp. 5-6) (A16-A17).   Dunmon never met with or spoke to Biliski concerning any alleged performance issues. (Dunmon, p. 6) (A17).  After, she received the "form" from Davenport, Dunmon prepared a recommendation to the Superintendent and Board that Biliski be fired. (Dunmon, p.4)(A16).   The Board is not given any other documentation concerning the recommendation. (Dunmon, p. 9) (A17); (Becnel, p. 6) (A22).

The letter dated August 8, 2006 that Davenport gave to Biliski (A33) contained no information as to the date, time or place of the Board meeting. (Dunmon, pp. 11-12) (A18).  Also, Biliski was not provided with any notice that the subject of his termination would be taken up by the Board on any particular date and time. (Biliski, pp. 226-227) (A15). As it turned out, the subject of Biliski's termination was placed on the Agenda for the Board meeting that took place on August 16, 2007. (A54).[4]  The recommendations received by the Board from the District are reviewed and voted on by the Board in an "executive session" that takes place before the public meeting of the Board. (Becnel, p. 9) (A22).  In cases involving a termination, the Board typically would get a verbal report of the reasons for the termination, but not any documentation. (Becnel, pp.6-7) (A-).    The discussions that take place in the "executive session" are not recorded. (Becnel, p. 12) (A23); (Dunmon, p. 9) (A17).   Biliski was not present for the Board meeting. (Biliski, p. 37) (A11). According to Becnel, Biliski was not invited to appear in person before the Board and Becnel did not know if he was present at the meeting. (Becnel, p. 13) (A23).  Becnel also did not know if Biliski was provided with any notice of the meeting or executive session. (Becnel, p. 10) (A23).  According to Becnel, there was some discussion concerning the letter Biliski sent to the Board, but Becnel believed that Biliski was not disputing the reasons for the termination. (Becnel, pp. 14-15) (A24). On August 17, 2006, a letter was sent to Biliski informing him that the Board had terminated his

---

[4] At the time of Biliski's termination, the only notification of meetings of the Board and the agenda for the meeting consisted of notices that were posted in each school building in the District. (Becnel, pp. 7-8) (A22).  The testimony of the defendants is conflicting as to whether personnel matters are listed in the public agenda.  According to Dunmon, personnel matters do not appear on the publc agenda. (Dunmon, pp. 7-8) (A17).   According to Becnel, the entire agenda, including personnel matters, is posted. (Becnel, pp. 7-8) (A22).

employment. (A55).[5]  On August 21, 2006, Dunmon received a letter from Biliski requesting a meeting concerning his termination. (A56).  Dunmon did not respond to Biliski's request. (Dunmon, pp. 16-17) (A19).

---

[5] According to Biliski, he did not receive that letter. (Biliski, p. 197) (A13) .

## STANDARD OF REVIEW

The summary judgment standard is well established.  Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See, Fed. R. Civ. P. 56© .  A fact is "material" if it might affect the outcome  of the suit under the governing substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725, pp. 93-95 (1983).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if evidence exists from which a reasonable juror could find in favor of the non-moving party. *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988); *Washington v. Autozoners, Inc.*, 452 F.Supp.2d 546, 550 (D. Del. 2006).  In determining whether a dispute concerning a "material fact" is "genuine," "the judge's function is not himself to weigh the evidence and determine the matter, but to determine whether there is a genuine issue for trial". *Anderson*, 477 U.S. at 249; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) ("[W]e must draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence"):

> In reviewing the record as a whole, we must "disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"

*Id.*, at 151 (internal citations omitted); also see, *Hugh v. Butler County Family YMCA*, 418 F.3d. 265, 267 (3d Cir. 2005) (on summary judgment, a court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor).

To survive a motion for summary judgment, the non-moving party cannot solely rest upon its allegations in the pleadings, but rather must set forth specific facts such that a reasonable jury

could find in the non-moving party's favor, thereby establishing a genuine issue of fact for trial.  Fed. R. Civ. P. 56(e); Accordingly, a party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Rather, the party opposing the motion "must go beyond the pleadings  and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla. *Hugh*, 418 F.3d at 267.

## ARGUMENT

### I. THE PLAINTIFF HAD A "PROPERTY INTEREST" IN CONTINUED EMPLOYMENT WITH THE DEFENDANTS.  THE PLAINTIFF COULD NOT BE "DEPRIVED" OF THIS PROPERTY INTEREST BY THE DEFENDANTS UNLESS THE DEPRIVATION WAS ACCOMPANIED BY PROCEDURAL SAFEGUARDS WHICH SATISFIED THE MINIMUM REQUIREMENTS OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

---

**Existence of an Actionable Procedural Due Process Claim**

Sec. 1 of the Fourteenth Amendment to the United States Constitution provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of law;** nor deny to any person within its jurisdiction the equal protection of the laws.

