**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

EDWARD A. BILISKI,                          :
     Plaintiff,                               :
                       :
       v.                                     : Civil Action No. 06-740-GMS
                       :
RED CLAY CONSOLIDATED SCHOOL         :
DISTRICT BOARD OF EDUCATION, *et al.,*    :

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com
Attorney for Plaintiff

Dated: November 16, 2007

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **TABLE OF AUTHORITIES** | **I** |
| **NATURE AND STAGE OF PROCEEDINGS** | **1** |
| **SUMMARY OF ARGUMENT** | **2** |
| **STATEMENT OF FACTS** | **3** |
| **STANDARD OF REVIEW** | **7** |
| **ARGUMENT** | |
|    **I. THE PLAINTIFF HAD A PROPERTY INTEREST IN HIS CONTINUED EMPLOYMENT BY THE DEFENDANTS. THE DEFENDANTS DEPRIVED PLAINTIFF OF THAT PROPERTY INTEREST WITHOUT AFFORDING THE PLAINTIFF PROCEDURAL DUE PROCESS AS REQUIRED UNDER THE FOURTEENTH AMENDMENT** | **9** |
| **CONCLUSION** | **20** |

**ATTACHMENTS**

**Unreported Decision -**

*Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523 (D. Del. 1994)

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Anapol v. University of Delaware*, 412 F. Supp. 675 (D. Del.1976)                                      12,13,14

*Anderson v. Creighton*, 483 U.S. 635 (1987)                                                           18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)                                                 7

*Board of Regents v. Roth*, 408 U.S. 564, (1972)                                                       9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)                                                        8

*Childers v. Joseph*, 842 F.2d 689 (3d Cir. 1988)                                                      7

*City of Newark v. Unemployment Ins. Appeal Bd.*,
802 A.2d 318, 324 (Del. Super. 2002)                                                                   16

*Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302 (3d Cir. 2001)                             8

*Elder v. Holloway*, 510 U.S. 510 (1994)                                                               18

*Gaines v. Wilmington Trust Company*, 1991 Del. Super. LEXIS 207                                       11

*Gilbert v. Homar*, 520 U.S. 924 (1997)                                                                12,17,18

*Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523 (D. Del. 1994)                                        15

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)                                                            18

*Hawkins v. Board of Public Education,* 468 F.Supp. 201, 208 (1979)                                    12

*Hickey v New Castle County*, 428 F.Supp. 606 (D. Del. 1977)                                           12

*Hugh v. Butler County Family YMCA*, 418 F.3d. 265 (3d Cir. 2005)                                      7,8

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991)                                                           17

*Jones v. UPS*, 214 F.3d 402 (3d Cir. 2000)                                                            8

*Kelly v. Sayreville*, 107 F.3d 1073 (3d Cir. 1997)                                                    9,11,18

*Knotts v. Bewick*, 467 F.Supp. 931 (D. Del. 1979)                                                     12

*Lord v. Souder*, 748 A.2d 393 (Del. 2000)                                                             9

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)                                     7,17

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997)                                         19

*Saucier v. Katz*, 533 U.S. 194 (2001)                                                                 18

*Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163 (3d Cir. 1999)                                      16

| **Cases** | **Page** |
|---|---|

*Skehan v. Board of Trustees of Bloomsburg State College*,
501 F.2d 31 (3d Cir. 1974)                                          14

*Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003)          9

*Walls v. City of Milford*, 938 F.Supp. 1218  (D.Del. 1996)         12

*Washington v. Autozoners, Inc.*, 452 F.Supp.2d 546 (D. Del. 2006)  7

**Statutes and Court Rules**

 Fed. R. Civ. P. 56©                                    7

Fed. R. Civ. P. 56(e)                                   8

**Miscellaneous**

Carroll, Lewis, *The Hunting of the Snark: An Agony in Eight Fits -
Fit One: The Landing*  (1891)
(http://etext.virginia.edu/toc/modeng/public/CarSnar)         11

## NATURE AND STAGE OF PROCEEDINGS

The Plaintiff, Edward Biliski ("Biliski") was formerly employed as a computer technician by the defendant Red Clay Consolidated School District ("District") and defendant Red Clay Consolidated School District Board of Education ("Board"). Biliski's claims against the District and the Board arise under 42 U.S.C. §1983 based on the defendants' failure to comply with the minimum requirements of Procedural Due Process under the Fourteenth Amendment in connection with the termination of Biliski's employment . See, Complaint (D.I. 1), §15 through §17 (A3)[1]. The defendants have filed an Answer to the Complaint which generally denies all of the material allegations in the Complaint. (D.I. 15) (A-5). Discovery has been completed. On October 29, 2007, the parties filed cross-motions for summary judgment. See, D.I. 39 through 41 and D.I. 36 through 38. This is the Plaintiff's Brief in opposition to the Defendants' motion for summary judgment.

---

[1] The references herein to the Appendix are to the Appendix filed in support of Biliski's motion for summary judgment. See, (D.I. 41).

## SUMMARY OF ARGUMENT

1. Based on the defendants' personnel regulations and policies, the plaintiff's employment could not be terminated except for "just cause." That policy was legally sufficient to create a "property interest" in continued employment that was entitled to protection under the Fourteenth Amendment.

2. The defendants "deprived" the plaintiff of his property interest in continued employment in violation of his rights under the Fourteenth Amendment when they terminated his employment without providing him with a pre-termination hearing and a post-termination hearing.

3. The doctrine of "collateral estoppel" precludes the defendants from re-litigating the issue whether they had "just cause" to terminate plaintiff's employment.

4. If "collateral estoppel" is not applicable, a material issue of fact exists which precludes summary judgment on the "just cause" issue.

5. The individual defendants are not entitled to qualified immunity.

## STATEMENT OF FACTS

The historical facts which led to the termination of Biliski's employment are not in dispute. On or about March 20, 2001, the plaintiff was hired by the defendants Board/District as a computer technician. Plaintiff's employment with the Board/District continued from March 20, 2001 through August 8, 2006. On August 8, 2006, plaintiff was called off his work assignment and directed to go to the District's human resources office. When plaintiff arrived at the office, he met with his immediate supervisor, Ted Ammann ("Ammann") and Debra Davenport ("Davenport"), the District's Manager of Human Resources. (Complaint, §10) (A2); (Answer, §10) (A6).

At this meeting, plaintiff was given a series of three Memos, which contained allegations relating to plaintiff's job performance.  Each Memo was from Ammann and was dated August 7, 2006.[2] At the conclusion of the meeting, plaintiff was handed a letter from Davenport dated August 8, 2006. The letter stated:

> This letter is a followup to the meeting held today with me and Mr. Ammann.  Due to poor work performance, your name will be submitted to the Board of Education for termination.  If approved your date of termination will be effective August 11, 2006.

In the Complaint, Biliski alleged that he did not receive any advance notice that the meeting was going to take place or that the District intended to terminate his employment (Complaint, §12) (A2-A3).  Although the allegations in Paragraph 12 are "denied" by the defendants, they have not produced any evidence to rebut the allegations in Paragraph 12.  At this meeting, according to Biliski, Ammann read the memos aloud  to him.  When Biliski tried to respond to the allegations, Davenport told him to be quiet and listen to Ammann.  According to Biliski, he wanted to rebut the allegations, but was not given any opportunity to do so.  Biliski then became very agitated and was told to leave the building, which he did. At that point, Biliski believed that there was no recourse to appeal Davenport's decision to fire him. (Biliski, pp. 191-195) (A12-A13).

