IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDWARD A. BILISKI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-740-GMS |
| ) | |
| RED CLAY CONSOLIDATED SCHOOL ) | |
| DISTRICT BOARD OF EDUCATION, ) | |
| IRWIN J. BECNEL, JR., CHARLES ) | |
| CAVANAUGH, GARY LINARDUCCI, ) | |
| JAMES J. BUCKLEY, MARGUERITE ) | |
| VAVALA, YVONNE JOHNSON, ) | |
| MARTIN A. WILSON, SR, individually ) | |
| and in their official capacities as members ) | |
| of the Red Clay Consolidated School ) | |
| District Board of Education, ROBERT ) | |
| J. ANDRZEJEWSKI, individually and in ) | |
| his official capacity as Superintendent of ) | |
| Red Clay Consolidated School District; and ) | |
| RED CLAY CONSOLIDATED SCHOOL ) | |
| DISTRICT, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWERING BRIEF**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby, Esquire (I.D. No. 1016)
Seth J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; 571-6706
Facsimile: (302) 576-3345; 576-3442
Email: bwilloughby@ycst.com; sreidenberg@ycst.com
Attorneys for Defendants

Dated: November 16, 2007

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ...................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 2

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

    I.    PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT AS A COMPUTER TECHNICIAN AND THEREFORE WAS NOT ENTITLED TO PROCEDURAL DUE PROCESS. ........................................... 5

    II.    EVEN IF PLAINTIFF HAD A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST, PLAINTIFF WAS PROVIDED WITH PROCEDURAL DUE PROCESS AS REQUIRED BY THE FOURTEENTH AMENDMENT. ........................................... 8

    III.    PLAINTIFF HAS NOT SUFFERED ANY HARM AND IS NOT ENTITLED TO DAMAGES. ........................................... 10

    IV.    PLAINTIFF'S ARGUMENT THAT COLLATERAL ESTOPPEL APPLIES IS WITHOUT MERIT. ........................................... 11

CONCLUSION ................................................................................................................... 16

## TABLE OF CITATIONS

Page

**Cases**

*Abex Corp. v. Todd*,
   235 A.2d 271 (Del. Super. 1967) ........................................................................................ 14

*Alexander v. Polk*,
   750 F.2d 250 (3d. Cir. 1984)............................................................................................... 10

*Barkauskie v. Indian River School Dist.*,
   951 F. Supp. 519 (D. Del. 1996) ....................................................................................... 8, 9

*Bishop v. Wood*,
   426 U.S. 341 (1976) ............................................................................................................. 6

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985) .......................................................................................................... 8, 9

*Gaines v. Wilm. Trust Co.*,
   C.A. No. 90C-MR-135, 1991 Del. Super. LEXIS 207
   (Del. Super. June 3, 1997) .................................................................................................... 6

*Greene v. Connecticut Mutual of Life Insurance Co.*,
   C. A. No. 4869, 1979 Del. Ch. LEXIS 380
   (Del. Ch. Sept. 19, 1979) .................................................................................................... 12

*Haney v. Laub*,
   312 A.2d 330 (Del. Super. 1973) ......................................................................................... 6

*Healthtrio, Inc. Margules*,
   C.A. No. 06C-04-196, 2007 Del. Super. LEXIS 34
   (Del. Super. Jan. 16, 2007) ................................................................................................. 14

*Kelly v. Sayreville*,
   107 F.3d 1073 (3d Cir. 1997)............................................................................................ 6, 7

*Knotts v. Bewick*,
   467 F. Supp. 931 (D. Del. 1979) ........................................................................................ 10

*Messick v. Star Enterprise*,
    655 A.2d 1209 (Del. Supr. 1995) ........................................................................... 12, 13, 14

*Morris v. Bd. of Educ. of the Laurel Sch. Dist.*,
   401 F. Supp. 188 (D. Del. 1975) .......................................................................................... 7

ii

*PIC, Inc. v. The Prescon, Corp.*
  485 F. Supp. 1302 (D. Del. 1980) ........................................................................... 12

*Starky v. Unemployment Appeals Board*,
  340 A.2d 165 (Del. Super. 1975) ........................................................................... 14

