IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDWARD A. BILISKI | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 06-740-GMS |
| | ) |
| RED CLAY CONSOLIDATED SCHOOL | ) |
| DISTRICT BOARD OF EDUCATION, | ) |
| IRWIN J. BECNEL, JR., CHARLES | ) |
| CAVANAUGH, GARY LINARDUCCI, | ) |
| JAMES J. BUCKLEY, MARGUERITE | ) |
| VAVALA, YVONNE JOHNSON, | ) |
| MARTIN A. WILSON, SR, individually | ) |
| and in their official capacities as members | ) |
| of the Red Clay Consolidated School | ) |
| District Board of Education, ROBERT | ) |
| J. ANDRZEJEWSKI, individually and in | ) |
| his official capacity as Superintendent of | ) |
| Red Clay Consolidated School District; and | ) |
| RED CLAY CONSOLIDATED SCHOOL | ) |
| DISTRICT, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Barry M. Willoughby, Esquire (I.D. No. 1016)
Seth J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; 571-6706
Facsimile: (302) 576-3345; 576-3442
Email: bwilloughby@ycst.com; sreidenberg@ycst.com
Attorneys for Defendants

Dated: November 30, 2007

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................ ii

ARGUMENT .................................................................................................................... 1

    I.    PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT AT RED CLAY. ............................................................ 1

    II.    PLAINTIFF RECEIVED THE REQUIRED PROCEDURAL DUE PROCESS PRIOR TO HIS TERMINATION. .................................................................................. 4

    III.    PLAINTIFF HAS NOT SUFFERED ANY HARM AND IS NOT ENTITLED TO DAMAGES .................................................................. 8

    IV.    PLAINTIFF'S ARGUMENT THAT COLLATERAL ESTOPPEL APPLIES IS WITHOUT MERIT. ...................................................... 9

    V.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY. ..................................................................................... 13

CONCLUSION .............................................................................................................. 14

## TABLE OF CITATIONS

Page

**Cases**

*Abex Corp. v. Todd*,
  235 A.2d 271 (Del. Super. 1967) .................................................................................. 10

*Alexander v. Polk*,
  750 F.2d 250 (3d Cir. 1984) ........................................................................................... 8

*Anapol v. The University of Delaware*,
  412 F. Supp. 675 (D. Del. 1976) ................................................................................ 5, 6

*Anderson v. Creighton*,
  483 U. S. 635 (1987) .................................................................................................... 13

*Assaf v. Fields*
  178 F.3d 170 (3d Cir. 1999) ......................................................................................... 13

*Barkauskie v. Indian River Sch. Dist.,*
  1951 F. Supp. 519 (D. Del. 1996) .................................................................................. 4

*Carey v. Piphus*,
  435 U.S. 247 (1978) .................................................................................................. 8, 9

*Dykes v. Southeastern Penna. Transportation Auth.*,
  68 F.3d 1564 (3d Cir. 1995) ........................................................................................... 7

*Gaines v. Wilm. Trust Co.*,
  C.A. No. 90C-MR-135, 1991 Del. Super. LEXIS 207
  (Del. Super. June 3, 1997) ............................................................................................. 2

*Gilbert v. Homar*,
  520 U.S. 924 (1997) .................................................................................................. 6, 7

*Greene v. Connecticut Mutual of Life Insurance Co.*,
  C. A. No. 4869, 1979 Del. Ch. LEXIS 380
  (Del. Ch. Sept. 19, 1979) ............................................................................................. 11

*Hameli v. Nazario*,
  C.A. No. 94-1991994 U. S. Dist. LEXIS 20523
  (D. Del. 1994) ................................................................................................7, 8, 9, 13

*Haney v. Laub*,
  312 A.2d 330 (Del. Super. 1973) ................................................................................... 2

*Healthtrio, Inc. Margules*,
   C.A. No. 06C-04-196, 2007 Del. Super. LEXIS 34
   (Del. Super. Jan. 16, 2007) ................................................................................................ 10

*Heideck v. Kent General Hosp.*,
   446 A.2d 1095 (Del. 1982) ............................................................................................. 2, 3

*Hitchens v. Yonkers*,
   943 F. Supp. 408 (D. Del. 1996) ........................................................................................ 4

