**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

EDWARD A. BILISKI,                    :
      Plaintiff,                      :
                              :
      v.                              : Civil Action No. 06-740-GMS
                              :
RED CLAY CONSOLIDATED SCHOOL          :
DISTRICT BOARD OF EDUCATION, *et al.,*  :

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com
Attorney for Plaintiff

Dated: November 30, 2007

## TABLE OF CONTENTS

                                                                    **PAGE**

**TABLE OF AUTHORITIES**                                              **i**

**ARGUMENT**

   **I. THE PLAINTIFF HAD A "PROPERTY INTEREST" IN
CONTINUED EMPLOYMENT WITH THE DEFENDANTS AND
WAS THEREFORE ENTITLED TO PROCEDURAL DUE PROCESS
WHEN HIS EMPLOYMENT WAS TERMINATED**                                 **1**

**CONCLUSION**                                                       **10**

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Betts v. Townsends, Inc.*, 765 A.2d 531 (Del. 2000)                          8

*Bishop v. Wood*, 426 U.S. 341 (1976)                                         1

*Carey v. Piphus*, 435 U.S. 247 (1978)                                        6

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985)            4

*Gilbert v. Homar*, 520 U.S. 924 (1997)                                       4,5,6

*Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523 (D. Del. 1994)             4,5,7

*Haney v. Laub*, 312 A.2d 330 (Del. Super. 1973)                             1

*Heideck v. Kent General Hospital*, 446 A.2d 1095 (Del. 1982)               3

*Meding v. Hurd*, 607 F.Supp. 1088 (D. Del. 1985)                           2

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)          7

*Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258 (3d Cir 1994)       8

*University of Tennessee v. Elliot*, 478 U.S. 788 (1984)                     8


**Statutes and Court Rules**

14 *Del.C.*, Chapter 10                                                       1

14 *Del.C.* §1043                                                             1

14 *Del.C.* §1051                                                             1

## ARGUMENT

### I.  THE PLAINTIFF HAD A "PROPERTY INTEREST" IN CONTINUED EMPLOYMENT WITH THE DEFENDANTS AND WAS THEREFORE ENTITLED TO PROCEDURAL DUE PROCESS WHEN HIS EMPLOYMENT WAS TERMINATED

---

#### Existence of Protected Property Interest

The threshold question in this case is whether the "1985 Policy" (A64), adopted by the defendant Board, is sufficient as a matter of law to amount to a constitutionally protected property interest in continued employment.  On this issue, the positions advocated by the parties could not be more divergent.  The defendants argue that the "1985 Policy" is akin to the type of statement that might appear in an "employee handbook," which does not alter an employee's at-will status. (Defendants' Answering Brief, p.6).  In his Opening Brief, Biliski argued that the "1985 policy" is akin to a statute or ordinance that was sufficient, by itself, to create a protected property interest. See, *Bishop v. Wood*, 426 U.S. 341, 344 (1976) ("a property interest in employment...can be created by ordinance or by an implied contract");  (Plaintiff's Opening Brief, pp. 10-11).

The parties do agree that Delaware law is controlling on the issue and that Delaware is an employment-at-will state.  The fact, however, that Delaware is an employment-at-will state does not prevent an employer from modifying an employee's status.  See, *Haney v. Laub*, 312 A.2d 330, 333-334 (Del. Super. 1973) (existence of stock option agreement, which provided that employee's option rights could be defeated only if employee was discharged "for cause" was sufficient to negate employee's status as employee-at-will).  The same holds true in the public sector.  In this case, the defendant Board is a body politic which exists by virtue of state law.  See, 14 *Del.C.*, Chapter 10. The members of the Board are elected by the voters of the school district.  14 *Del.C.* §1051.  Under 10 *Del.C.* §1043, the Board is granted "the authority to determine policy and adopt rules and regulations for the general administration and supervision of the free public schools of the reorganized school district."  In this case, the "1985 policy" was duly adopted by the Board. (Becnel, pp. 16-17) (A24).   The plain language of the policy itself states that "**No employees will be**

dismissed except for just and reasonable cause..." (A64)   (emphasis added). The Policy specifically applies to "classified" employees. (A64).   According to Becnel, Biliski would be considered a "classified" employee whether or not he belonged to a union. (Becnel, pp. 17-19) (A24-A25). These circumstances compel the conclusion that the "1985 policy" is more akin to a statute or ordinance that is sufficient, by itself, to create a protected property interest, as opposed to the "handbook" cases cited by the defendants. See, *Meding v. Hurd*, 607 F.Supp. 1088 (D. Del. 1985).