USCS Const. Amend 14, Sec. 1(emphasis added).

In this case, Biliski's federal claim is that he was deprived of a "property interest" associated with his employment without the procedural due process required by the Fourteenth Amendment.

Such a claim is actionable under 42 U.S.C. §1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See, *Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990) (deprivation of property without providing procedural due process is actionable under §1983).

### The "Under Color of Law" Requirement

The defendants do not deny that their actions with respect to plaintiff's termination were taken under color of state law for purposes of 42 *U.S.C.* §1983.  The defendants District and Board are entities established by and operating under state law. (Complaint, §5 and §8) (A1-A2); (Answer,

§5 and §8) (A6).  Furthermore, it is clear that all of the actions taken by the defendants or their employees were taken within the scope of their employment under color of state law.  See, *Hawkins v. Board of Public Education*, 468 F.Supp. 201, 207 n.6 (D. Del. 1979) (imposing liability on defendants school district and Board under §1983 for violations of procedural due process in firing school employee).

### Elements of a Procedural Due Process Claim Under §1983

### (1) Existence of a Property Interest

The Supreme Court has held that, in order to prevail on a Fourteenth Amendment due process claim, a plaintiff must show that defendants deprived him of liberty or property. See *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972);  *Marshall v. Lauriault*, 372 F.3d 175, 185 (3d Cir. 2004) (When a plaintiff challenges the actions of a state on due process grounds, we are obligated to make two determinations: "whether the State has deprived the claimant of a protected property interest," and "whether the State's procedures comport with due process").

Legitimate claims of entitlement to "property" are not created by the Constitution; rather, they are created by state laws that "secure certain benefits and that support claims of entitlement to those benefits." *Roth.*, 408 U.S. at 577;  see also, *Bishop v. Wood*, 426 U.S. 341 (1976).  In order to bring a claim for violation of procedural due process based on discharge from a job with a public employer, a claimant must prove that he had a constitutionally protected property right in continued employment. See, *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985).   In order to have such an interest, one must have "more than a unilateral expectation" or "an abstract need or desire" for it.  Rather, one must have "a legitimate claim of entitlement to it."  Such claims are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577.  In the public sector, while at-will

employment is not generally considered a property interest,[6] employment contracts that contain a "just cause" provision create a property interest in continued employment. See, *Kelly v. Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997) (finding "property interest" in continued employment where state law provided that "no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force").

In this case, the defendant Board has adopted formal personnel policies. (Becnel, pp. 15-17) (A20). The Board's personnel policies are divided into three subdivisions. Section "GB" contains policy topics that pertain to all employees. Section "GC" contains policies that pertain to "professional personnel" who hold educational certifications. Section "GD" contains policies pertaining to all other personnel. (A60). Included among the Board's personnel policies is the following:

File: GDPD

SUSPENSION AND DISMISSAL OF CLASSIFIED STAFF MEMBERS

It will be the policy of the Board to strive to assist personnel in every possible way to adjust to their positions and to perform their duties satisfactorily. Every reasonable effort will be made to avoid dismissing personnel at any level.

No employees will be dismissed except for just and reasonable cause, and only after an investigation has been conducted and written and signed charges have been filed with the Board. The Board if it decides to proceed on the charges, will notify the employee in writing of the charges and will provide an opportunity for a hearing.

(A64).

The above policy, which includes "just cause" language, mandates the conclusion, under *Kelly v. Sayreville*, that Biliski had a "property interest" in continued employment by the District and Board. *Cf., Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) ("under controlling Pennsylvania

---

[6] See, *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003).

law, a 'public employee takes his job subject to the possibility of summary removal by the employing authority.  He is essentially an employee-at-will' " ).[7]

### (2) Adequacy of Procedures Used by the Defendants

The second and final element of Biliski's procedural due process claim under §1983 requires the court to determine whether the procedures actually employed by the defendants comported with the requirements of the Constitution.   The fundamental requirement of due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  In making this determination, the court must balance (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest." *Gilbert v. Homar*, 520 U.S. 924, 931-932 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Where the deprivation involves the permanent loss of employment, the minimum requirements of due process are well established.  In the absence of unusual circumstances, if an employee has a property interest in continued employment, as here, that employee is entitled to a pre-termination opportunity to tell his side of the story to the decision-maker.  In *Anapol v. University of Delaware*, 412 F. Supp. 675, 678 n.8 (D. Del.1976), the court determined that the minimum requirements of due process included: (1) clear notice of the charges being considered, (2) a reasonable time interval to marshal facts and evidence, (3) an explanation of the substance of the evidence supporting the charges, and (4) an opportunity to present (plaintiff's) side of the case in a manner which will permit the decision maker to weigh both sides.  These requirements have been consistently adhered to in subsequent decisions in the District of Delaware.  See, *Knotts v. Bewick*,

---

[7] In this case, the defendants have strived mightily to claim that Biliski is really an "employee-at-will," notwithstanding the language of File GDPD quoted above.  See, Dunmon, pp. 18-19 (A20);  Becnel, pp. 21-22 (A26); Davenport, pp. 29-30 (A31-A32).  Becnel agreed that the term "employee-at-will" does not appear anywhere in the Board's personnel manual. (Becnel, p. 23) (A26).