---

[2] These Memos are reproduced in the Appendix at A57 through A59.

After the meeting on August 8, 2006, Biliski did not receive any further notices or communications from the defendants concerning his termination. (Biliski, pp. 226-227) (A15). After he returned home on August 8th, Biliski re-read the letter (A33) that Davenport gave him and realized that the Board had to approve his termination. (Biliski, pp. 195-196) (A13). Biliski then made phone calls to the individual Board members and left messages on their answering machines to ask them not to fire him until they heard his side of the story. He received return calls from three of the Board members. (Biliski, pp. 7-10) (A9-A10). On August 16, 2006, Biliski had delivered to the District Office a written response that he had composed to the allegations which led to his firing. (A34 through A48). Biliski's response was given to Diane Dunmon ("Dunmon"), who made copies of the document and had it distributed to the Board members. (Dunmon, p. 13) (A18).[3]

According to the defendants, all terminations of District employees have to be approved by the Board. (Davenport, p. 29) (A31); (Becnel, p.6) (A22).[4] The decision to terminate an employee is generally initiated by the District who makes a formal recommendation to the Board. Although the Board has the final say on the subject, the Board generally follows the recommendation made by the District. (Becnel, pp. 4-6) (A21-A22). In Biliski's case, Davenport testified that she received the three Memos dated August 7th from Ammann, attended the meeting with Ammann and Biliski on August 8th, and then sent a recommendation to Dunmon that Biliski be fired. Also, according to Davenport, she probably gave the August 7th letters to Dunmon, but she does not have a specific recollection of doing that. (Davenport, pp. 22-27) (A30-A31). According to Dunmon, she received a "form" from Davenport which recommended that Biliski be fired. The form itself did not specify any reasons for the termination. According to Dunmon, if an employee is pending termination, she would typically discuss the matter with Davenport. In Biliski's case, she does not have any specific recollection of any discussions, other than the fact that there were "performance issues." (Dunmon,

---

[3] Dunmon is the District's Deputy Superintendent and is Davenport's direct supervisor. (Dunmon, pp. 2-3) (A16).

[4] Irwin J. Becnel, Jr. ("Becnel") has been a member of the Red Clay Board of Education for 17 years. He has been President of the Board since 2003. (Becnel, p.3) (A21).

pp. 5-6) (A16-A17). Dunmon never met with or spoke to Biliski concerning any alleged performance issues. (Dunmon, p. 6) (A17). After she received the "form" from Davenport, Dunmon prepared a recommendation to the Superintendent and Board that Biliski be fired. (Dunmon, p.4)(A16). The Board is not given any other documentation concerning the recommendation. (Dunmon, p. 9) (A17); (Becnel, p. 6) (A22).

The letter dated August 8, 2006 that Davenport gave to Biliski (A33) contained no information as to the date, time or place of the Board meeting. (Dunmon, pp. 11-12) (A18). Also, Biliski was not provided with any notice that the subject of his termination would be taken up by the Board on any particular date and time. (Biliski, pp. 226-227) (A15). As it turned out, the subject of Biliski's termination was placed on the Agenda for the Board meeting that took place on August 16, 2007. (A54).[5] With respect to personnel matters, the recommendations received by the Board from the District are reviewed and voted on by the Board in an "executive session" that takes place before the public meeting of the Board. (Becnel, p. 9) (A22). In cases involving a termination, the Board typically would get a verbal report of the reasons for the termination, but not any documentation. (Becnel, pp.6-7) (A22). The discussions that take place in the "executive session" are not recorded. (Becnel, p. 12) (A23); (Dunmon, p. 9) (A17). Biliski was not present for the Board meeting. (Biliski, p. 37) (A11). According to Becnel, Biliski was not invited to appear in person before the Board and Becnel did not know if he was present at the meeting. (Becnel, p. 13) (A23). Becnel also did not know if Biliski was provided with any notice of the meeting or executive session. (Becnel, p. 10) (A23). According to Becnel, there was some discussion concerning the letter Biliski sent to the Board, but Becnel believed that Biliski was not disputing the reasons for the termination. (Becnel, pp. 14-15) (A24). On August 17, 2006, a letter was sent to Biliski informing him that the

---

[5] At the time of Biliski's termination, the only notification of meetings of the Board and the agenda for the meeting consisted of notices that were posted in each school building in the District. (Becnel, pp. 7-8) (A22). The testimony of the defendants is conflicting as to whether personnel matters are listed in the public agenda. According to Dunmon, personnel matters do not appear on the publc agenda. (Dunmon, pp. 7-8) (A17). According to Becnel, the entire agenda, including personnel matters, is posted. (Becnel, pp. 7-8) (A22).

Board had terminated his employment. (A55).[6]  On August 21, 2006, Dunmon received a letter from Biliski requesting a meeting concerning his termination. (A56).  Dunmon did not respond to Biliski's request. (Dunmon, pp. 16-17) (A19).

---

[6] According to Biliski, he did not receive that letter. (Biliski, p. 197) (A13) .

## STANDARD OF REVIEW

The summary judgment standard is well established. Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See, Fed. R. Civ. P. 56© . A fact is "material" if it might affect the outcome of the suit under the governing substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725, pp. 93-95 (1983).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "genuine" if evidence exists from which a reasonable juror could find in favor of the non-moving party. *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988); *Washington v. Autozoners, Inc.*, 452 F.Supp.2d 546, 550 (D. Del. 2006). In determining whether a dispute concerning a "material fact" is "genuine," "the judge's function is not himself to weigh the evidence and determine the matter, but to determine whether there is a genuine issue for trial". *Anderson*, 477 U.S. at 249; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) ("[W]e must draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence"):

> In reviewing the record as a whole, we must "disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"

*Id.*, at 151 (internal citations omitted); also see, *Hugh v. Butler County Family YMCA*, 418 F.3d. 265, 267 (3d Cir. 2005) (on summary judgment, a court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor).

To survive a motion for summary judgment, the non-moving party cannot solely rest upon her allegations in the pleadings, but rather must set forth specific facts such that a reasonable jury

could find in the non-moving party's favor, thereby establishing a genuine issue of fact for trial.  Fed.
R. Civ. P. 56(e); *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 306 (3d Cir. 2001)
(where the non-moving party is the plaintiff, and therefore, bears the burden of proof at trial, that
party must present affirmative evidence sufficient to establish the existence of each element of his
case).   Accordingly, a plaintiff cannot rely on unsupported assertions, speculation, or conclusory
allegations to avoid the entry of summary judgment. *Celotex Corp. v. Catrett*,  477 U.S. 317, 324
(1986).  Rather, the plaintiff "must go beyond the pleadings  and provide some evidence that would
show that there exists a genuine issue for trial." *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).
While the evidence that the non-moving party presents may be either direct or circumstantial, and
need not be as great as a preponderance, the evidence must be more than a scintilla. *Hugh*, 418 F.3d
at 267.

## ARGUMENT

**I. THE PLAINTIFF HAD A PROPERTY INTEREST IN HIS CONTINUED EMPLOYMENT BY THE DEFENDANTS. THE DEFENDANTS DEPRIVED PLAINTIFF OF THAT PROPERTY INTEREST WITHOUT AFFORDING THE PLAINTIFF PROCEDURAL DUE PROCESS AS REQUIRED UNDER THE FOURTEENTH AMENDMENT**

### Existence of a Protected Property Interest

In support of their motion for summary judgment, the defendants argue that Biliski was an "employee-at-will," who was not entitled to any procedural due process prior to his termination. (Defendants' Brief, p. 14). Under the employment-at-will doctrine, an "employee-at-will" can be terminated for any reason, with or without cause and at any time." *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000).[7] Biliski agrees that if he is an employee-at-will, then he is not entitled to any procedural due process in connection with his termination. See, *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003) (an at-will employee does not have a property interest in her job). Conversely, if the employer's discretion to terminate employment is limited by a "just cause" requirement, then the employee has a "property interest" in continued employment. See, *Kelly v. Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997) (finding "property interest" in continued employment where state law provided that "no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force").