*Stiner v. Univ. of Del.*,
  C.A. No. 02-312, 2004 U.S. Dist. LEXIS 17221
  (D. Del. Aug. 27, 2004) ........................................................................................... 6

*Swineford v. Snyder County Pennsylvania*,
  15 F.3d 1258 (3d Cir. 1994) ............................................................................ 12, 13

*Taylor v. State,*
  402 A.2d 373 (Del. 1979) ...................................................................................... 14

*Thomas v. Town of Hammonton*,
  351 F.3d 108 (3d Cir. 2003) .................................................................................... 7

## Statutes

19 *Del. C.* § 3314(2) ..................................................................................................... 14

42 U.S.C. § 1983 ............................................................................................................. 1

## Other Authorities

*Restatement (Second) of Judgments* § 28(5) ............................................................... 12

iii

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Edward A. Bilsiki ("Plaintiff" or "Biliski") filed a complaint against Red Clay Consolidated School District Board of Education (the "Board"), the members of the Red Clay Consolidated School District Board of Education, the Superintendent of Red Clay Consolidated School District, as well as Red Clay Consolidated School District ("Red Clay" or "the District") itself, asserting a claim pursuant to 42 U.S.C. § 1983.  Plaintiff claims that his procedural due process was violated when he was terminated from his computer technician position with Red Clay.  In his complaint, Plaintiff seeks reinstatement with Red Clay, compensatory damages, including back pay, front pay, fringe benefits, and costs and attorneys' fees.

The parties have conducted discovery, including the exchange of documents and the taking of several depositions.

The Defendants filed a Motion for Summary Judgment and their Opening Brief in support of the same on October 29, 2007. (D.I. 36; D.I. 37)  On the same day, Plaintiff filed a cross Motion for Summary Judgment.  This is Defendants' Answering Brief to Plaintiff's Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

Plaintiff raises a single claim in his complaint. He alleges that his procedural due process rights pursuant to the Fourteenth Amendment were violated when he was terminated. For the reasons asserted in this Answering Brief and in Defendants' Opening Brief, the Plaintiff is wrong. The Plaintiff had no constitutionally protected property interest in his employment with Red Clay. However, even assuming (arguendo) that he did, the Plaintiff received the procedural due process required by the U.S. Constitution – that is, notice of the job misconduct and an opportunity to be heard by the Board prior to the decision to terminate him.

Lastly, even assuming Plaintiff can prove that his procedural due process rights were violated (which they were not), Plaintiff is not entitled to damages. The District had a reasonable basis for terminating his employment and he would have been terminated even if he received procedural due process. Moreover, the doctrine of collateral estoppel does not prohibit Defendants from proving this.

## STATEMENT OF FACTS[1]

In Biliski's Opening Brief in support of his Motion for Summary Judgment, he asserts that, "[t]he historical facts which led to the termination of Biliski's employment are not in dispute." Pl. Op. Br. at 3.[2] Although Biliski does not define what he considers to be the "historical facts which led to his termination" it seems fair for the Court to assume that he is referring to the reasons identified by Red Clay for recommending to the Board that he be terminated since he does not address them at all. Furthermore, Biliski does not contest that:

- he had performance problems at Red Clay that were originally identified starting March 30, 2006 (Def. Op. Br. at 4-6;[3] Def. Op. Br. App. at A3)[4]

- such disciplinary issues included his failure to perform several assignments given to him by his superiors and his inappropriate behavior during a Customer Service Training Seminar (Def. Op. Br. at 4-6; Def. Op. Br. App. at A3);

- a meeting was held with Biliski and Cara Gaudino ("Gaudino") and Ted Ammann ("Ammann") to discuss these performance problems (Biliski 130-141; Def. Op. Br. App. at A54-65);

- he received a disciplinary memorandum on July 31, 2006 because he failed to meet a deadline to complete a wiring job in the Intermediate Distribution Facility (Def. Op. Br. at 6-7; Def. Op. Br. App. at A4); and

- he received three disciplinary memoranda on August 8, 2006 because: (1) of his inappropriate conduct and leaving the office without notifying his supervisor, twice, once on July 31, 2006, and once on August 1, 2006, (2) he ignored his supervisor's instructions to park in the front of the building during an extensive construction project, and (3) he refused to carry out an assignment from Technician Assistant, Barbara Moore ("Moore") (Pl. Op. Br. at 3, Def. Op. Br. at 8-10; Def. Op. Br. App. at A6-8).