*Hunt v. Chicago Housing Auth.*,
   1988 U.S. Dist. LEXIS 3295 (N.D. Ill. 1988),
   *rev'd on other grounds,* 1992 U.S. App. LEXIS 21810 (7th Cir. 1992) .................................. 3

*Kelly v. Sayreville*,
   107 F.3d 1073 (3d Cir. 1997) ......................................................................................... 2, 4

*Knotts v. Bewick*,
   467 F. Supp. 931 (D. Del. 1979) ........................................................................................ 8

*Mann v. Cargill Poultry*,
   C.A. No. 88C-AU37, 1990 Del. Super. LEXIS 225
   (Del. Super. June 13, 1990) ................................................................................................ 3

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ........................................................................................................... 8

*McKeesport Hosp. v. The Accreditation Council for Graduate Medical Educ.*,
   24 F.3d 519 (3d Cir. 1994) ................................................................................................. 8

*Messick v. Star Enterprise,*
   655 A.2d 1209 (Del. Supr. 1995) ..................................................................................... 11

*PIC, Inc. v. The Prescon, Corp.*
   485 F. Supp. 1302 (D. Del. 1980) .................................................................................... 12

*Rizzo v. Dupont,*
   C.A. No. 86C-JL-88, 1989 Del. Super. LEXIS 450
   (Del. Super. October 31, 1989) .......................................................................................... 3

*Starky v. Unemployment Appeals Board*,
   340 A.2d 165 (Del. Super. 1975) ..................................................................................... 10

*Swineford v. Snyder County Pennsylvania,*
   15 F.3d 1258 (3d Cir. 1994) ............................................................................................. 12

*Thomas v. Town of Hammonton,*
   351 F.3d 108 (3d Cir. 2003) ............................................................................................... 1

iv

*Vukadinovich v. Bd. of Sch. Trustees of the Mich. City Area Schools*,
   978 F.2d 403 (7th Cir. 1992) .................................................................................................. 7

*Walls City of Milford*,
   938 F. Supp. 1218 (D. Del. 1996) ........................................................................................... 4

**Statutes**

19 *Del. C.* § 3314(2) ................................................................................................................... 10

**Other Authorities**

*Restatement (Second) of Judgments* § 28(5) ............................................................................. 12

# ARGUMENT[1]

## I. PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT AT RED CLAY.

As set forth more fully in Defendants' Opening Brief (D.I. 37) as well as their Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment (D.I.43), Plaintiff, Edward A. Biliski ("Biliski") did not have a property interest in his position with Red Clay Consolidated School District (the "District" or "Red Clay"). He therefore did not have a constitutional right to a hearing before his dismissal.

Plaintiff concedes in his Answering Brief, as he must, two important points. First, under settled Third Circuit law, if he is an at-will employee, he has no due process rights. Biliski agrees that if he is an employee-at-will, then he is not entitled to any procedural due process in connection with his termination. Pl. Ans. Br at 9.[2] *See Thomas v. Town of Hammonton,* 351 F.3d 108, 113 (3d Cir. 2003) (an at-will employee does not have a property interest in her job). Second, the question of whether Plaintiff has a property interest turns on state law.

It is undisputed that Red Clay considered Biliski's position to be at-will. (Dunmon 19-20; Davenport 13, 18-19; Becnel 21 (A107-08; A98; A99-100; A114)). The only argument Biliski asserts in opposition is his claim that the 1985 policy applied to him. The mere existence of the 1985 policy, however, does not change Biliski's status as an at-will employee. Red Clay considered the 1985 policy to be limited to non-teaching, union employees. (Becnel

---

[1] Because the parties filed cross-motions for summary judgment on the same issues, the arguments asserted by the Defendants in support of their Motion for Summary Judgment are the same or substantially similar to those asserted in their Answering Brief to Plaintiff's Motion for Summary Judgment. In an effort not to repeat the arguments set forth in Defendants' Opening Brief and Answering Brief, the arguments in those briefs are incorporated in full by reference herein.

[2] References to Plaintiff's Answering Brief will be referred to as "Pl. Ans. Br. at ____."

1

21 (A114)). There is no dispute that Biliski was a non-union employee.[3] Furthermore, Biliski testified that the reason he believed he had a property interest in his position was because of his length of service with Red Clay, not because of the 1985 policy. (Complaint ¶11 (D.I. 1)). (Biliski 10-11(A30-31)). He was not aware of the policy prior to filing this case.