In *Meding*, the former Chief of Police of the Town of Blades brought a Section 1983 action against the Town and its elected officials which alleged that he had been deprived of a protected property interest in employment without due process. *Id.*, at 1093.   On cross-motions for summary judgment, the defendants relied on Section 22(a) of the Town Charter to argue that the plaintiff had no property right to continued employment.[1]   "According to the defendant, because the Town Council possessed the legislative power to remove the plaintiff at any time, his status was that of an at-will employee." *Id.*, at 1104.   In support of his claim that he had a property interest in his employment with the Town, the plaintiff relied on the provisions of the Town's Personnel Ordinance, which had been adopted by the Town subsequent to the legislature's approval of the Town Charter.  The Personnel Ordinance provided that employees in the "classified service" could

---

[1] Section 22(a) of the Town Charter provided:

> It shall be the duty of the Town Council to appoint a Police Force, consisting of a Chief of Police and such members or subordinates as the Town Council may deem wise. The Town Council shall, from time to time, make rules and regulations as may be necessary for the organization, government, and control of the Police Force. **The Chief of Police and the members of the Police Force shall be subject to the direction of The Town Council and may be removed by the Town Council at any time**. 58 *Laws of Delaware*, Part 1, Ch. 34 (1971)

*Id.*, at 1104 (emphasis in original)

be dismissed only for specifically enumerated reasons.[2]  The court concluded that "the list makes clear that disciplinary action could only be taken for cause." *Id.*, at 1105.  The court rejected the Town's claim that the language in the Town Charter made the plaintiff an employee-at-will:

> Viewing facts in a light most favorable to defendants, the Court finds that Personnel Ordinance conferred on Meding a property interest in continued employment.  First, the Personnel Ordinance is sufficient in and of itself to convey a property interest.  The Town's Charter empowering the Town to remove police officers "at any time" did not restrict the Town's power to confer a property interest in employment. Nor is there any inconsistency *per se* between the Charter's enumeration of powers and the Town's adoption of the Personnel Ordinance. The Charter provision does not dictate the legal status enjoyed by the Town's employees; rather, it merely authorizes the Town to remove officials under state law from the performance of their official duties. The Town remained free to grant employees an expectation interest in continued employment. (citation omitted).  By raising the threshold for termination of classified employees to one for cause only, the Town transformed what were formerly at-will employees, into employees with rights tantamount to property interests.

*Id.*, at 1105.

Given the defendants' reliance on the so-called "handbook cases," it is also noteworthy that the court in *Meding* drew a clear distinction between the legal force attributable to a statement in an employee handbook and the adoption of an official personnel policy by elected officials:

> In *Heideck*,[3] the Delaware Supreme Court held that a booklet issued by an employer did not change the employee's at-will employment status.  **Heideck is distinguishable from the case at bar in that a booklet does not carry the legal force of a town ordinance.** Moreover, the Delaware Supreme Court conceded that under some conditions a booklet might change an employee's status, but the facts did not support such a finding in the particular case.  Here, there can be no doubt that the purpose of the Personnel Ordinance was to change the employment status of employees with greater than six months of service to the Town.

*Id.*, at 1105 n.20 (emphasis added).

---

[2] The court found that the plaintiff was a member of the "classified service." *Id.*, at 1104.

[3] *Heideck v. Kent General Hospital*, 446 A.2d 1095 (Del. 1982).

As in *Meding*, the Board had the legal authority to grant its employees an expectation of continued employment absent just cause for termination. The adoption of the "1985 Policy," on its face, accomplished that result. That result does not change no matter how many times the defendants say that Biliski is an employee-at will.[4]

### Procedural Due Process

If the Court agrees that Biliski had a protected property interest in continued employment, the Court must decide whether the procedures employed by the defendants satisfied the minimum requirements of procedural due process. In their Brief, the defendants argue that the pre-termination procedures actually employed satisfied the minimum requirements of due process. (Defendants' Brief, pp. 8-10).

The adequacy and formality of the pre-termination process afforded to Biliski hinges on two components: "the importance of the [property] interest involved and the **nature of the subsequent proceeding."** *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545 (1985). The property right to one's livelihood is extremely important. *Loudermill*, 470 U.S. at 543 ("The significance of the private interest to retaining employment cannot be gainsaid"). If the subsequent proceedings are limited, or non-existent, the due process requirements for the pre-termination proceedings become more substantial. In other words, "the [pre-termination] hearing must be more or less elaborate in inverse proportion to the adequacy of post-termination proceedings." *Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523, *14 (D. Del. 1994).[5] See, *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("A public employee dismissible only for cause [is] entitled to a very limited hearing prior to his

---

[4] The term employee-at-will does not appear anywhere in the District's personnel policies. (Becnel, p. 23) (A26). Furthermore, the defendants have not produced any evidence, other than the after the fact testimony of Dunmon and Becnel that Biliski is an employee-at-will.