467 F.Supp. 931, 934-935 (D. Del. 1979); *Hickey v New Castle County*, 428 F.Supp. 606, 610 (D. Del. 1977); *Hawkins v. Board of Public Education, supra*, 468 F.Supp., at 208.

In this case, it is clear that the procedures employed by the defendants did not meet *Anapol's* minimum due process requirements. On August 8, 2006, Biliski was summoned off the job and was directed to attend a meeting with Ammann and Davenport. There is no evidence in the record that Biliski received any advance notice that this meeting was going to take place, or that the purpose of the meeting was to terminate his employment. At this meeting, he was given a copy of three Memos, (A57 through A59), all dated August 7, 2006, which contained allegations of poor job performance. When Biliski attempted to speak up to defend himself, he was told to be quiet and listen to Ammann. (Biliski, pp. 191-192) (A12). It is also clear that the purpose of this meeting was to terminate Biliski's employment. At the conclusion of the meeting, Biliksi was handed a fourth Memo, dated August 8, 2006, (A33), informing him that his name would be submitted to the Board for termination. (Davenport, pp. 24-25) (A30). These procedures clearly did not comport with the minimum requirements of due process. See, *Hawkins*, 468 F.Supp., at 209-210.[8] Although the August 8th letter informed Biliski that the District was recommending to the Board that his employment be terminated, the letter did not inform Biliski that he could appear before the Board to contest his termination. The letter also did not inform Biliski as to the time and place of the Board

---

[8] In this case, as in *Hawkins*, Biliski's termination was not "final" unless it was approved by the Board. (Davenport, p. 29) (A31); (Becnel, p.6) (A22). In personnel matters, however, the Board generally follows the recommendation made by the District. (Becnel, pp. 4-6) (A21-A22). Thus, while the Board may have the final say on the subject, in reality, the Board has delegated the fact-finding process leading to a termination recommendation to the District.

meeting.[9]  Such total lack of notice or opportunity to be heard by the Board **before he was terminated** also violated *Anapol's* minimum requirements of due process. *Id.*, at 210-211.

In this case, the defendants will no doubt argue that the pre-termination procedures required under *Anapol* and *Hawkins* were satisfied in this case because sometime on the day of the Board meeting, the District provided to the Board members a copy of Biliski's letter to the Board dated August 16, 2006. (A34 through A48).  Any such argument should be rejected.  "(T)he essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property . . ." *Fuentes v. Shevin*, 407 U.S. 67, 97 (1972).   In this case, while it may be true that Biliski's letter was given to the Board members, it is equally true that the Board members were most likely confused about the purpose of the letter, including the fact that Biliski disputed the validity of the District's reasons for his termination:

> Q. (By Mr. Bernstein) You received a letter from Mr. Biliski sometime before the August 16th Board meeting, correct?
>
> A. (By Mr. Becnel) Yes.
>
> Q. And I assume, at least from your standpoint, you read that letter?
>
> A. Yes.
>
> Q. I'm not asking whether anybody else did or did not.  But you read the letter.  Did the letter prompt any questions on your part to anybody in the administration about Mr. Biliski's termination.
>
> A. I'm sure it did.  In fact, I know it did.  I asked what this was all about.  Can you give us some details?

* * * *

---

[9] There is nothing in the record to suggest that Biliski was directly notified when or where the Board meeting would take place. (Becnel, pp. 10-11) (A23). It is true that the Agenda of the Board meetings were posted in each of the District's schools.  The defendants' evidence is conflicting, however, as to whether the posted agenda included personnel matters.  According to Dunmon, personnel matters do not appear on the public agenda. (Dunmon, pp. 7-8) (A17). According to Becnel, the entire agenda, including personnel matters, is posted. (Becnel, pp. 7-8) (A22).  However, even if the court were to somehow conclude that the posting of the Board's agenda satisfied the "notice" requirements of due process, the postings are still deficient because the posted agenda does not inform that personnel matters, such as Biliski's termination, are taken up by the Board **before** the public meeting. (Becnel, pp. 9-10) (A22-A23).