The defendants assert several arguments in support of their claim that Biliski is an employee-at-will. First, the defendants argue that the "1985 policy"[8] did not apply to Biliski because there is no evidence that Biliski himself was actually aware of the policy. (Defendants' Brief, p.16). This

---

[7] Whether or not Biliski is an employee-at-will is determined by reference to state law. See, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[8] See (A64).

-9-

assertion is directly contradicted by Biliski's testimony that it was his understanding that the defendants could not fire him without just cause. (A10).  Biliski's belief that he could not be fired absent just cause is also supported by his attempts to contact individual Board members[9] and his belated attempt to refute the charges against him.[10]  It is also supported by Biliski's post-termination request for a meeting concerning his termination,(A56), which was ignored by Dunmon. (Dunmon, pp. 16-17) (A19).

Next, the defendants argue that Biliski was an at-will employee because Becnel, Dunmon and Davenport all testified that Biliski was an at-will employee. (Defendants' Brief, p. 16).  That testimony is refuted by the plain language in the "1985 policy" itself:

File: GDPD

SUSPENSION AND DISMISSAL OF CLASSIFIED STAFF MEMBERS

>It will be the policy of the Board to strive to assist personnel in every possible way to adjust to their positions and to perform their duties satisfactorily.  Every reasonable effort will be made to avoid dismissing personnel at any level.
>
>**No employees will be dismissed except for just and reasonable cause, and only after an investigation has been conducted and written and signed charges have been filed with the Board.**  The Board if it decides to proceed on the charges, will notify the employee in writing of the charges and will provide an opportunity for a hearing.

(A64) (emphasis added).

Dunmon testified that the reference in the "1985 policy" to "classified staff members" was limited to non-teaching employees who were members of a union and did not apply to non-union employees such as Biliski.[11] (Dunmon, pp. 18-19) (A20).  Conversely, Becnel testified that the term classified staff included non union employees. (Becnel, pp. 18-19) (A25).  Finally, Davenport, the

---

[9] See, Biliski, pp. 7-10 (A9-A10).

[10] See, A34 through A48.

[11] Biliski agrees that he was a non-union employee.

-10-

District's Manager of Human Resources, and Becnel, the Board's President, testified that the term at-will employee did not appear anywhere in the District's personnel policies. (Davenport, p. 10) (A29); (Becnel, p. 23) (A26)   Given the plain language of the "1985 policy" and the self-contradictory testimony cited above, the assertion that Biliski was an at-will employee makes about as much sense as the whimsical and oft quoted refrain, "What I tell you three times is true."[12]

Finally, the defendants argue that the "1985 policy" does not, under Delaware law, create a protected property interest in continued employment. (Defendants' Brief, p. 16-17).  Specifically, the defendants claim that the "1985 policy" did not alter Biliski's status as an employee-at-will, citing *Gaines v. Wilmington Trust Company*, 1991 Del. Super. LEXIS 207, *4-*5:

> In Delaware an employee handbook will not change an employee's at-will status unless there is clear language placing express limits on the employer's right to discharge. *Heideck v. Kent General Hospital,* Del. Supr., 446 A.2d 1095 (1982). Here, a disclaimer expressly preserved the employer's discretionary authority and made it clear that the handbook gave employees no contractual rights.

*Gaines* is distinguishable from this case on its facts.  First, the "just cause" language at issue here is not contained in an "employee handbook."  The "1985 policy" was formally adopted by the Board.  Second, the "handbook" at issue in *Gaines* contained the following "disclaimer":

> This handbook provides general information only and is not intended to be a contractual agreement. As policies, practices and benefits change, supplemental or replacement pages will be provided.

*Id.*, at *4.

In this case, unlike *Gaines*, the "just and reasonable cause" language in the "1985 policy" does place substantive limits on the defendants' right to discharge an employee.  Second, there are no "disclaimers" in the defendants' policies.  Under clearly established law, the language in the "1985 policy" is sufficient as a matter of law to create a protected property interest.  See, *Kelly*, 107 F.3d at 1077 (finding "property interest" in continued employment where state law provided that "no permanent member or officer of the police department or force shall be removed from his office,

---

[12] Carroll, Lewis, *The Hunting of the Snark: An Agony in Eight Fits - Fit One: The Landing* (1891) (http://etext.virginia.edu/toc/modeng/public/CarSnar).

employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force"); *Walls v. City of Milford*, 938 F.Supp. 1218, 1221-1222 (D.Del. 1996) (town ordinance, which contained a non-exhaustive list of unacceptable workplace behavior, which could result in suspension or termination, was sufficient to create a property interest in continued employment).

### Did the Defendants Provide Procedural Due Process?

The defendants argue that if the court finds that Biliski had a protected property interest in continued employment, the court should also conclude that the defendants did provide Biliski with procedural due process that met the requirements of the Due Process Clause. (Defendants' Brief, pp. 17-20). This argument should be rejected.

In cases involving termination of employment, the minimum requirements of procedural due process are well established. "A public employee dismissible only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). In *Anapol v. University of Delaware*, 412 F. Supp. 675, 678 n.8 (D. Del.1976), the court determined that the minimum pre-termination requirements of due process included: (1) clear notice of the charges being considered, (2) a reasonable time interval to marshal facts and evidence, (3) an explanation of the substance of the evidence supporting the charges, and (4) an opportunity to present (plaintiff's) side of the case in a manner which will permit the decision maker to weigh both sides. These requirements have been consistently adhered to in subsequent decisions in the District of Delaware. See, *Knotts v. Bewick*, 467 F.Supp. 931, 934-935 (D. Del. 1979); *Hickey v New Castle County*, 428 F.Supp. 606, 610 (D. Del. 1977); *Hawkins v. Board of Public Education,* 468 F.Supp. 201, 208 (1979).

The defendants claim that the requirements for a pre-termination hearing were met in this case . They argue that the August 8, 2006 meeting between Biliski, Ammann and Davenport provided Biliski with constitutionally adequate pre-termination due process. (Defendants' Brief, pp. 19-20). The historical facts concerning the August 8th meeting appear to be in dispute. On August

-12-

8, 2006, Biliski was summoned off the job and was directed to attend a meeting with Ammann and Davenport. The defendants have not produced any evidence that Biliski received any advance notice that this meeting was going to take place, or that the purpose of the meeting was to terminate his employment.[13]  At this meeting, he was given a copy of three Memos, (A57 through A59), all dated August 7, 2006, which contained allegations of poor job performance.  When Biliski attempted to speak up to defend himself, he was told to be quiet and listen to Ammann. (Biliski, pp. 191-192) (A12).[14]  At the conclusion of the meeting, Biliksi was handed a fourth Memo, dated August 8, 2006, (A33), informing him that his name would be submitted to the Board for termination. (Davenport, pp. 24-25) (A30).  Ammann claims that Biliski was given an opportunity to respond to the charges. (Ammann Affidavit, §13) (Defendants' Appendix, p. 121).  This is disputed by Biliski.  According to Biliski, he wanted to rebut the allegations, but was not given any opportunity to do so. After he was handed the Memo informing him that he was being fired, he became very agitated and was told to leave the building, which he did.  (Biliski, pp. 191-195) (A12-A13).