---

[1] The Defendants have provided a detailed Statement of Facts in their Opening Brief in Support of Their Motion for Summary Judgment. Rather than repeat the same facts again, Defendants incorporate by reference the Statement of Facts from their Opening Brief. Def. Op. Br. at 3-13.
[2] References to Plaintiff's Opening Brief will be referred to as "Pl. Op. Br. at ___."
[3] References to Defendants' Opening Brief will be referred to as "Def. Op. Br. at _____."
[4] References to Defendants' Appendix to their Opening Brief will be referred to as "Def. Op. Br. App. at _____" and references to Plaintiff's Appendix to his Opening Brief will be referred to as "Pl. Op. Br. App. at _____."

3

Biliski further does not dispute that:

- on August 8, 2006, Biliski was notified in writing that Red Clay was recommending to the Board that he be terminated for the reasons set forth in the multiple disciplinary memoranda (Pl. Op. Br. at 3; Def. Op. Br. at 10-11; Def. Op. Br. App. at A9);

- on August 8, 2006, when Biliski saw the letter, he became extremely agitated and threw his I.D. Badge and a pencil at Ammann (Pl. Op. Br. at 3; Def. Op. Br. at 10; Biliski 194-195; Def. Op. Br. App. at A92-93);

- after the August 8, 2006 meeting, Biliski contacted the individual Board members by telephone to refute the reasons relied upon by Red Clay in recommending he be terminated (Pl. Op. Br. at 4);

- Biliski had conversations with some of the Board members regarding the reasons for the recommendation to terminate him (Pl. Op. Br. at 4);

- Biliski asked for and received permission to submit a rebuttal to the allegations supporting his termination to the Board (Pl. Op. Br. at 4);

- the Board received and reviewed the rebuttal letter and accompanying documents prior to any vote on whether to terminate Biliski (Pl. Op. Br. at 4-5, Def. Op. Br. at 11-12; Becnel 13-15; Def. Op. Br. App. at A111-13);[5]

- Biliski was not a member of a collective bargaining unit (Def. Op. Br. at 12; Dunmon 19-20; Davenport 13, 18-19; Becnel 21; Def. Op. Br. App. at A107-08; A98-100; A-114); and

- Biliski had no employment contract with Red Clay (Def. Op. Br. at 12; Dunmon 19-20; Davenport 13, 18-19; Becnel 21; Def. Op. Br. App. at A107-08; A98-100; A-114).

---

[5] Biliski incorrectly asserts in his Opening Brief that recommendations for termination are reviewed and voted on in executive session. (Pl. Op. Br. at 5) Irwin J. Becnel, Jr., President of the Board, testified that the Board reviews the recommendations in executive session, but approval of personnel decisions are done in the public session. (Becnel 9; Pl. Op. Br. App. at 22)

4

# ARGUMENT

## I. PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT AS A COMPUTER TECHNICIAN AND THEREFORE WAS NOT ENTITLED TO PROCEDURAL DUE PROCESS.

Biliski correctly notes in his Opening Brief that in order for him to prevail on his claim against the Defendants, he must first prove that he had a constitutionally protected property interest in his continued employment with Red Clay. As was set forth in detail in Defendants' Opening Brief in Support of Their Motion for Summary Judgment, Biliski did not have a constitutionally protected property interest in his continued employment. *See* Argument I of Def. Op. Br. at 14-17.[6] Biliski did not have a protected property interest in his employment with Red Clay as a Computer Technician because the position was at-will, and as such, he was not entitled to any procedural due process prior to his termination. Nothing in Biliski's Opening Brief refutes this.

Biliski rests his entire argument on a Red Clay personnel policy adopted in 1985 ("1985 Policy") he now contends was applicable to his employment. The 1985 policy he contends applies provides a "just and reasonable cause" standard for termination of employees. Biliski's argument is without merit for several reasons.