Moreover, as a matter of Delaware state law, the 1985 policy does not give Biliski a legitimate claim of entitlement to continued employment because it did not alter his "at will" status. The authority Biliski relies on, *Kelly v. Sayreville*, 107 F.3d 1073 (3d Cir. 1997) arose in the context of a Pennsylvania state law that specifically provided that police officers could only be terminated for reasons specified in the statute. Pl. Ans. Br. at 11-12. Here, by contrast, Biliski is relying only on a unilateral employer policy. It is well-established, however, that Delaware is an employment-at-will state. *Haney v. Laub*, 312 A.2d 330, 332 (Del. Super. 1973). It is also well-established that employer policies such as those contained in an employee handbook concerning grounds for termination of employment or other discipline do not rise to the level of an employment contract and do not alter an employee's at-will status. For example, in *Gaines v. Wilm. Trust Co.*, C.A. No. 90C-MR-135, 1991 Del. Super. LEXIS 207 (Del. Super. June 3, 1997) , the court stated:

> A unilateral expression of a policy by an employer such as that provided in a handbook does not modify an employee's at-will status. Claims based on company policies do not give rise to a cause of action for an employee at will who is terminated.

Similarly, in *Heideck v. Kent General Hosp.,* 446 A.2d 1095 (Del. 1982), the Delaware Supreme Court held that an employee handbook was "a unilateral expression of the defendant's policies and procedures on a number of topics, issued for the guidance and benefit of employees. The

---

[3] In Biliski's Answering Brief, Biliski admits that he was a non-union employee. *See* Pl. Ans. Br. at p. 10 fn. 11.

*Booklet* does not grant to any employee a specific term of employment and does not, therefore, alter plaintiff's "at-will" employment status." *Heideck* at 1097; *see also Rizzo v. Dupont,* C.A. No. 86C-JL-88, 1989 Del. Super. LEXIS 450 at *6 (Del. Super. October 31, 1989).  ("The Supreme Court of Delaware has concluded that . . . claims based on company policies do not give rise to a cause of action for an employee at-will.")

Furthermore, courts have applied traditional contract principles in determining whether employee handbooks or policies alter the at-will status of an employee. *Mann v. Cargill Poultry*, C.A. No. 88C-AU37, 1990 Del. Super. LEXIS 225, *19 (Del. Super. June 13, 1990). Because the 1985 policy was not known to Biliski until after he filed his complaint, he could not rely upon it to form the basis of his terms of employment. In *Hunt v. Chicago Housing Auth.*, 1988 U.S. Dist. LEXIS 3295 (N.D. Ill. 1988), *rev'd on other grounds,* 1992 U.S. App. LEXIS 21810 (7th Cir. 1992), for example, the District Court considered whether a policy adopted after the plaintiff's hiring that prohibited termination without cause altered his at-will status under Illinois law.  In *Hunt*, the plaintiff was hired as an at-will employee of Chicago Housing Authority ("CHA").  After he was hired, the defendant adopted a personnel policy that provided that state employees could not be terminated without cause.  The plaintiff was not made aware of the policy until after he was suspended.  The district court found that the policy did not alter his at-will status, because there was no knowledge or "acceptance" of the policy as required by the traditional characteristics of contracts. *Id.* at *8.

The same principle holds true in this case.  Biliski was hired as an at-will employee.  His employer did not consider the policy in question to apply to him.  He was not aware of the existence of the 1985 policy nor was it offered as a term of his employment.  His

3

claim that the policy created a property interest is therefore without merit.[4] At best, Biliski has only established that he had a *subjective* expectation to his continued employment. And his subjective expectation does not raise the interest to a constitutionally protected level. *Hitchens v. Yonkers,* 943 F. Supp. 408, 411 (D. Del. 1996).

## II.   PLAINTIFF RECEIVED THE REQUIRED PROCEDURAL DUE PROCESS PRIOR TO HIS TERMINATION.

The essential requirements of due process are satisfied if a discharged employee is given notice of the charges, an adequate explanation of the evidence, and an adequate opportunity to present his side of the story. *Barkauskie v. Indian River Sch. Dist.,* 1951 F. Supp. 519, 533 (D. Del. 1996). Notice of the charges need not be formal and need not be in great detail. *Id.* Notice need only provide the employee a meaningful opportunity to respond in the sense that he must know the substance of the case the employer has against him. *Id*. Procedural due process further requires some kind of hearing prior to discharge. *Barkauskie* at 533. The opportunity to be heard need not be elaborate, and it can vary depending on the importance of the interests involved and the nature of the subsequent proceedings. *Walls v. City of Milford*, 938 F. Supp. 1218, 1222 (D. Del. 1996) (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-546 (1985)).