[5] A copy of the decision in *Hameli* is appended to Plaintiff's Answering Brief in Opposition to Defendants' Motion for Summary Judgment. (D.I. 42).

termination, **to be followed by a more comprehensive post-termination hearing**").[6]  Although the

defendants do not cite to *Gilbert*, it is clear that the defendants are claiming only that Biliski received

pre-termination due process that met *Gilbert's* requirements.[7]  However, as noted in *Gilbert* itself,

merely providing a "limited" pre-termination hearing does not satisfy due process unless "a more

comprehensive post-termination hearing" is also provided.  In this case, it is undisputed that Biliski

was not provided with any post-termination hearing whatsoever.  Furthermore, it is undisputed that

when Biliski arguably made a request for a post-termination hearing, that request was ignored by the

District.[8]  If a post-termination hearing is either not available  or is not provided, the conclusion

inexorably follows that merely providing a *Gilbert* type pre-termination hearing does not satisfy due

process.  As the court held in *Hameli*:

> [T]he Court has held that defendants' error was the inadequate
> procedures afforded plaintiff.  It can be characterized as a failure to
> provide post-termination procedures, or a failure to provide adequate
> pre-termination procedures in light of the decision not to provide
> post-termination procedures.  In any event, the injury is unchanged:
> plaintiff has lost a valuable property right without due process.

*Id.*, 1994 U.S. Dist. LEXIS at *23.

---

[6] In *Gilbert*, the court held that a pre-termination hearing should be an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action ... pre-termination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story."  *Id.*, at 929.

[7] The defendants do not argue that the proceedings taken by the Board on August 16, 2006 somehow satisfied *Gilbert's* requirement of a "comprehensive post-termination hearing."  See, Defendants Answering Brief, D.I. 43, p.9) ("In this case, Biliski admits that he was provided notice and an opportunity to present his side of the story to the Board **prior to any decision on his termination**...") (emphasis added).

[8] Shortly after his termination was approved by the Board, Dunmon received a letter from Biliski requesting a "meeting" concerning his termination. (A56).  Dunmon did not respond to this request. (Dunmon, pp. 16-17) (A19).

**Remedy for Violation of Procedural Due Process**

In this case, Biliski agrees that the only monetary damages he has sustained thus far is a loss of pay.[9]  In their Brief, the defendants argue that even if Biliski had a property interest in continued employment, and even if his right to pre-termination procedural due process was violated by the defendants, Biliski is not entitled to recover any damages because his employment would have been terminated by the Board in any event, even if his procedural due process rights had not been violated. (Defendants' Brief, D.I. 43,  pp.10-11).   The rationale that underlies the authorities cited by the defendants is that  if the employer can prove it would have taken the same action even if proper procedural due process had been provided, the the failure to afford procedural due process could not properly be viewed as the "cause" for the loss.  See, *Carey v. Piphus*, 435 U.S. 247, 260 (1978).  The cases cited by the defendants all dealt with the denial of pre-termination due process.  In this case, however, the procedural due process violation included the defendants' failure to provide a "comprehensive" post-termination hearing.  See, *Gilbert,* 520 U.S. at 929.  Even assuming the Board would have fired Biliski if proper procedural due process had been provided,[10] there is no evidence in the record to suggest that the result would be the same following a full hearing before an

---

[9] Biliski was unemployed from August 11, 2006 through March 19, 2007. (Biliski, pp. 202-205) (A14).

[10] Even though all termination decisions must be approved by the Board, it is clear from the record in this case that the Board has given the District and its officials *carte blanche* authority to hire and fire District employees such as Biliski.  The decision to terminate an employee is generally initiated by the District who makes a formal recommendation to the Board.   In this case, the recommendation that Biliski's employment be terminated was initiated by Davenport.  According to Dunmon, she received a "form" from Davenport which recommended that Biliski be fired.  The form itself did not specify any reasons for the termination.   After, she received the "form" from Davenport, Dunmon prepared a recommendation to the Superintendent and Board that Biliski be fired. (Dunmon, p.4)(A16).   The Board is not given any other documentation concerning the recommendation. (Dunmon, p. 9) (A17); (Becnel, p. 6) (A22).  Although the Board has the final say on the subject, the Board generally follows the recommendation made by the District. (Becnel, pp. 4-6) (A21-A22).