-14-

Q. Do you have any recollection, sitting here today, as to what kind of a response you got from either Diane Dunmon or anyone else about Mr. Biliski?

A. I don't recall a detailed response, no.

* * * *

Q. Can you remember the substance?

A. The administration was recommending termination. They gave reasons for the termination which were pretty much the same that Mr. Biliski had in his letter.

Q. Okay. So, in your view, there wasn't much of a factual dispute between what you heard from the administration and what you received from Mr. Biliski?

A. The administration listed, as I recall now, listed the reasons for the recommendation of termination. As I remember Mr. Biliski's letter, I don't recall him refuting any of those reasons. And that's what I recall about out of the meeting.

(Becnel, pp. 13-15) (A23-A24).

Thus, while the District administration was given the opportunity to explain in person why it wanted to fire Biliski, the same opportunity to appear before the Board to refute the District's allegations was not afforded to Biliski. (Becnel, p. 13) (A23). Furthermore, there is no evidence in this case that there was some compelling reason why Biliski had to be terminated on August 16th. The Board could have easily deferred a decision until Biliski was afforded an opportunity to contest the reasons why the District wanted to fire him.[10] The conclusion is inescapable that Biliski was fired without being afforded the pre-termination procedures required under *Anapol* and *Hawkins.*

### Remedy for Violation of Procedural Due Process

In this case, Biliski plaintiff is seeking a declaratory judgment that his termination was in violation of due process, reinstatement and backpay. (A4). If the court agrees that the defendants failed to provide Biliski with a constitutionally adequate pre-termination hearing, the burden of proof then shifts to the defendants to prove that Biliski would have been terminated even if proper pre-

---

[10] Under the Board's own policies, the Board could have suspended Biliski pending a full hearing on the merits. (A64).

termination procedures had been provided. See, *Alexander v. Polk*, 750 F.2d 250, 264 (3d Cir. 1984) ("the establishment of a prima facie violation of law operates to shift the burden to the defendant to show that the plaintiff would have been discharged despite the allegedly illegal act").

In this case, however, application of the doctrine of "collateral estoppel" bars the defendants from proving that Biliski would have been fired even if a constitutionally adequate pre-termination hearing had been held. Shortly after Biliski was fired, he filed a claim for unemployment benefits with the Delaware State Department of Labor. His claim was initially rejected and he filed a timely request for a hearing before an Appeals Referee. (A65). A hearing was scheduled on October 16, 2006 and notice of the hearing was sent to the District. (A69). According to Davenport, the District was aware that Biliski had filed a claim for unemployment benefits, but no one from the District attended the Referee Hearing. (Davenport, p. 31-32) (A32). At the Referee Hearing, the Referee held that Biliski was fired without "just cause" and was entitled to receive unemployment benefits. (A70 through A73). Davenport claimed that she did not personally find out about the hearing until after it had been held. In any event, Davenport chose not to attempt to re-open the unemployment case. (Davenport, p. 32-33) (A32).

The doctrine of "collateral estoppel" is well established:

> Collateral estoppel, also known as issue preclusion, prevents relitigation of a particular fact or legal issue that was litigated in an earlier action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). In order for the doctrine to apply, (1) the issue decided in the prior adjudication must be identical to the one presented in the later action, (2) there must be a final judgment on the merits and (3) the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication and have had a full and fair opportunity to litigate the issue in question in the prior action.

*Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999); also see, *City of Newark v. Unemployment Ins. Appeal Bd.*, 802 A.2d 318, 324 (Del. Super. 2002) (accord).

In this case, all of the requirements for application of collateral estoppel are met. The issue decided by the Referee in the unemployment case was whether Biliski was fired "for just cause in connection with his work." (A73). If the Board were to hold a hearing, the issue would be whether

-16-

there was "just and reasonable cause" to fire Biliski. (A-64). The Referee's decision became final when the District failed to appeal or ask that the case be re-opened. (A70). Finally, the defendants had notice of the unemployment proceedings and had a full opportunity to litigate the "just cause" issue, but chose not to do so.

**CONCLUSION**

Based on the foregoing reasons, the Court should grant the Plaintiff's Motion for Summary Judgment on the Section §1983 claims and conduct a hearing to determine the amount of back-pay and whether reinstatement should be ordered.

/ s/ *Joseph M. Bernstein*
JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com
Attorney for Plaintiff

Dated: October 29, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2007, I electronically filed the foregoing Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Barry M. Willoughby, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street - 17th Floor
Wilmington, DE 19801
Attorneys for Defendants


*/ s/ Joseph M. Bernstein*
JOSEPH M. BERNSTEIN (Bar #780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
E-mail: jmbernstein@embarqmail.com

-19-