Simply put, Biliski was "ambushed" by the defendants.  The prospect of losing one's employment and means of earning a living is itself a traumatic event.  In that context, Biliksi's reaction, if not entirely "professional," is certainly understandable.  In *Anapol*, the court concluded that the pre-termination procedures employed by the defendants violated procedural due process. *Id.*, 412 F.Supp. at 680.   In reaching that conclusion, the court noted:

> In this case, clear notice of the specific charges being considered was not given to Dr. Anapol until his meeting with Dean Gouldner on December 15th and that necessarily brief conference is the only occasion on which he even arguably had an opportunity to present his side of the case.

*Id.*, at 679.  If anything, Biliski was afforded even less of an opportunity to be heard than the plaintiff in *Anapol*.  Finally, the defendants argue that Biliski had an opportunity to tell his side of the story

---

[13] See, Verification of Charles Edward "Ted" Ammann ("Ammann Affidavit"), §12 and §13, Defendants' Appendix, p. 121.

[14] Biliski's testimony that Davenport told him to be quiet and listen to Ammann is confirmed by Ammann.  See, Ammann Affidavit, §13, Defendants' Appendix, p. 121.

-13-

because he submitted a "rebuttal letter" to the Board before the Board approved the District's recommendation to terminate him. (Defendants' Brief, p. 19). While this argument may have some superficial appeal, it should also be rejected. The "rebuttal letter" came about because, after the August 8th meeting, Biliksi did not receive any further notices or communications from the defendants concerning his termination. (Biliksi, pp. 226-227) (A15). After he returned home on August 8th, Biliksi re-read the letter (A33) that Davenport gave him and realized that the Board had to approve his termination. (Biliksi, pp. 195-196) (A13). Biliksi then made phone calls to the individual Board members and left messages on their answering machines to ask them not to fire him until they heard his side of the story. He received return calls from three of the Board members. (Biliksi, pp. 7-10) (A9-A10). On August 16, 2006, Biliksi had delivered to the District Office a written response that he had composed to the allegations which led to his firing. (A34 through A48).

All terminations of District employees have to be approved by the Board. (Davenport, p. 29) (A31); (Becnel, p.6) (A22). The decision to terminate an employee is generally initiated by the District who makes a formal recommendation to the Board. Although the Board has the final say on the subject, the Board generally follows the recommendation made by the District. (Becnel, pp. 4-6) (A21-A22). When making a recommendation, the District does not provide the Board with any documentation other than the recommendation itself. (Dunmon, p. 9) (A17); (Becnel, p. 6) (A22). Even if the Board members read and understood Biliski's rebuttal letter, it is clear that the Board had effectively delegated the fact-finding process leading to a termination to the District.

Even if the court were to conclude that the pre-termination procedures employed by the District met the minimum requirements of procedural due process, the Due Process Clause also requires that the terminated employee be given a prompt post-termination hearing. See, *Gilbert*, 520 U.S. at 929 ("a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing"). In this case, the defendants do not even claim that Biliksi was afforded any post-termination hearing at all,

-14-

let alone a post-termination hearing that met the minimum requirements of the Due Process Clause. For this reason alone, the defendants' summary judgment motion should be denied.

### The Plaintiff's Entitlement to Damages

It is well established that the appropriate remedy for a defendant's failure to provide constitutionally adequate pre-deprivation or post-deprivation due process is reinstatement with back pay until such time as a proper post-termination hearing is held. See, *e.g., Anapol*, 412 F.Supp. at 680 ("It follows from my conclusion that Dr. Anapol was not accorded the pre-termination procedural due process to which he was entitled under *Skehan*,[15] that Dr. Anapol must be reinstated with back pay"); *Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523, *23-*25 (D. Del. 1994):

> [T]he Court has held that defendants' error was the inadequate procedures afforded plaintiff. It can be characterized as a failure to provide post-termination procedures, or a failure to provide adequate pre-termination procedures in light of the decision not to provide post-termination procedures. In any event, the injury is unchanged: plaintiff has lost a valuable property right without due process. He has lost his employment and salary of the position of Medical Examiner for the State of Delaware, without an opportunity to protect it. Had defendants not violated his constitutional right, no such injury would have occurred. Thus, plaintiff should receive the property of which he has been deprived.
>
> * * * *
>
> To adopt defendants' position would be to allow the State to offer employees grossly inadequate procedures, deny them their constitutionally protected due process rights to their property, and face as a penalty for such behavior simply having to provide the procedure they should have provided in the first instance. Such a method requires plaintiffs to pay for the unconstitutional actions of defendants and is an inadequate remedy.

Notwithstanding *Anapol* and *Hameli*, the defendants argue that even if Biliksi was denied procedural due process, he is not entitled to either back pay or reinstatement if the defendants can prove that he would have been terminated in any event, even if proper procedures had been followed. (Defendants' Brief, pp. 21-22). Before the court can consider the merits of the defendants

---

[15] *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974).

arguments, the court first needs to decide if the defendants are collaterally estopped from establishing "just and reasonable cause" to terminate Biliski's employment.

### Application of Collateral Estoppel

Shortly after Biliksi was fired, he filed a claim for unemployment benefits with the Delaware State Department of Labor.   His claim was initially rejected and he filed a timely request for a hearing before an Appeals Referee. (A65).  A hearing was scheduled on October 16, 2006 and notice of the hearing was sent to the District. (A69).  According to Davenport, the District was aware that Biliksi had filed a claim for unemployment benefits, but no one from the District attended the Referee Hearing. (Davenport, p. 31-32) (A32).  At the Referee Hearing, the Referee held that Biliksi was fired without "just cause" and was entitled to receive unemployment benefits. (A70 through A73).  Davenport claimed that she did not personally find out about the hearing until after it had been held.   In any event, Davenport chose not to attempt to re-open the unemployment case. (Davenport, p. 32-33) (A32).

The doctrine of "collateral estoppel" is well established:

> Collateral estoppel, also known as issue preclusion, prevents relitigation of a particular fact or legal issue that was litigated in an earlier action. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). In order for the doctrine to apply, (1) the issue decided in the prior adjudication must be identical to the one presented in the later action, (2) there must be a final judgment on the merits and (3) the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication and have had a full and fair opportunity to litigate the issue in question in the prior action.

*Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999); also see, *City of Newark v. Unemployment Ins. Appeal Bd.*, 802 A.2d 318, 324 (Del. Super. 2002) (accord).

In this case, all of the requirements for application of collateral estoppel are met.  The issue decided by the Referee in the unemployment case was whether Biliksi was fired "for just cause in connection with his work." (A73).  If the Board were to hold a hearing, the issue would be whether there was "just and reasonable cause" to fire Biliksi. (A-64).  The Referee's decision became final when the District failed to appeal or ask that the case be re-opened. (A70).  Finally, the defendants

-16-

had notice of the unemployment proceedings and had a full opportunity to litigate the "just cause" issue, but chose not to do so.