First, the 1985 policy did not apply to Biliski. Biliski was considered an employee at-will by Red Clay. (Def. Op. Br. at 12; Dunmon 19-20; Davenport 13, 18-19; Becnel 21; Def. Op. Br. App. at A107-08; A98-100; A-114). Biliski does not refute this fact. Biliski does not cite to any facts in his Opening Brief that connect the 1985 policy to his position with Red Clay.

---

[6] The arguments raised by Plaintiff in his Opening Brief are the counter to the arguments raised in Defendants' Opening Brief in Support of Their Motion for Summary Judgment. In an effort to avoid repetition, the Defendants incorporate and adopt by reference the arguments raised in their Opening Brief (D.I. 37).

Second, the 1985 policy does not give rise to a legitimate claim of entitlement to continued employment to Biliski. The federal courts look to state law, not federal law, to determine whether an employee has a protected property right in his/her continued employment. *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *see also Stiner v. Univ. of Del.*, C.A. No. 02-312, 2004 U.S. Dist. LEXIS 17221 (D. Del. Aug. 27, 2004).

It is well established that Delaware is an employee at-will state. *Haney v. Laub*, 312 A.2d 330, 332 (Del. Super. 1973). It is also well-established that under Delaware law employer policies such as those contained in an employee handbook concerning grounds for termination of employment or other discipline do not rise to the level of an employment contract and do not alter an employee's at-will status. *Gaines v. Wilm. Trust Co.*, C.A. No. 90C-MR-135, 1991 Del. Super. LEXIS 207 (Del. Super. June 3, 1997); *see also*, *Haney* at 332. A unilateral expression of a policy by an employer such as that provided in a handbook does not modify an employee's at-will status. *Gaines* at *5. Accordingly, even if (arguendo) Biliski had been aware of the policy during his employment and it applied to him, it would be insufficient to alter his employment at-will status under Delaware law. *See* Def. Op. Br. at 16-17.

Biliski relies on *Kelly v. Sayreville*, 107 F.3d 1073 (3d Cir. 1997), as support for the conclusory statement that employment contracts that contain a "just cause" provision create a property interest in continued employed. This reliance is misplaced. First, the court in *Kelly* considered whether a New Jersey state *statute* that required "just cause" to terminate a police officer created a protected property right for the plaintiff, not an employment contract. *Id.* at 1077. Second, even if you could extrapolate the finding in *Kelly* (that the statute created a property interest) to employment contracts, *Kelly* is not applicable in this case because the court looked to New Jersey law, not Delaware law, in making its decision. *Id.* Lastly, it was clear that

6

the New Jersey statute applied to the plaintiff in *Kelly* because he was a police officer.  In this case, the 1985 policy Biliski refers to **did not** apply to him.

Biliski also cites to *Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003) (in a footnote) without any discussion of how *Thomas* supports his argument.  Pl. Op. Br. at 11, fn. 6.  In reading *Thomas*, it is clear that it does not.  The court in *Thomas* concluded that a New Jersey state law that required an employee be given notice and a hearing before being terminated did not "transform her interest in continued employment into a property interest protected by the Due Process Clause."  *Id.* at 113.  The focus for the court was not on the process required by the statute but whether she was an at-will employee.  The court determined she was an at-will employee and that such determination was fatal to her due process claim.  *Id.*  In this case, if the Court concludes that Biliski was an at-will employee, such a determination is fatal to his due process claim.

Lastly, it is fundamental that ". . . the employee's property interest must amount to more than a mere unilateral expectation of continued employment." *Morris v. Bd. of Educ. of the Laurel Sch. Dist.*, 401 F. Supp. 188, 208 (D. Del. 1975) (*quoting Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972))  There is no dispute that the 1985 policy was not provided to Biliski as part of his employment.[7]  Likewise, there is no dispute that he was not aware of it until after his termination. (Biliski 10-11; Def. Op. Br. App. at A30-31).  The 1985 policy therefore could not have created a legitimate expectation of continued employment.  *See* Def. Op. Br. at 16-17.

Accordingly, Biliski's claim that the policy created a property interest is therefore without merit.

---

[7] His employer did not consider the policy in question to apply to him.