In his Answering Brief, Biliski tacitly concedes that he was provided notice of the charges pending against him and an opportunity to respond to those charges – thereby satisfying any required procedural due process. Biliski admits that on August 8, 2006, he met with Ted Ammann ("Ammann") and Debra Davenport ("Davenport") and that during the meeting he was provided with three memoranda outlining the charges against him. (Complaint ¶¶10 and 11).

---

[4] Biliski's reliance on *Kelly,* 107 F. 3d 1073 and *Walls v. City of Milford*, 938 F. Supp. 1218 (D. Del. 1996) is misplaced. *See* Pl. Ans. Br. at 11-12. In both *Kelly* and *Walls*, there is a statute that gave rise to the employee's claim of entitlement to their employment which does not exist in this case.

4

Biliski further admits that at the conclusion of the August 8, 2006 meeting, he was informed that Red Clay was recommending to the Board that he be terminated. (Complaint ¶11)[5]

Following his meeting with Ammann and Davenport, Biliski testified that he called the Board members to discuss the charges pending against him. (Biliski 7-8 (A27-28)). Biliski spoke to several Board members, including the Board President, Irwin Becnel ("Becnel"). (Biliski 8-10 (A28-30); Becnel 11 (A110)). It is also not in dispute that Biliski submitted a written response to the Board that addressed each of the charges relied upon by Red Clay for the recommendation to terminate. (Biliski 8/16/06 Rebuttal Letter to Board (A10-24); Biliski 37 (A32)). Lastly, it is undisputed that his response was considered prior to the Board acting on the recommendation to terminate. (Becnel 14-15 (A112-12); Dunmon 20 (A108)).

Biliski argues that under *Anapol v. The University of Delaware*, 412 F. Supp. 675 (D. Del. 1976), the process afforded him did not satisfy the required procedural due process. This is belied by the facts. The court in *Anapol* found that minimum pre-termination requirements of due process include: (1) clear notice of the charges being considered, (2) a reasonable time interval to marshal facts in evidence, (3) an explanation of the substance of the evidence supporting the charges, and (4) an opportunity to present (Plaintiff's) side of the case in a manner which will permit the decision maker to weigh both sides. *Anapol* at 678, fn. 8.

Under *Anapol,* as set forth below, Biliski received sufficient procedural due process prior to his termination. First, Biliski received adequate notice that charges against him were being considered. There is no dispute that the charges were reviewed with him at the

---

[5] There appears to be a dispute in the record as to whether or not Biliski was provided an opportunity at the August 8th meeting to respond to the charges set forth in the three memos. *See* Pl. Ans. Br. At 13. Whether he was or was not provided the opportunity to respond on August 8th to the charges, Defendants' submit is not material to the determination of whether Biliski was provided sufficient procedural due process prior to his termination.

August 8th meeting. He does not dispute that he received three memoranda detailing the disciplinary and/or performance-related violations he committed that supported the recommendation for termination. Second, Biliski had eight days between the August 8th meeting and the Board meeting held on August 16th to collect whatever facts and evidence he believed was necessary to refute the charges against him. Thus, the second prong of *Anapol* is satisfied. Third, Biliski was provided with an explanation of the substance of the evidence supporting the charges. He was provided the three memoranda at the August 8th meeting and was informed orally by Ammann and Davenport at the August 8th meeting the reasons for the recommendation to terminate him. Therefore, the third prong is satisfied. Lastly, Biliski was given an opportunity to present his side of the case in writing to the Board (the decision-maker) before any action was taken on the recommendation for termination. Thus, the final prong under *Anapol* is satisfied.