"impartial" decisionmaker.[11]   Thus, this case is more akin to the situation in *Hameli*, where the plaintiff was awarded backpay based on a failure to provide post-deprivation due process:

> [D]efendants argue that plaintiff waived his pre-termination procedure based on his own speculation that he would not receive a fair hearing. He should not be allowed, they argue, to make the State pay for his erroneous judgment. If he had gone through with the hearing, defendants assert, he would have experienced an impartial hearing and his only claim currently would be for a post-termination hearing. This argument might hold some merit if either 1) defendants offered plaintiff a constitutionally adequate pre-termination procedure or 2) plaintiff was unaware at the time of his decision that he was not going to receive a post-termination hearing. However, the facts indicate otherwise. **To adopt defendants' position would be to allow the State to offer employees grossly inadequate procedures, deny them their constitutionally protected due process rights to their property, and face as a penalty for such behavior simply having to provide the procedure they should have provided in the first instance. Such a method requires plaintiffs to pay for the unconstitutional actions of defendants and is an inadequate remedy.**

*Hameli*, at \*24-\*25.

In this case, the outcome of an adversary type post-termination hearing is far from certain. Biliski's employment was terminated based on alleged "misconduct" contained in three Memos[12] that were handed to Biliski on August 8, 2006.  The letter that Biliski submitted to the Board contains a detailed explanation or refutation concerning each allegation.  (A34 through A48). Furthermore, this is the same evidence that was presented to the unemployment Referee, who concluded that the allegations of misconduct did not rise to the level of "just cause," which is the quantum of proof needed for the District to terminate Biliski's employment under the "1985 Policy." (A71-A73).  Under the summary judgment standard, Biliski's submission and the findings made by the Referee clearly raise a dispute of fact concerning both the validity of the accusations and whether or not, even if proven, the accusations warranted termination.  See, *Reeves v. Sanderson Plumbing*

---

[11] The Due Process Clause requires an impartial decisionmaker at the post-termination stage. See, *Hameli*, at \*17.

[12] A57, A58 and A59.

*Products, Inc.*, 530 U.S. 133, 150 (2000) ("[W]e must draw all reasonable inferences in favor of the nonmoving party" and we "may not make credibility determinations or weigh the evidence").

### Application of Collateral Estoppel

In Plaintiff's Opening Brief, (D.I. 40), it was argued that the finding made by the unemployment Referee that there was not "just cause" to deny Biliski unemployment benefits was also sufficient the doctrine of collateral estoppel to bar the defendants from establishing "just cause" under the "1985 Policy." (Opening Brief, pp.16-17). In their Answering Brief, the defendants argue that the collateral estoppel rule should not be applied in this case. (Defendants' Answering Brief, D.I. 43, pp. 11-15).

The doctrine of collateral estoppel, or issue preclusion, is well entrenched in Delaware law.[13] See, e.g., *Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000). Furthermore, the fact that this case involves claims brought under §1983 does not bar application of issue preclusion. See, *University of Tennessee v. Elliot*, 478 U.S. 788, 797 (1984) (unreviewed state agency proceedings may be given preclusive effect under Reconstruction-era civil rights statutes). The Delaware Supreme Court has not ruled on whether the doctrine of issue preclusion should be applied to findings of "just cause" or "no just cause" made in unemployment compensation proceedings.

In their Brief, the defendants argue that the doctrine of issue preclusion should not be applied in this case because the "just cause" definition employed by the Board is somehow different from the unemployment "just cause" standard. The problem with this argument is that the defendants do not cite to anything in the record to support it.

The defendants also argue that issue preclusion should not apply because the District was not aware of the hearing and did not attend the hearing. The District was clearly notified by the Department of Labor concerning the date, time and place of the unemployment hearing. (A69). Davenport claimed that she personally did not did not learn about the hearing until after it had taken

---

[13] In *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1266-1267 (3d Cir 1994), the court held that stste law would determine whether the disposition of an issue in a prior proceeding would be given preclusive effect.

place. (Davenport, pp. 31-33) (A32).  Under these circumstances, the District's failure to attend the hearing or contest Biliski's unemployment claim should not bar application of issue preclusion.

**CONCLUSION**

Based on the foregoing reasons and the reasons set forth in Plaintiff's Opening Brief, the Court should grant the Plaintiff's Motion for Summary Judgment on the Section §1983 claims and conduct a hearing to determine the amount of back-pay and whether reinstatement should be ordered.

                     */ s/ Joseph M. Bernstein*
                     JOSEPH M. BERNSTEIN (#780)
                     800 N. King Street - Suite 302
                     Wilmington, DE 19801
                     302-656-9850
                     302-656-9836 (Fax)
                     E-mail: jmbernstein@embarqmail.com
                     Attorney for Plaintiff

Dated: November 30, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2007, I electronically filed the foregoing Plaintiff's

Reply Brief in Support of Plaintiff's Motion for Summary Judgment with the Clerk of the Court

using CM/ECF which will send notification of such filing to the following:

Barry M. Willoughby, Esquire
Seth J. Reidenberg, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street - 17th Floor
Wilmington, DE 19801
Attorneys for Defendants

_/ s/ Joseph M. Bernstein_
JOSEPH M. BERNSTEIN (Bar #780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
E-mail: jmbernstein@embarqmail.com