### Existence of Just Cause for Termination

In their Brief, the defendants claim that Biliksi had "performance problems" that would have justified his termination even if he had been afforded procedural due process. In the unemployment hearing, the performance issues were addressed and refuted under oath by Biliksi. After hearing Biliski's explanation, the Referee specifically found that any misconduct on Biliski's part did not constitute "just cause" for his termination. (A72-A73). For purposes of summary judgment, it is clear that whether the defendants had "just and reasonable cause" to fire Biliksi involve issues of material fact that are in dispute, which precludes summary judgment. See, *Reeves*, 530 U.S. at 150 ("[W]e must draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence"). At this juncture, Biliksi has established that he did not receive a pre-termination hearing that met the minimum requirements of procedural due process. Furthermore, even if the court were to accept the defendants' arguments that Biliksi did receive a constitutionally adequate pre-termination hearing, the fact remains that he did not receive any post-termination hearing.[16] The failure to provide any post-termination hearing, standing alone, is sufficient to establish a due process violation. See, *Gilbert*, 520 U.S. at 929 ("a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing").

### Qualified Immunity

The individual defendants contend that even if Biliski's was denied procedural due process, they are nevertheless entitled to entitled to qualified immunity. When a Section 1983 claim is asserted against a public official, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit. *See, Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The primary purpose

---

[16] In their Brief, the defendants do not claim that Biliski was afforded any post-termination hearing.

of affording public officials the privilege of qualified immunity, thus insulating them from personal liability, is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Supreme Court, in *Saucier v. Katz*, 533 U.S. 194, 201 (2001) explained the analytical process for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

In this case, the plaintiff's right to procedural due process was clearly violated when the District and Board terminated his employment without affording him either a pre-termination hearing or a post-termination hearing. A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The defendants' own written policies provided that "no employee will be dismissed except for "just and reasonable cause." (A64). As of August 2006, a reasonable person in the position of the individual defendants should have known that the inclusion of "just cause" language in their official policies was sufficient to create an expectation of continued employment. See, *Kelly*, 107 F.3d at 1077. Furthermore, the individual defendants should have known that they had to provide the plaintiff with a pre-termination and a post-termination hearing. See, *Gilbert*, 520 U.S. at 929 ("a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing"). Finally, in this case, the recommendation to terminate

-18-

plaintiff's employment was made directly by the defendant Superintendent to the defendant Board members. These facts satisfy the requirement under section 1983 that the individual defendants must have directly participated in the actions at issue. See, *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997).

In this case, even if the court were to accept the defendants' argument that the August 8th meeting with Biliksi and the Board's receipt of Biliski's letter dated August 16th was sufficient to satisfy pre-termination due process requirements, the fact remains that Biliksi was not afforded any post-termination hearing. Therefore, the court should find that the individual defendants are not entitled to qualified immunity.

## CONCLUSION

Based on the foregoing reasons, the Court should deny the Defendants' Motion for Summary Judgment.

/ s/ Joseph M. Bernstein
JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com
Attorney for Plaintiff

Dated:

-20-

1994 U.S. Dist. LEXIS 20523, *

**ALI Z. HAMELI, M.D., Plaintiff, v. CARMEN R. NAZARIO, individually and in her official capacity, THOMAS LOFARO, individually and in his official capacity, and THE STATE OF DELAWARE, Defendants.**

**Civil Action No. 94-199-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1994 U.S. Dist. LEXIS 20523*

**September 2, 1994, Decided**

**COUNSEL:** [*1] Sheldon N. Sandler, Esquire and Bhavana Sontakay, Esquire of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, attorneys for plaintiff.

Marsha Kramarck, Esquire, Loretta LeBar, Esquire, and Elizabeth A. Seiter, Esquire of the Department of Justice, Wilmington, Delaware, attorneys for defendants.

**JUDGES:** Sue L. Robinson, District Judge

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

September 2, 1994

Wilmington, Delaware

**Sue L. ROBINSON, District Judge**

**I. INTRODUCTION**

Plaintiff Ali Z. Hameli, M.D., a former employee of the State of Delaware (the "State"), filed this lawsuit against Carmen R. Nazario, the Delaware Secretary of Health and Human Services and Thomas LoFaro, the

Delaware Deputy Director for Labor Relations. In his amended complaint, plaintiff alleges one count of each of the following: violation of procedural due process, violation of substantive due process, malicious interference with a contract, intentional infliction of emotional distress, invasion of privacy, and prima facie tort. (D.I. 19) Presently before the Court is plaintiff's cross-motion for partial summary judgment on the issue of procedural due process (D.I. 15) and defendants' [*2] motion to dismiss. (D.I. 8, 15) For the reasons stated below, plaintiff's motion will be granted and defendants' motion will be denied.

**II. BACKGROUND**

Plaintiff was employed as Chief Medical Examiner for the State of Delaware from July 2, 1964 until April 5, 1994. (D.I. 9 at 3) He was first appointed to this position for a ten-year term on March 16, 1970. (D.I. 16 at 4) He was appointed to his most recent ten-year term on March 12, 1990. (D.I. 9 at 3)

In October of 1993, Mary Smith, [1] a former employee of the State in the Office of the Medical Examiner, alleged that plaintiff had sexually harassed her during her employ. (*Id.*) Smith stated these allegations during her exit interview. Smith did not file her claim with the

State pursuant to its official grievance procedures policy. Defendant Nazario ("Nazario"), however, was informed of these complaints. At the same time, Wayne Bergner, Director of the Division of Management Services, requested that the State Personnel Office investigate the claim through defendant LoFaro ("LoFaro")

1    The actual names of Mary Smith and Jane Doe have been withheld from the Court. Plaintiff, however, is aware of the true identities of both. (D.I. 9 at 3)

**[*3]** On November 1, 1993, Smith filed an official complaint with the Department of Labor. (D.I. 26 at 1) The State assigned Deputy Attorney General Loretta LeBar to represent the State and plaintiff in the administrative charge. (D.I. 16 at 6) Plaintiff worked with LeBar to complete a questionnaire sent by the Delaware Department of Labor with the charge of discrimination. (*Id.*) Plaintiff also obtained his own counsel. As part of his investigation, LoFaro assigned Michael Reynolds ("Reynolds"), a labor relations specialist, to interview Smith. (D.I. 9 at 4) Plaintiff was made aware of this independent investigation on February 25, 1994. (D.I. 16 at 7)

On March 2, 1994, LoFaro interviewed another former employee of the Office of the Medical Examiner, Jane Doe. She also claimed that plaintiff sexually harassed her. (D.I. 9 at 5) Defendants claim that LoFaro also interviewed Dr. Laposta [2] who allegedly stated that Smith and Doe had complained to her about plaintiff's conduct. (*Id.* at 6)

2    Plaintiff claims that he had disciplined Dr. Laposta in the summer of 1993 for insubordination. (D.I. 16 at 9, fn.3)

**[*4]** On March 4, 1994, Reynolds and LoFaro interviewed plaintiff with his counsel for over four hours. (*Id.* at 6; D.I. 16 at 7) The interviewers asked plaintiff about specific instances of conduct alleged by Smith and Doe

and plaintiff denied ever sexually harassing these women. (D.I. 9 at 6; 16 at 8)

On March 7, 1994, Nazario met with investigators and discussed the accusations against plaintiff, plaintiff's response, and the credibility of those interviewed. (D.I. 10, Ex. 2) She concluded that cause existed to terminate plaintiff. (*Id.*) On March 10, 1994, LeBar informed plaintiff that the State would no longer represent him due to a perceived conflict of interest. (D.I. 16 at 10)