II.  **EVEN IF PLAINTIFF HAD A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST, PLAINTIFF WAS PROVIDED WITH PROCEDURAL DUE PROCESS AS REQUIRED BY THE FOURTEENTH AMENDMENT.**

Even if this Court were to conclude that Biliski had a constitutionally protected property interest, Biliski was provided with procedural due process that met constitutional standards. The essential requirements of due process are notice of the charges and an opportunity to be heard. *Walls v. City of Milford*, 938 F. Supp. 1218, 1222 (D. Del. 1996) (*quoting Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). Biliski admits that at the August 8th meeting with Ammann, Biliski's supervisor, and Debra Davenport ("Davenport"), Red Clay's Manager of Human Resources, he was given notice of the reasons for the District's recommendation to the Board that he be terminated. (Pl. Op. Br. at 3). Biliski further admits that after he calmed down, he re-read the termination letter and realized that the Board had to approve the District's recommendation that he be terminated. *Id.* at 4. (Biliski 195-196; Pl. Op. Br. App. at A13). Almost immediately after the August 8th meeting, Biliski called and spoke with several Board members in an effort to present "his side of the story." (Biliski 7-10; Pl. Op. Br. App. at A9-10; Pl. Op. Br. at 4). Biliski further requested the opportunity to present a rebuttal letter to the Board for their consideration prior to any vote on the recommendation, which was granted. On August 16, 2006, Biliski delivered to the Board his written rebuttal to the allegations against him which the Board reviewed prior to voting on whether to terminate him (Pl. Op. Br. at 4; Pl. Op. Br. App. at A34-48).

"Where a discharged public employee is given notice of the charges, an adequate explanation of the evidence, and an adequate opportunity to present his side of the story, his due process rights are not violated." *Barkauskie v. Indian River School Dist.*, 951 F. Supp. 519, 533 (D. Del. 1996). Notice of the charges need not be formal and need not be in great detail. *Id.*

Notice need only provide the employee a meaningful opportunity to respond in the sense that he must know the substance of the case the employer has against him.  *Id.*

Procedural due process also requires some kind of a hearing prior to discharge. *Id.*  The purpose of having a hearing is "to provide an initial check against whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action."  *Walls* at 1222 *citing Loudermill*, 470 U.S. at 545-546.  The opportunity to be heard need not be elaborate, and it can vary depending on the importance of the interests involved and the nature of the subsequent proceedings.  *Id.*  The opportunity to present reasons, either in person or in writing, as to why a proposed action should not be taken, can satisfy the due process requirement.  *Id.*

In this case, Biliski admits (as he must) that he was provided notice and an opportunity to present his side of the story to the Board prior to any decision on his termination which satisfied the minimum constitutional requirements, thus, he received constitutional due process.  Biliski argues that following the August 8th meeting, he was not given notice of the time and place of the hearing nor was he invited to appear.  These arguments are smokescreens designed to cloud the issue.  It is clear from Biliski's testimony that he knew when and where the meeting was to be held.  He had conversations with several Board members.  He requested and was granted permission to submit a written response for the Board to consider.

Furthermore, Biliski's argument that he was not provided the opportunity to appear in-person before the Board does not create a procedural due process violation.  First, there is no evidence to suggest that Biliski asked to appear in-person to address the Board.  Second, due process does not require that an aggrieved employee be provided an opportunity to appear in-person at a hearing.  In addition, Biliski was given an opportunity to present his reasons, in

9

writing, to the Board as to why the recommendation to terminate him should not be accepted. None of Biliski's arguments negate the uncontested facts that Biliski was given notice of the reasons for his termination and an opportunity to be heard. The process Biliski received prior to his termination satisfied the required constitutional due process.

### III. PLAINTIFF HAS NOT SUFFERED ANY HARM AND IS NOT ENTITLED TO DAMAGES.

Assuming that Biliski: a) had a constitutionally protected property right and b) his procedural due process rights were violated, Biliski still cannot prevail because he has not suffered any harm and, therefore, he is not entitled to any award for damages. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Where a technical violation of procedural due process is found, a plaintiff is not automatically entitled to an award of damages. *Id.* at 260. Accordingly, if a defendant can prove that the decision to terminate would have been the same even if the correct process were followed, then the plaintiff has suffered no harm and is entitled to no award of damages. *Alexander v. Polk*, 750 F.2d 250, 263 (3d. Cir. 1984); *see also Knotts v. Bewick*, 467 F. Supp. 931, 936 (D. Del. 1979).