      Biliski also argues that, even if this Court were to conclude that the pre-termination procedures employed by the Board satisfied the procedural due process requirements, the Due Process Clause requires that a terminated employee be given a prompt post-termination hearing. *See* Pl. Ans. Br. at 14-15. This assertion is not correct as a matter of law. Biliski relies on *Gilbert v. Homar*, 520 U.S. 924 (1997), for the proposition that the Due Process Clause requires a public employee receive a post-termination hearing. *Id.* One searches *Gilbert* in vain, however, for the statement supporting the proposition that a public employee is *required* to receive a post-termination hearing under the Due Process Clause of the Fourteenth Amendment. Rather, the *Gilbert* Court relied on the oft repeated concept that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert* at 930; *see also Dykes v. Southeastern Penna. Transportation Auth.*, 68 F.3d 1564, 1571 (3d Cir.

6

1995) (. . . [N]o single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause.") *Gilbert* simply holds that if there is no pre-termination hearing, a post-termination hearing is adequate noting that "where a State must act quickly, or where it would be impractical to provide pre-deprivation process, post deprivation process satisfies the requirements of the Due Process Clause." *Id* at 930.

Of course, this Court has specifically held that a post termination hearing is not always constitutionally required. *Hameli v. Nazario*, C.A. No. 94-199, 1994 U. S. Dist. LEXIS 20523 at *13 fn. 5 (D. Del. 1994). *See also*, *Vukadinovich v. Bd. of Sch. Trustees of the Mich. City Area Schools*, 978 F.2d 403 (7th Cir. 1992) (holding that a post-termination hearing was not constitutionally required in all cases). Biliski's claim that a post-termination hearing is required under the Due Process Clause of the Fourteenth Amendment is therefore simply wrong. In this case, as noted above, the pre-termination procedures afforded Biliski satisfied minimum procedural due process rights and no post-termination hearing was required.

*Hameli* is not to the contrary. In *Hameli*, the employee was accused of a crime. The allegations that led to Hameli's dismissal were hotly contested charges of sexual harassment. Hameli denied outright ever sexually harassing female employees.

In this case, however, Biliski's termination was based on conduct involving his failure to follow his employer's instructions, refusal to carry out assigned duties, and failure to report his whereabouts. He admits to receiving the three memoranda on August 8, 2006 that documented these performance and disciplinary issues. He also admits that he failed to perform certain assigned work and engaged in inappropriate conduct during a seminar and that these issues were discussed with him during a meeting on March 30, 2006. Importantly, Biliski does not dispute that he engaged in the conduct. Pl. Ans. Br. at 3 ("The historical facts which led to

7

the termination of Biliski's employment are not in dispute.")  He simply disputes the Board's conclusion that dismissal was warranted.

Thus, unlike *Hameli*, there is no credibility issue here that might require a decision maker to determine the veracity of witnesses to disputed conduct. *McKeesport Hosp. v. The Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519 (3d Cir. 1994) (holding that cross-examination and confrontation were not required when issues of historical fact do not turn on questions of credibility).  The only question before the Board was that, given Biliski's conduct, was dismissal warranted?  The Board received and discussed Biliski's letter setting forth his reasons for believing that he should not be terminated for the admitted his conduct before reaching a decision to terminate him.  Accordingly, the constitutional due process requirement of an opportunity to be heard at a meaningful time and in a meaningful manner was met.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

### III.   PLAINTIFF HAS NOT SUFFERED ANY HARM AND IS NOT ENTITLED TO DAMAGES

Biliski does not attempt in his Answering Brief to address the argument raised in Defendants' Opening Brief, that even if the Court concludes that Biliski: a) had a constitutionally protected property right, and b) his procedural due process rights were violated, Biliski is not entitled to any award for damages.  As the Court stated in *Carey v. Piphus*, 435 U.S. 247, 259 (1978), if a defendant can prove that the decision to terminate would have been the same even if the correct process were followed, then the plaintiff has suffered no harm and, therefore, is entitled to no award of damages.  *See also Alexander v. Polk*, 750 F.2d 250, 263 (3d Cir. 1984); *Knotts v. Bewick*, 467 F. Supp. 931, 936 (D. Del. 1979).  Assuming Biliski establishes a prima

8

facie violation of his procedural due process rights, the undisputed record clearly shows that he would have been discharged anyway.

Biliski does not contest the reasons for his termination in his Answering Brief. Furthermore, Biliski's own testimony establishes that he had performance problems. He had multiple performance issues that were documented on four separate occasions within a five-month period. Biliski was abusive to his co-workers and insubordinate. His performance issues and attitude were considered by the Board along with the fifteen-page rebuttal letter he prepared before the Board members voted unanimously to terminate Biliski's employment. It is clear that if the Board followed any other procedure, the outcome would be the same – the Board would still have terminated Biliski. Therefore, Biliski has suffered no harm and is not entitled to an award in his favor for damages.