On March 22, 1994, LoFaro met with plaintiff and plaintiff's counsel in his office. LoFaro provided plaintiff with details about the allegations against him, specifically reading aloud from diary entries allegedly recorded by Smith and Doe which detailed accounts of sexual harassment. (D.I. 10 at P15; 16 at 10) He informed plaintiff that he was prepared to begin termination proceedings against him. He suggested plaintiff's resignation as an alternative to termination. Said resignation was subject **[*5]** to several conditions which included psychiatric counseling, indemnification by plaintiff to the State, creation of an escrow account with a $ 150,000 deposit by plaintiff, and an agreement by plaintiff to testify on behalf of the State without payment of expert witness fees. (D.I. 10 at P17) LoFaro also mentioned the possibility of criminal charges. (*Id.* at P18) Plaintiff proposed the possible idea of retirement and LoFaro did not dismiss this option. (*Id.* at P20)

On March 29, 1994, plaintiff submitted to Nazario a letter indicating his intent to retire on June 30, 1994. (D.I. 17 at A25) Also on March 29, 1994, plaintiff's counsel sent a letter to LoFaro informing him of plaintiff's retirement letter, strongly encouraging him to halt administrative procedures against his client, advising him that plaintiff would not accept the conditions offered by the State, and challenging the veracity of the charges. (*Id.* at A26-30) On that same date, Nazario sent a letter to plaintiff informing him of the reasons for the proposal to terminate him and providing him with a

sampling of incidents underlying the charges. She also informed plaintiff that he may request a pre-termination **[\*6]** hearing by contacting LoFaro by April 5, 1994. The letter specified that "such a hearing would be informal, and provide you with an opportunity to respond to these charges and/or offer any reasons why the proposed penalty is not warranted. If you fail to do so we will proceed based on the information in our possession." (*Id.* at A31-33)

Two days later, plaintiff's counsel sent a letter to LoFaro requesting more time to respond to Nazario's letter because April 1 was a holiday, Good Friday, and plaintiff would be in California for a previously approved vacation. Counsel also asked for more specific information about the pre- and post-termination proceedings offered to plaintiff. (*Id.* at A34-35)

On April 4, 1994, LoFaro responded to both counsel's previous letters in separate letters. (*Id.* A36, 39) In response to plaintiff's March 31st letter, LoFaro informed plaintiff that on March 22nd plaintiff received a full compendium of the statements Smith and Doe alleged he had made. LoFaro also listed specifically the statements which would be relied upon by the investigators, their content, and date of occurrence. LoFaro denied plaintiff's request for an extension, stating that **[\*7]** counsel "will have sufficient time by tomorrow to simply let me know whether you desire another opportunity to state his [plaintiff's] position, i.e., via a termination hearing." *(Id.* at A52) LoFaro described the hearing as follows:

> It will be informal. . . . It will neither be transcribed nor witnesses sworn. Rules of evidence will not apply. It is simply an opportunity for your client to respond to the specific charges in any reasonable manner he chooses, and/or contest the penalty proposed. . . . You may make a response on his behalf, but

he must answer any questions asked of him by the hearing officer or employer representative.

Even though the **parties may question each other and a reasonable give and take is permissible, cross examination of any individuals present shall not be permitted.** As the very nature of this proceeding indicates, the **employer is not required to prove or even present its case;** rather, it represents an opportunity for the charged individual to respond to the specified charges before the employer makes a final decision.

With respect to witnesses, consistent with the above outline, the **State will not have any.** You may **[\*8]** have your client testify, and you may also bring a reasonable number of individuals who have something directly relevant to offer about this matter. . . .

Finally, no administrative post-termination process is required in this case, and none will be offered. . . .

I **do not know who would act as the hearing officer.** In the meantime it is imperative that you provide me with an early hearing date availability so that it can be **held** by April 15.

(*Id.* at A52-53) (emphasis added). Plaintiff's counsel responded by letter stating that such a procedure was deficient and that plaintiff was withdrawing his retirement letter. (*Id.* at A56, 57) On April 6, 1994, Nazario discharged plaintiff by letter. (*Id,* at A58-59)

## III. DISCUSSION

## A. Plaintiff's Motion for Summary Judgment

*Federal Rule of Civil Procedure 56(c)* provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if "the [*9] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A fact is "material" if it might affect the outcome of the litigation under the applicable law. *Id.* A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.*

The mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson, 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. However, "any inference to be drawn from facts contained in depositions and exhibits must be viewed in the light most favorable to the non-moving party." *Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993)*. "In deciding [*10] a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial." *Id.*

Plaintiff moves for summary judgment on

his procedural due process claim, asserting that defendants failed to provide him with adequate due process before terminating him from his position as Chief Medical Examiner for the State of Delaware. Specifically, plaintiff argues that defendants denied him a meaningful opportunity to be heard by only providing a pre-termination proceeding and, with respect to said proceeding, by failing to 1) identify and provide an impartial decision maker; 2) present witnesses or to provide an opportunity to cross-examine his accusers; and 3) give plaintiff sufficient notice. Defendants argue that due process only requires a pre-termination hearing and the requirements of such a hearing were clearly met.

It is axiomatic that when a citizen has a property right in continued employment, the State cannot deprive him of said right without due process of law. *E.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985)*. The [*11] parties agree that plaintiff, as a public employee subject to removal for cause, had a property interest in his continued employment. [3] (D.I. 9 at 9; 16 at 23)

3   The state statute that authorizes the Secretary of Delaware Department of Health and Human Services to appoint the Chief Medical Examiner reads, in relevant part, as follows:

(a) The Secretary may:

* * *

(3) Appoint, with the written approval of the Governor, an administrator and head of the Office of the Medical Examiner who shall be known as the Medical Examiner of the State for a term of 10 years, subject to reappointment, but **always subject to removal for cause.**

*29 Del.C. § 7903(a)(3)* (emphasis added).

Given this recognized property interest, the Court turns to the issue of what process plaintiff is due. The United States Supreme Court faced this question in *Loudermill* and stated that "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's [*12] evidence, and an opportunity to present his side of the story." ⁴ *Id. at 546.* While the hearing "need not be elaborate" and may be "'something less' than a full evidentiary hearing," it must provide the "determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id. at 545-546.*

4   Courts must consider three factors in determining whether procedures provided by the government comply with due process: 1) the private interest that will be affected by the official action; 2) the risk of erroneous deprivation of the interest through the procedure employed and the probable value of additional procedural safeguards; and 3) the government's interest including the fiscal and administrative burdens an additional process would create. *Mathews v. Eldridge, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).* "With respect to certain property interests, the Supreme Court has already engaged in the prescribed balancing. Thus, it is clear that before a full-time tenured public employee may be discharged, a state must provide the worker with notice and a hearing." *Ritter v. Cohen, 797 F.2d 119 (3d Cir. 1986).*

[*13] These are broad parameters drawn by *Loudermill* in a context in which the plaintiff was provided both pre-termination and

post-termination proceedings. *Id. at 546* ("Our holding rests in part on the provisions in Ohio law for a full post-termination hearing."). However, in the case at bar no post-termination proceedings were offered and, thus, this case presents the more narrow issue of the adequacy of defendants' offered pre-termination proceeding, given their refusal to offer a post-termination hearing. ⁵

5   A post termination hearing is not always constitutionally required.

In *Loudermill,* the Court held, *inter alia,* that due process requirements were satisfied where the government provided a pre-termination opportunity to respond, coupled with post-termination procedures as provided by a state statute. The Court did not hold that a post-termination hearing was constitutionally required in all cases[,] however. Instead, it noted that "'the root requirement' of the Due Process Clause [is that] 'an individual be given an opportunity for a hearing **before** he is deprived of any significant property interest.