Assuming Biliski establishes a *prima facie* violation of his procedural due process rights, it is Defendants' burden to show by a preponderance of the evidence that Biliski would have been discharged anyway. *Alexander* at 264. The purpose of this test is to avoid the plaintiff from receiving a windfall, rather than compensation, when the results would have been the same if the correct process was followed. *Carey* at 260.

It is clear from the undisputed facts, that Biliski would have been terminated had he been provided procedural due process prior to his termination. The record establishes that Biliski had performance problems which were documented on four separate occasions within a

five-month period. Biliski was abusive to his co-workers and insubordinate. Biliski does not contest these performance issues and attitude problems. These issues were considered by the Board along with the fifteen-page rebuttal letter Biliski prepared. It is clear that whatever procedures the Board followed, the outcome would be the same – the Board would have terminated Biliski.

## IV.  PLAINTIFF'S ARGUMENT THAT COLLATERAL ESTOPPEL APPLIES IS WITHOUT MERIT.

Biliski's final argument is that the Defendants are foreclosed from contesting his claim that he was not terminated for "just cause" pursuant to the doctrine of collateral estoppel. Biliski argues that the determination by the Appeals Referee granting him unemployment benefits constitutes a final determination that no "just cause" existed to terminate him. This argument is without merit for several reasons. First, it assumes both that Biliski had a property interest in his position and that the Constitution requires that the "just cause" standard of the disputed 1985 policy applies to him. Second, it assumes that the doctrine of collateral estoppel applies. Lastly, it assumes that the "just cause" standard under the unemployment statute is the same as the 'just and reasonable cause" language of the 1985 policy, thereby satisfying the requirements of collateral estoppel. None of these assumptions are correct.

As noted above, the 1985 policy does not alter his employment at-will status under Delaware law. Further, assuming that Biliski had a property interest, he has no constitutional right to the process set forth in the policy. *See* Def. Op. Br. at 19-20*.* At best, he is entitled as a matter of constitutional law to minimal due process standards of "notice and an opportunity to be heard." He received both. *See* Def. Op. Br. at 17-19.

Second, the doctrine of collateral estoppel is not applicable in this case. Biliski argues that the decision of the Appeals Board to grant him unemployment benefits somehow

11

constitutes "collateral estoppel" and, therefore, prohibits the Defendants from arguing that he was dismissed for "just and reasonable cause" under the disputed 1985 policy. The courts have rejected this argument.

Collateral estoppel is a doctrine of public policy "designed to put an end to litigation once a party has had his day in court and a full opportunity to present his case." *Greene v. Connecticut Mutual of Life Insurance Co.*, C. A. No. 4869, 1979 Del. Ch. LEXIS 380, *8 (Del. Ch. Sept. 19, 1979). In determining whether the doctrine should be applied, courts must weigh the principles of fairness and justice and statutory public policy against the desire to end litigation and avoid conflicting decisions. *Messick v. Star Enterprise,* 655 A.2d 1209, 1212 (Del. Supr. 1995) (*citing Continental Can Co. v. Hudson Foam Latex Prod.*, 324 A.2d 60, 61-62 (1974)) (the doctrine should be applied "to contribute to the greatest good for the greatest number, so long as fairness is not sacrificed on the altar.") Thus, the policy goal underlying collateral estoppel must be balanced against fundamental fairness to the litigants. One important consideration in assessing the fairness of applying collateral estoppel is whether the party against whom issue preclusion is invoked had "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Restatement (Second) of Judgments* § 28(5). *See also PIC, Inc. v. The Prescon, Corp.* 485 F. Supp. 1302, 1311(D. Del. 1980) (noting the importance of the "adversariness and adequacy of the first proceeding.")