In response, Biliski relies on *Hameli*. In *Hameli*, however, there was no discussion of the Supreme Court's decision in *Carey*. *Carey* clearly supports a finding that if a defendant can prove that the decision to terminate would have been the same even if the correct process were followed, then the plaintiff has suffered no harm and, therefore, is entitled to no award of damages. A plaintiff should not automatically receive an award of damages from a mere technical violation of procedural due process. *Carey* at 260.

## IV. PLAINTIFF'S ARGUMENT THAT COLLATERAL ESTOPPEL APPLIES IS WITHOUT MERIT.

Collateral estoppel does not apply in this case. Biliski argues that the determination by the Appeals Referee granting him unemployment benefits constitutes a final determination on the merits as to whether or not he was fired for "just cause." *See* Pl. Ans. Br. at 16. His argument, however, is based on an incorrect assumption. Assuming the 1985 policy establishes the proper procedures to be applied in the context of terminating Biliski, the "just

9


cause" standard under the unemployment statute is not, as Biliski asserts, the same as the "just and reasonable cause" language contained in the 1985 policy.

Collateral estoppel applies when a question of fact essential to a judgment is litigated and determined by a court in a valid and final judgment. *Healthtrio, Inc. Margules*, C.A. No. 06C-04-196, 2007 Del. Super. LEXIS 34 (Del. Super. Jan. 16, 2007) (*citing Taylor v. State,* 402 A.2d 373 (Del. 1979)). In this case, contrary to Biliski's assertion, the requirements for the application of the doctrine are not met.

The issue before the Appeals Referee was whether or not Biliski was terminated for "just cause" as that term is defined under the applicable statute and case law. 19 *Del. C.* § 3314(2). Conduct that rises to the level of "just cause" for the denial of unemployment benefits refers to willful or wanton acts in violation of either the employer's interest or of the employee's duties or expected standard of conduct. *Abex Corp. v. Todd*, 235 A.2d 271 (Del. Super. 1967). It does not include mere inefficiency, poor performance or failure to perform as a result of inability or incapacity, ordinary negligence, isolated instances, or good faith errors of judgment. *Starky v. Unemployment Appeals Board*, 340 A.2d 165 (Del. Super. 1975). In this case, the issue considered by the Appeals Referee was whether Biliski was terminated for willful or wanton misconduct. The Board was permitted to apply a lesser standard, whether Biliski was competent to perform his job, which he clearly was not. These are not the same "questions of fact essential to the judgment" because the standards are significantly different. Therefore, Biliski cannot satisfy the first element necessary for the doctrine of collateral estoppel to apply.

Furthermore, the doctrine of collateral estoppel is not applicable because the Defendants did not have an opportunity to litigate the issue of whether there was just cause to terminate Biliski in the unemployment proceeding. First, the testimony is clear that Red Clay

was not aware of the hearing and did not attend. (Davenport 31-32 (Pl. Op. Br. App. A32)[6]). Moreover, even if Red Clay was aware of the hearing (which it was not), the process employed in the context of an unemployment dispute is far different from litigation in court. In *Messick v. Star Enterprise,* 655 A.2d 1209 (Del. Supr. 1995), the Delaware Supreme Court recognized the important distinctions between an administrative hearing and litigation in the courts. The Court noted "the differences between a worker's compensation proceeding and civil litigation are appreciable. Litigation in the Superior Court permits litigants to undertake full discovery of witness and parties, including document productions, interrogatories and depositions. Differences also exist in the evidentiary rules, the award of damages, and the time allowed to present the case." *Messick at 1213.* Because of the significant differences in the process available in an unemployment hearing and civil litigation, the Defendants did not have an opportunity to litigate the issues. Therefore, collateral estoppel should not act as a bar to allowing the Defendants to litigating the issue of whether Biliski would have been terminated assuming he was given proper procedural due process.