*Vukadinovich v. Bd. of School Trustees of Michigan, 978 F.2d 403 (7th Cir. 1992), cert. denied, 126 L. Ed. 2d 97, 114 S. Ct. 133 (1993)*; *see also Calhoun v. Gaines, 982 F.2d 1470, 1476 (10th 1992)* ("*Loudermill* established that some form of a pre-termination hearing, plus a full blown adversarial post-termination hearing (unless such was included as part of the pre-termination proceedings) are required.").

[*14] The adequacy and formality of the

pre-termination process offered plaintiff hinges on two components, "the importance of the property interest and the **nature of the subsequent proceeding.**" *Fultz v. Davis, 1991 U.S. App. LEXIS 18618, 90-6039* and 91-5058, slip op. at 5 (3d Cir. July 15, 1991) *(citing Loudermill, 470 U.S. at 545)* (emphasis added); *see also Brasslett v. Cota, 761 F.2d 827 (1st Cir. 1985)* ("The specific procedural requirements are to be determined with reference to the interests involved and the availability and extent of post-termination review."). The property right to one's livelihood is extremely important. "The significance of the private interest in retaining employment cannot be gainsaid." *Loudermill, 470 U.S. at 543.* If the subsequent proceedings are limited, or non-existent, the due process requirements for the pre-termination proceedings become more substantial. "[A] *Loudermill* hearing must be more or less elaborate in inverse proportion to the adequacy of post-termination proceedings." *Fultz,* slip op. at 7.

In the case at bar, the Court rejects defendants' position that plaintiff's right to due process was satisfied by a *Loudermill* pre-termination **[*15]** hearing. Although an "abbreviated pre-termination procedure may satisfy due process," such is the case only "if plaintiff receive[s] a full and fair hearing within a reasonable time after termination." *Adams v. Sewell, 946 F.2d 757 (11th Cir. 1991), overruled on other grounds by McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994); Ritter, 797 F.2d at 122* (pre-termination procedures are adequate when they meet *Loudermill* requirements and a post-termination full hearing exists). The United States Court of Appeals for the Eighth Circuit has held that a *Loudermill*-type pre-termination procedure is adequate when plaintiff is allowed an opportunity to be heard after termination. *Winegar v. Des Moines Independent Comm. School District, 20 F.3d 895 (8th Cir. 1994)* However, when no such right is afforded, such a pre-termination procedure is not sufficient. *Id.* In the absence of any post-termination

proceeding, a limited pre-termination proceeding generally is not adequate. *See Kelly v. Smith, 764 F.2d 1412, 1415 (11th Cir. 1985), overruled on other grounds by McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994)* ("The assurance that a full evidentiary hearing will **[*16]** be forthcoming is one of the primary reasons for allowing abbreviated pre-termination procedures.")

Plaintiff asserts that the pre-termination hearing as proposed by defendants was specifically inadequate because he was afforded inadequate notice, inadequate identification of an impartial hearing officer, and an inadequate opportunity to cross-examine his accusers. With respect to notice, the Court finds plaintiff in fact had adequate notice of the charges and the hearing. "Advance notice is not a per se requirement of due process." *Morton v. Beyer, 822 F.2d 364, 369 (3d Cir. 1987).* Notice is sufficient "1) if it apprises the vulnerable party of the nature of the charges and general evidence against him and 2) if it is timely under the particular circumstances of the case." *Id.* The Court notes that on March 29, 1994, Nazario gave plaintiff until April 5, 1994 to decide simply if he **wanted** a pre-termination proceeding, not, as plaintiff suggests, to hold the hearing. (D.I. 17 at 31-33) A week, even encompassing the holidays, was a sufficient opportunity to decide if a hearing was desired. Additionally, the letters received by plaintiff by April 4, 1994 fully listed the **[*17]** charges against him.

With respect to defendants' failure to identify the hearing officer, plaintiff's claim is also without merit. Plaintiff has a constitutional right to an impartial hearing officer. *Ringer v. Fallis, 848 F. Supp. 519, 524 (D.Del 1994).* The Court has not found, nor has plaintiff directed the Court to any authority suggesting that he has a right to know the identity of the hearing officer prior to the hearing. Moreover, there is no indication on the record that the officer selected by the State would not be neutral.

A more difficult question is whether the right to confront and cross-examine one's accusers is constitutionally required under the circumstances at bar. As a fundamental matter, confrontation and cross-examination are "principles . . . relatively immutable in our jurisprudence." *Greene v. McElroy, 360 U.S. 474, 496-487, 3 L. Ed. 2d 1377, 79 S. Ct. 1400 (1959).* Nevertheless, it is not clear whether such principles have an application in employment termination proceedings. The circuits are not uniform in their analysis. *E.g., Nevels v. Hanlon, 656 F.2d 372, 376 (8th Cir. 1981)* ("It is fundamental to a full and fair review required by due process **[*18]** that a litigant have an opportunity to be confronted with all adverse evidence and to have a right to cross-examine available witnesses."); *Riggins v. Bd. of Regents of Univ. of Nebraska, 790 F.2d 707 (8th Cir. 1986)* (failure of defendants' grievance procedure to provide opportunity to confront and cross-examine witnesses did not deny due process); *Terry v. Murphy, 1990 U.S. Dist. LEXIS 7264 (W.Mo. 1990) (Nevels,* not *Riggins,* states the correct law in the Eighth Circuit); *Adams, 946 F.2d 757* (reasonable juror could conclude that a constitutional violation occurred when plaintiff not afforded opportunity to cross-examine accusers during post-termination proceedings); *Vukadinovich, 978 F.2d at 410* (cross-examination provided). The Court has not found, nor have the parties directed it to, a case in which the United States Court of Appeals for the Third Circuit has addressed the issue directly. (D.I. 23 at 22)

For these reasons, the Court finds the analysis of the Court of Appeals for the Tenth Circuit persuasive.

Whether the Due Process Clause requires that the terminated employee be offered the right to cross-examine or confront witnesses depends upon **[*19]** the significance and nature of the factual disputes at issue.

*West v. Grand County, 967 F.2d 362, 369 (10th Cir. 1992).* This position is consistent with the views expressed by at least one member of the Third Circuit bench in a concurring opinion.

The district court's conclusion that procedures were infirm because McKeesport could not cross examine and confront the RRC reviewers overstates the constitutional requirement of 'adequate notice and an opportunity to be heard by an appropriate tribunal.' **The constitution requires a proceeding appropriate under the circumstances; it does not require confrontation and cross examination in every proceeding.**

*McKeesport Hosp. v. Accreditation Council, 24 F.3d 519 (3d Cir. 1994)* (Becker, J. concurring) (citations omitted) (plaintiff's allegation of denial of due process in withdrawal of accreditation for hospital program lacks state action).

The Court's task is to ensure that the process afforded the plaintiff by the State satisfied "the fundamental requirement of due process [which] is the opportunity to be heard at **a meaningful time** and in a **meaningful manner,"** *Riggins, 790 F.2d at 711-712* **[*20]** *(quoting Mathews v. Eldridge, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)),* under all of the circumstances. The Court finds that the proposed hearing did not provide plaintiff with a meaningful opportunity to be heard in a meaningful manner.

The pre-termination hearing as proposed by LoFaro defeats the very purpose of such a proceeding, that is, to determine "whether there are reasonable grounds to believe that the charges against the employees are true and

support the proposed action." *Loudermill 470 U.S. at 545-546.* The hearing would not demonstrate the truthfulness of the accusations for several reasons. First, under this scheme defendants did not have to put on a case. Second, plaintiff could not challenge the veracity of his accusers because he could not confront them nor could he challenge the integrity of the investigators because he could not ask them questions. Third, he could not challenge the authenticity of the allegedly transcribed diary notes because he could not question the method in which they were prepared either in their original form or in their current mimeographed typewritten form.