In *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258 (3d Cir. 1994), for example, the court did not give preclusive effect to an unemployment compensation decision in the context of a constitutional claim not only because of the procedural differences between the forums, but also because of the differences in the policies and goals between anti-discrimination and unemployment compensation statutes. *Swineford* at 1269. The Third Circuit noted that to

12

give preclusive effect to unemployment decisions would undermine the goal of providing quick relief to applicants for unemployment compensation by encouraging vigorous employer defenses against such claims. *Id.*

In *Messick*, the Delaware Supreme Court recognized the important distinctions between an administrative hearing and litigation in the courts. The court noted "the differences between a worker's compensation proceeding and civil litigation are appreciable. Litigation in the Superior Court permits litigants to undertake full discovery of witnesses and parties, including document productions, interrogatories and depositions." *Messick* at 1213. Furthermore, "differences [] exist in the evidentiary rules, the award of damages, and the time allowed to present the case." *Id.* at 1213. Although both the administrative hearing and court present the claimant/plaintiff the opportunity to litigate, the tools available to prosecute a claim in the different fora are not equal. *Id.* (*citing Restatement (Second) of Judgments* § 29(2), Cmt. d at 291-294 (1982).

Unemployment hearings are, and should be, brief administrative hearings for the limited objective of deciding the award or denial of benefits under the statute. The rules of litigation for this Court differ substantially. The policy goals of the collateral estoppel doctrine are far outweighed by the inequity of permitting an administrative determination in the unemployment context to have the future ramification of a binding judgment in a subsequent federal discrimination claim.

Lastly, even if this Court considers the merits of Biliski's argument regarding the application of collateral estoppel to this case, the requirements for applying the doctrine have not been satisfied. "The [current] test for applying collateral estoppel [] requires that (1) a question of fact essential to the judgment (2) be litigated, and (3) determined (4) by a valid and final

13

judgment." *Healthtrio, Inc. Margules*, C.A. No. 06C-04-196, 2007 Del. Super. LEXIS 34 at *34 (Del. Super. Jan. 16, 2007) (*quoting Taylor v. State,* 402 A.2d 373 (Del. 1979)). In this case, contrary to Biliski's assertion otherwise, the requirements for the application of the doctrine are not met. The issue before the Appeals Referee was whether or not Biliski was terminated for "just cause" as that term is defined under the applicable statute and case law. *See* 19 *Del. C.* § 3314(2). Conduct that arises to the level of "just cause" for the denial of unemployment benefits refers to willful or wanton acts in violation of either the employer's interest or of the employee's duties or expected standard of conduct. *Abex Corp. v. Todd*, 235 A.2d 271 (Del. Super. 1967). It does not include mere inefficiency, poor performance or failure to perform as a result of inability or incapacity, ordinary negligence, isolated instances, or good faith errors of judgment. *Starky v. Unemployment Appeals Board*, 340 A.2d 165 (Del. Super. 1975). In this case, the issue considered by the Appeals Referee was whether Biliski was terminated for willful or wanton misconduct, not just incompetence or inability, to support a denial of unemployment benefits. The Board was not required to use such a high standard, but instead, was free to consider whether Biliski was competent to perform his job, which he clearly was not. Because the standards are significantly different, these are not the same "questions of fact essential to the judgment." Therefore, Biliski cannot satisfy the first requirement necessary for the doctrine of collateral estoppel to apply.

Furthermore, the Board did not have an opportunity to litigate the issue of whether there was just cause to terminate Biliski in the unemployment proceeding. First, the testimony is clear that Red Clay was not aware of the hearing and did not attend. Moreover, even if Red Clay was aware of the hearing, (which is was not) the process employed in the context of an unemployment dispute is different from litigation in court. *See e.g. Messick,* 655

14

A.2d at 1213. Therefore, the issue of whether the Board would have terminated Biliski regardless of the process employed has never been litigated and the doctrine of collateral estoppel is not applicable.

The requirements for the application of collateral estoppel are not satisfied in this case. As a result, the doctrine does not preclude the Defendants from arguing to this Court that Biliski would have been terminated regardless of the process he received. It is clear from the record that the Board would have terminated Biliski regardless of the procedure given to him prior to his termination. As a result, Biliski has not suffered any harm and is not entitled to recover any damages.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that Biliski's Motion for Summary Judgment be denied.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Seth J. Reidenberg*
Barry M. Willoughby, Esquire (I.D. No. 1016)
Seth J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; 571-6706
Facsimile: (302) 576-3345; 576-3442
Email: bwilloughby@ycst.com; sreidenberg@ycst.com
Attorneys for Defendants

Dated: November 16, 2007