Additionally, there are significant public policy reasons that exist which preclude the application of the doctrine of collateral estoppel in this case. Collateral estoppel is a doctrine of public policy "designed to put an end to litigation once a party has had his day in court and a full opportunity to present his case." *Greene v. Connecticut Mutual of Life Insurance Co.*, C. A. No. 4869, 1979 Del. Ch. LEXIS 380 (Del. Ch. Sept. 19, 1979). "It should be applied to contribute to the greatest good for the greatest number, so long as fairness is not sacrificed on the alter." *Messick* at 1212. Thus, the policy goal underlying collateral estoppel must be balanced against fundamental fairness. One important consideration in assessing the fairness of applying

---

[6] References to Plaintiff's Opening Brief Appendix (D.I. 41) will be referred to as "Pl. Op. Br. App. ___."

11

collateral estoppel is whether the party against whom issue preclusion is invoked had "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Restatement (Second) of Judgments* § 28(5).  *See also, PIC, Inc. v. The Prescon, Corp.* 485 F. Supp. 1302, 1311 (D. Del. 1980) (noting the importance of the "adversariness and adequacy of the first proceeding.")

In *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258 (3d Cir. 1994), the Third Circuit refused to give preclusive effect to an unemployment compensation decision in the context of a constitutional claim, not only because of the procedural differences between the forums, but also because of the differences in the policies and goals of the anti-discrimination and unemployment compensation statutes.  *Swineford* at 1269.  The Third Circuit noted that to give preclusive effect to unemployment decisions would undermine the goal of providing quick relief to applicants for unemployment compensation by encouraging vigorous employer defenses against such claims.  *Id.*

Unemployment hearings are, and should be, brief administrative hearings for the limited objective of deciding the award or denial of benefits under the statute.  The rules of litigation for this Court differ substantially.  The policy goals of the collateral estoppel doctrine are far outweighed by the inequity of permitting an unemployment referee determination to have the future ramification of a binding judgment in subsequent federal discrimination claims.  Because of the significant differences in policy considerations and procedures, a decision of an administrative body cannot be given preclusive effect to the claims arising from constitutional rights of individuals.  As the court did in *Swineford*, this Court should refuse to give the Appeals Referee's decision any preclusive effect.

12

## V. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

In Biliski's Answering Brief, he correctly notes that for the doctrine of qualified immunity to apply, the court first must determine whether a plaintiff has established a violation of a constitutional right. If the first prong is satisfied, then the court must determine whether the "unlawfulness of the action would have been apparent to a reasonable official." *Assaf v. Fields* 178 F.3d 170, 174 (3d Cir. 1999). In other words, was the right asserted by Biliski clearly established at the time the Individual Defendants acted? A right is clearly established only when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U. S. 635, 640 (1987); *see also Hameli*, 1994 U. S. Dist. LEXIS 20523 at *27. It is the plaintiff's burden to defeat the claim of qualified immunity. *Anderson* at 640-641.

As noted in Defendants' Opening Brief, Plaintiff's claim that he was other than an at-will employee is without merit as a matter of Delaware law. Testimony from all Red Clay witnesses show that Defendants considered him to be an "at-will" employee. Plaintiff's claim that he had some other status is murky at best.

Indeed, if the Court were to conclude that Plaintiff was not an at-will employee, it will be the first such determination for an employee in Biliski's position. The Individual Defendants are not lawyers required to make fine analytical determinations on constitutional law principles. They had no reason to know that Biliski was entitled to *any* procedural due process at all, let alone more process than they customarily provided to employees in Biliski's position.

Biliski therefore cannot satisfy his burden of proving the Individual Defendants knew that their actions violated a clearly established right. As such, the individual Defendants are entitled to qualified immunity.

13

**CONCLUSION**

For the reasons set forth above and in their Opening Brief and Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment, Defendants respectfully request that their Motion for Summary Judgment be granted.

        Respectfully submitted,

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

        /s/ *Barry M. Willoughby*

        Barry M. Willoughby, Esquire (I.D. No. 1016)
        Seth J. Reidenberg, Esquire (I.D. No. 3657)
        The Brandywine Building
        1000 West Street, 17th Floor
        P.O. Box 391
        Wilmington, DE 19899-0391
        Telephone: (302) 571-6666; 571-6706
        Facsimile: (302) 576-3345; 576-3442
        Email: bwilloughby@ycst.com; sreidenberg@ycst.com
        Attorneys for Defendants

Dated: November 30, 2007

DB02:6406044.1         061778.1006