Defendants claim that LoFaro's letter stated that there **[*21]** was an opportunity to do the above implicitly in the phrase "reasonable give and take." To require plaintiff to assume that such was the meaning of such a colloquial phrase, when the remainder of the letter states with specificity what will not be allowed, is unrealistic. Rather, the very structure of the hearing, as described on April 4, 1994, suggests that it was crafted, not to test the evidence gathered but, rather, to challenge plaintiff's defense by subjecting him to additional questioning. This conclusion is all the more compelling given the lack of a post-termination hearing. In *Fultz,* the court held, *inter alia,* that

even if Fultz had received a *Loudermill* hearing on all three charges, however, we would nevertheless be compelled to reverse the district court's grant of summary judgment because the post-termination proceedings available to Fultz were severely limited in scope. . . . Fultz was denied procedural due process because the pre-termination hearings he was afforded were inadequate in light of the limited post-termination proceedings available.

*Id.*

The Court concludes that, under the circumstances presented, where plaintiff's termination **[*22]** was based upon serious accusations having possible criminal implications, due process required confrontation and cross-examination of the State's witnesses. [6] The Court acknowledges that defendants do not have the power to require Smith and Doe to be present at such a hearing. However, plaintiff should have the opportunity to challenge all witnesses the State can compel to be at the hearing, particularly those people interviewed for and involved in the investigation.

6   The United States Court of Appeals for the Tenth Circuit, when faced with a similar accusation, in the context of a liberty interest, stated:

We believe that the perjury allegation was of a serious enough nature that at this hearing Mr. Melton should have been given the right to confront and cross-examine those who charged him with dishonesty.

*Melton v. City of Oklahoma City, 879 F.2d 706, 722,* (10th Cir. 1989), *vacated and remanded on other grounds, 928 F.2d 920, cert. denied, 112 S. Ct. 296 (1991).*

**B. Remedy**

Plaintiff **[*23]** has cited the Court to binding authority supporting his claim that the appropriate remedy for a denial of adequate pre-termination procedures is reinstatement and back pay. *Anapol v. University of Delaware, 412 F. Supp. 675, 680 (D.Del. 1976); Skehan v. Board. of Trustees, 501 F.2d 31, 40-41 (3d Cir.*

1974), *vacated on other grounds*, 421 U.S. 983 (1975).

Defendants have directed the Court to no authority to support their claim that this is an inappropriate remedy. Instead, defendants argue that, if any violation has occurred, it has only been a violation of plaintiff's right to a post-termination hearing and, thus, that is all plaintiff can be awarded. Defendants' argument fails for two reasons. First, the Court has held that defendants' error was the inadequate procedures afforded plaintiff. It can be characterized as a failure to provide post-termination procedures, or a failure to provide adequate pre-termination procedures in light of the decision not to provide post-termination procedures. In any event, the injury is unchanged: plaintiff has lost a valuable property right without due process. He has lost his employment and salary of the position of Medical Examiner **[*24]** for the State of Delaware, without an opportunity to protect it. Had defendants not violated his constitutional right, no such injury would have occurred. Thus, plaintiff should receive the property of which he has been deprived.

Secondly, defendants argue that plaintiff waived his pre-termination procedure based on his own speculation that he would not receive a fair hearing. He should not be allowed, they argue, to make the State pay for his erroneous judgment. If he had gone through with the hearing, defendants assert, he would have experienced an impartial hearing and his only claim currently would be for a post-termination hearing. This argument might hold some merit if either 1) defendants offered plaintiff a constitutionally adequate pre-termination procedure or 2) plaintiff was unaware at the time of his decision that he was not going to receive a post-termination hearing. However, the facts indicate otherwise. To adopt defendants' position would be to allow the State to offer employees grossly inadequate procedures, deny them their constitutionally protected due process rights to their property, and face as a penalty for such behavior simply having to provide the procedure **[*25]** they should have provided in the first instance. Such a method requires plaintiffs to pay for the unconstitutional actions of defendants and is an inadequate remedy.

## C. Defendants' Motion to Dismiss

7    It is unclear to the Court whether defendants still pursue their claim that they cannot be sued in their official capacity. Defendants specifically excluded that argument from their joint stipulation to withdraw their motion to dismiss (D.I. 14 at 1) but did not raise the argument in their subsequent papers. (D.I. 23) In any event, the Court agrees with plaintiff that he may sue defendants in their official capacities for injunctive relief and in their individual capacities for damages. *Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 fn. 10, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989)*; *Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 364, 116 L. Ed. 2d 301 (1991)*.

In ruling on a *Rule 12(b)(6)* motion to dismiss for failure to state a claim upon which relief can be granted, the allegations of **[*26]** the complaint must be accepted as true. *Cruz v. Beto, 405 U.S. 319, 322, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972)* (*per curiam*). The Court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the complaint. *Retail Clerks Inter. Ass'n. v. Schermerhorn, 373 U.S. 746, 10 L. Ed. 2d 678, 83 S. Ct. 1461 (1963)*, *aff'd, 375 U.S. 96, 11 L. Ed. 2d 179, 84 S. Ct. 219 (1963)*. Additionally, the Court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *Hughes v. Rowe, 449 U.S. 5, 10, 66 L. Ed. 2d 163, 101 S. Ct. 173 (1980)* (*per curiam*). The "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*.

Defendants move to dismiss plaintiff's claim, arguing that, in the case of a due process violation, they have qualified immunity for their actions because no reasonable person would have thought that their actions were unlawful. (D.I. 9 at 2; D.I. 23 at 23) Plaintiff disputes that analysis, stating that the law **[*27]** is clear that defendants must provide a post-termination hearing, an impartial decision maker, and the right to confront witnesses. Therefore, defendants violated a clearly established right and are not immune from liability under the doctrine of qualified immunity.

The burden of establishing qualified immunity is on the defendant officials. *Ringer, 848 F. Supp. at 524*. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)*. A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)*.

> There need not have been an actual case holding that the specific conduct at issue is unlawful, but the unlawfulness of the action in question must be apparent from previous court decisions. Thus, if there is no precedent **[*28]** directly on Point, an official is protected by qualified immunity of reasonable officials in the defendants' position at the relevant time could have believed in light of what was in the decided caselaw, that their conduct would be lawful.

*Sturgess v. Negley, 761 F. Supp. 1089, 1097 (D.Del. 1991)* (citations omitted).

Plaintiff alleges that "defendants Nazario and LoFaro should have known, as any reasonable official in their shoes would, that plaintiff was entitled to adequate due process. . . ." (D.I. 16 at 40) The issue before the Court is whether the parameters of "adequate due process" were so apparent from previous court decisions that defendants knew, or should have known, that their actions were unlawful. The above analysis indicates that there is no precedent directly on point and that the scope of plaintiff's procedural due process rights was not clearly defined so as to expose defendants to personal liability. Therefore, defendants are entitled to qualified immunity with respect to plaintiff's Procedural due process claim.

## V. CONCLUSION

For the reasons stated, plaintiff's motion shall be granted and defendants' motion shall be granted in part and denied **[*29]** in part. An order consistent with this memorandum opinion shall issue forthwith.

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I electronically filed the foregoing Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Barry M. Willoughby, Esquire
Seth J. Reidenberg, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street - 17th Floor
Wilmington, DE 19801
Attorneys for Defendants


*/ s/ Joseph M. Bernstein*
JOSEPH M. BERNSTEIN (Bar #780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
E-mail: jmbernstein@embarqmail.com