IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EDWARD A. BILISKI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-740-GMS |
| | ) | |
| RED CLAY CONSOLIDATED SCHOOL | ) | |
| DISTRICT BOARD OF EDUCATION, | ) | |
| IRWIN J. BECNEL, JR., CHARLES | ) | |
| CAVANAUGH, GARY LINARDUCCI, | ) | |
| JAMES J. BUCKLEY, MARGUERITE | ) | |
| VAVALA, YVONNE JOHNSON, | ) | |
| MARTIN A. WILSON, SR, individually | ) | |
| and in their official capacities as members | ) | |
| of the Red Clay Consolidated School | ) | |
| District Board of Education, ROBERT | ) | |
| J. ANDRZEJEWSKI, individually and in | ) | |
| his official capacity as Superintendent of | ) | |
| Red Clay Consolidated School District; and | ) | |
| RED CLAY CONSOLIDATED SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| Defendants. | ) | |

**FINAL PRETRIAL ORDER**

This matter having come before the court at a pretrial conference held pursuant to

Fed.R.Civ.P. ("Rule") 16, and Joseph M. Bernstein, Esquire, 800 N. King Street – Suite 302,

Wilmington, DE  19801, (302) 656-9850, having appeared as counsel for Plaintiff and Barry M.

Willoughby, Esquire and Seth J. Reidenberg, Esquire, Young Conaway Stargatt & Taylor, LLP,

The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, (302) 571-

6666,  having appeared as counsel for Defendant, the following actions were taken.

(1)     This is an action for an alleged violation of procedural due process in connection with the

termination of Plaintiff's employment with Red Clay Consolidated School District and

the jurisdiction of the court is involved under 42 U.S.C. §1983.  Declaratory relief is

sought under 28 U.S.C. §2201 and 2202. This Court has original jurisdiction pursuant to 28 U.S.C. §1331, and §1343(a)(3) and (4) and 42 U.S.C. §1983. Jurisdiction is not disputed.

(2)    The following stipulations and statements were submitted and are attached to and made a part of this Order.

 (a)    A comprehensive stipulation or statement of all uncontested facts, which will become a part of the evidentiary record in the case is set out in the attached Schedule 2(a);

 (b)    An agreed statement or statements by each party of the contested issues of fact and law and a statement or statements of contested issues of fact or law not agreed to are set out in the attached Schedule 2(b);

 (c)    Except for rebuttal exhibits, schedules in the form set out in the attached Schedule 2(c) of;

  (1)    all exhibits (all exhibits shall be marked for identification before trial), including documents, summaries, charts and other items expected to be offered in evidence; and

  (2)    any demonstrative evidence and experiments to be offered during trial;[1]

---

[1] Items not listed will not be admitted unless good cause is shown. Cumulative documents, particularly x-rays and photos, shall be omitted. Duplicate exhibits shall not be scheduled by different parties, but may be offered as joint exhibits. All parties shall stipulate to the authenticity of exhibits whenever possible, and this Order shall identify any exhibits whose authenticity has not been stipulated to and specific reasons for the party's failure so to stipulate. As the attached Schedule (c) indicates, non-objected-to-exhibits are received in evidence by operation of this Order, without any need for further foundation testimony. Copies of exhibits shall be made available to opposing counsel and a bench book of exhibits shall be prepared and delivered to the court at the start of the trial unless excused by the court. If the trial is a jury trial and counsel desires to display exhibits to the members of the jury, sufficient copies of such exhibits must be made available so as to provide each juror with a copy, or alternatively, enlarged photographic copies or projected copies should be used.

(d)  A list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list is set out in the attached Schedule 2(d);[2]

(e)  Expert Witnesses:  There are no expert witnesses in this case.

(f)  Statement as to Special Damages:  Plaintiff is seeking back pay from the effective date of his termination through the date (presently unknown) that the Defendants provide him with a hearing that meets the minimum requirements of procedural due process.  At the time of his termination, Plaintiff's gross annual rate of pay was $40,824.00 or $111.85 per day (excluding the value of fringe benefits):

   (1)  Period of unemployment from August 11, 2006 through March 18, 2007: 218 days x $111.85 = $24,383

   (2)  COBRA payments = $6,097.00 ($496.00 per month for 13 months)

   (3)  Loss of accrued vacation and sick pay – amount to be agreed upon.

   Defendants do not agree to any of the foregoing statements of special damages.

(g)  There are no claims or defenses that have been waived by either party;

(h)  Each party has submitted proposed *Findings of Fact and Conclusions of Law* attached as Schedule 2(h);[3]

---

[2] Each party shall indicate which witnesses *will* be called in the absence of reasonable notice to opposing counsel to the contrary, and which *may* be called as a possibility only.  Any witness not listed will be precluded from testifying absent good cause shown, except that each party reserves the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary, without prior notice to the opposing party.

[3] These shall be separately stated in separately numbered paragraphs.  Findings of Fact should contain a detailed listing of the relevant material facts the party intends to prove.  They should not be in a formal language, but should be in simple narrative form.  Conclusions of Law should contain concise statements of the meaning or intent of the legal theories set forth by counsel.

3

(i)     The parties have discussed the possibility of settlement and have exchanged proposals.  Settlement discussions are continuing, but it is not likely that an agreement will be reached.

(j)     Discovery:  Each party has completed discovery.  No expert witnesses have been retained in this case.

(k)     Motions *in Limine*:  No motions *in limine* have been filed in this case.  Each party reserves the right to object to specific questions/answers of a witness based on the Federal Rules of Evidence or relevant case law.

(3)     Trial of this case is expected to take 1 day.

(4)     Type of trial:

Jury     ☐          Non-jury     ☒

(5)     This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

(6)     Possibility of settlement of this case has been considered by the parties.


_____
        UNITED STATES DISTRICT JUDGE


Date: _____


4

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ *Joseph M. Bernstein*

Joseph M. Bernstein  (No. 780)
800 N. King Street – Suite 302
Wilmington, DE  19801
Telephone:  (302) 656-9850
Facsimile:  (302) 656-9836
Email:  jmbern001@comcast.net
Attorney for Plaintiff

Dated:  February 4, 2008

/s/ *Barry M. Willoughby*

Barry M. Willoughby (No. 1016)
Seth J. Reidenberg (No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone: (302) 571-6666
Facsimile:  (302) 576-3345
Email: bwilloughby@ycst.com
Attorneys for Defendant

Dated:  February 4, 2008

Rev. 3/29/2007 (GMS)

DB02:6542663.1                                                                                061778.1006

## SCHEDULE 2(a)

## Statement of Uncontested Facts

(1)    The Plaintiff, Edward A. Biliski ("Biliski"), is a male citizen of the United States and resides in New Castle County, State of Delaware.  Biliski was formerly employed as a computer technician by the Defendant Red Clay Consolidated School District Board of Education ("Board") and Defendant Red Clay Consolidated School District ("District").

(2)    The Defendant Board is a "school board" as defined in 14 *Del.C.* §1041(1) organized and existing under the laws of the State of Delaware, 14 *Del.C.* §1041, *et seq.*

(3)    Defendants Irwin J. Becnel, Jr., Charles Cavanaugh, Gary Linarducci, Martin A. Wilson, Sr., Marguerite Vavalla, James J. Buckley, and Yvonne Johnson were the individual members of the defendant Board at the time of Plaintiff's termination.

(4)    Defendant Red Clay Consolidated School District ("District") is a "reorganized school district" as defined in 14 *Del.C.* §1041(1) organized and existing under the laws of the State of Delaware, 14 *Del.C.* §1041, *et seq.*

(5)    Defendant Robert J. Andrzejewski (hereinafter "Superintendent") is the duly appointed Superintendent of the defendant Red Clay Consolidated School District.

(6)    At all relevant times, the defendants (including persons employed by the District and Board) were acting within the scope of their employment and/or were exercising powers conferred on them under color of the laws of the State of Delaware.

(7)    On or about March 20, 2001, the plaintiff was hired by the defendants Board/District as a computer technician.  Plaintiff's employment with the Board/District continued from March 20, 2001 through his termination effective August 11, 2006.

(8)     On August 16, 2006, the Board voted to terminate Plaintiff's employment effective August 11, 2006.

## SCHEDULE 2(b)

### Joint Statement of Contested Issues of Fact:

(1)    Whether plaintiff had an expectation of continued employment by the District/Board that amounted to a "property interest" entitled to protection under the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

(2)    Whether the Defendants provided the Plaintiff with notice and meaningful opportunity to be heard by any decisionmaker that satisfied the minimum requirements of procedural due process prior to the recommendation for his termination on August 8, 2006?

(3)    Whether the Defendants provided the Plaintiff with notice and meaningful opportunity to be heard by any decisionmaker that satisfied the minimum requirements of procedural due process after the recommendation to terminate his services on August 8, 2006 effective for August 11, 2006?

(4)    Whether the plaintiff's employment with the defendants was terminated by defendants Board and District either intentionally or with reckless indifference to the federally protected rights of the plaintiff to procedural due process?

(5)    Whether the plaintiff's employment with the defendants would have been terminated even if the minimum requirements of procedural due process had been observed?

(6)    The extent of plaintiff's damages.

**(7)**    Whether the plaintiff took reasonable steps to mitigate his damages.

### Joint Statement of Contested Issues of Law

(1)    What are the elements required to establish the existence of a "property interest" that is protected under the Due Process Clause of the Fourteenth Amendment?

(2)     What are the minimum requirements of procedural due process which must be observed prior to a recommendation to terminate an employee?

(3)     What are the minimum requirements of procedural due process which must be observed after a recommendation to terminate an employee?

(4)     Whether the defendants are precluded, under the doctrine of collateral estoppel, from claiming that they had "just cause" to terminate plaintiff's employment based on the proceedings held before the Delaware Department of Labor concerning plaintiff's claim for unemployment compensation benefits?

(5)     If Plaintiff establishes a violation of procedural due process, would Defendants have taken the same action regardless of the alleged failure to afford procedural due process?

(6)     If Plaintiff establishes a violation of procedural due process, is he entitled to an award of back pay or any other damages, if the Court determines that the Defendants would have taken the same action regardless of the alleged failure to afford procedural due process?

(7)     If the plaintiff is entitled to back pay, should any unemployment compensation benefits received by plaintiff should be deducted from any back pay award?

(8)     Are the Individual Defendants entitled to an award of qualified immunity?


**Statement of Contested Issues of Fact or Law Not Agreed To**

(1)     Whether the plaintiff's alleged misconduct amounted to "just cause" to terminate plaintiff's employment?  (Defendants do not agree that a "just cause" standard is applicable to Plaintiff's termination.)

(2)     Whether Defendants' termination of Plaintiff was for arbitrary or capricious reasons?  (Plaintiff does not agree that the "arbitrary and capricious standard" is applicable to Plaintiff's termination.)

(3)     Is the plaintiff entitled to an award of back pay for a violation of his right to receive procedural due process (if established) whether or not his employment would have been terminated if he had been afforded a hearing that met the minimum requirements of procedural due process? (Defendants do not agree that plaintiff is entitled to any damages for a procedural due process violation)

(4)     Even if the Court were to find that the 1985 policy applies to Biliski, whether the failure to follow the specific procedures set forth in the policy would constitute a denial of his federal due process rights?

(5)     If the Court finds that a violation of procedural due process has occurred and that Plaintiff would have been terminated regardless of the alleged procedural due process violation, is Plaintiff automatically entitled to an award of damages or other relief?

SCHEDULE 2(c)

Exhibits

1.      The following exhibits were offered by plaintiff, received in evidence and marked as

indicated:

| PX# | Description |
|-----|-------------|
| 1 | Excerpts from Red Clay Personnel Policies (D170-D172; D235; D243) |
| 2 | Employment Authorization (D20) |
| 3 | Letter to Ed Biliski from Debra Davenport dated 10/18/01 (D35) |
| 4 | Employment Authorization dated August 2006 (D66) |
| 5 | Computer Screen Shot (D168) |

Plaintiff reserves the right to present additional documentary exhibits not identified above in its rebuttal case.

2.      The following exhibits were offered by Plaintiff and marked for identification,

Defendants object to their receipt in evidence on the grounds stated[1]:

| PX# | Description | Objection | Response |
|-----|-------------|-----------|----------|
| 6 | Memo to Diane Dunmon from Ed Biliski received 8/21/06 (D93) | Objection: Relevancy (Rule 402) | Plaintiff contends it is relevant as a request for a hearing |
| 7 | Records from Ed Biliski claim for Unemployment Compensation (Biliski 28 – Biliski 36) | Objection:  Subject to court ruling on legal issues.  Defendants object to introduction of records of findings of UIAB or Referee | |
| 8 | Ed Biliski W-2 forms for 2007 (to be produced when issued by employer) | Defendants object unless timely received | |
| 9 | Biliski's 2006 Income Tax Returns and W-2 forms | Defendants object unless timely received | |
| 10 | Personnel Attendance History List for 2005-06 (D57) | Objection: Relevancy (Rule 402) | Relevant to the issue of damages. |

---

[1]      Copies of objected-to exhibits should be delivered to the court with this Order, to permit rulings *in limine* where possible.

| PX# | Description | Objection | Response |
|---|---|---|---|
| 11 | Personnel Attendance History List for 2004-05 (D58) | Objection: Relevancy (Rule 402) | Relevant to the issue of damages. |

3.      The following exhibits were offered by Defendants, received in evidence and marked as indicated:

| DX# | Description |
|---|---|
| 1 | Gaudino Emails to Computer Technicians dated 3/14/06 – 3/16/06 (D128) |
| 2 | Gaudino Emails to Computer Technicians dated 3/14/06 – 3/17/06 (D127) |
| 3 | Ammann Disciplinary Memo to Biliski dated 3/30/06 (D169) |
| 4 | Gaudino email dated 6/27/06 (D114) |
| 5 | School Assignments (D115) |
| 6 | Biliski/Ammann/Gaudino emails dated 7/31/06 (D101-102) |
| 7 | Photo of parking lot (Biliski 32) |
| 8 | Biliski/Ammann/Gaudino emails dated 7/31/06 (D104) |
| 9 | Ammann Email to Gaudino dated 8/1/06 (D98) |
| 10 | Gaudino/Ammann emails dated 8/1/06 and 8/2/06 (D97) |
| 11 | Biliski's school assignments (Biliski 81) |
| 12 | Biliski's notes re: harassment and slander (Biliski 85) |
| 13 | Biliski Resume (Biliski 91) |
| 14 | Biliski's notes re: return from hospital (Biliski 207-209) |
| 15 | Plaintiff's Answers to Defendant's  Interrogatories Nos. 5, 6, 7, 10, 15 |
| 16 | Plaintiff's Response to Defendant's Request for Production Nos. 2, 4, 6 |

Defendants reserve the right to present additional documentary exhibits not identified above in its rebuttal case and to use any exhibit listed by Plaintiff.

4.      The following demonstrative exhibits were offered by Defendants, received in evidence and marked as indicated:

| DX | Description |
|---|---|
| A | Charts and Powerpoints showing chronology of events |

5.     The following joint exhibits were offered by Plaintiff and Defendants and marked for identification.

| JX# | Description |
|---|---|
| 1 | Memo from Ted Ammann to Ed Biliski dated 7/31/06 (D61) |
| 2 | Memo from Ted Ammann to Ed Biliski dated 8/7/06 re: Unaccounted for Time (D62) |
| 3 | Memo from Ted Ammann to Ed Biliski dated 8/7/06 re: Disregard for Instructions (D63) |
| 4 | Memo from Ted Ammann to Ed Biliski dated 8/7/06 re: Refusal to Carry Out Assignments (D64) |
| 5 | Letter from Debra Davenport to Ed Biliski dated 8/8/06 (D65) |
| 6 | Letter from Ed Biliski to Board of Education dated 8/16/06 (D67-D81) |
| 7 | Agenda for Board of Education Meeting on 8/16/06 (D82-D87) |
| 8 | Davenport letter to Biliski dated 8/17/06 (D92) |
| 9 | Letter from Division of Unemployment Insurance to Red Clay School District dated 9/26/06 (D94) |
| 10 | Plaintiff's Complaint |
| 11 | Defendants' Answer to Complaint |
| 12 | Excerpts from the deposition transcript of Diane Dunmon – The parties will confer and agree on specific page and line numbers of witness's deposition testimony that may be admitted as an exhibit. |
| 13 | Excerpts from the deposition transcript of Irwin C. Becnel, Jr. – The parties will confer and agree on specific page and line numbers of witness's deposition testimony that may be admitted as an exhibit. |
| 14 | Excerpts from the deposition transcript of Debra Davenport – The parties will confer and agree on specific page and line numbers of witness's deposition testimony that may be admitted as an exhibit. |
| 15 | Excerpts from the deposition transcript of Edward A. Biliski - The parties will confer and agree on specific page and line numbers of witness's deposition testimony that may be admitted as an exhibit. |

**SCHEDULE 2(d)**
**Witness List**

| PLAINTIFF'S WITNESS LIST | | | |
|---|---|---|---|
| **Name and Address** | **Will or May Be Called** | **Objection** | **Response** |
| Edward Biliski<br>106 Hunn Road<br>New Castle, DE  19720 | Will | None | |
| Debra Davenport<br>Red Clay Consolidated School District | Will | None | |
| Diane Dunmon<br>Red Clay Consolidated School District | Will | None | |
| Ted Ammann<br>Red Clay Consolidated School District | Will | None | |
| Irwin J. Becnel, Jr<br>Red Clay Consolidated School District<br>Board of Education | Will | None | |

| DEFENDANTS' WITNESS LIST | | | |
|---|---|---|---|
| **Name and Address** | **Will or May Be Called** | **Objection** | **Response** |
| Edward Biliski<br>106 Hunn Road<br>New Castle, DE  19720 | Will | None | |
| Debra Davenport<br>Red Clay Consolidated School District | Will | None | |
| Diane Dunmon<br>Red Clay Consolidated School District | Will | None | |
| Ted Ammann<br>Red Clay Consolidated School District | Will | None | |
| Irwin J. Becnel, Jr<br>Red Clay Consolidated School District<br>Board of Education | Will | None | |
| Rhonda Henry-Carter<br>Red Clay Consolidated School District | May | None | |
| Barbara Moore<br>Red Clay Consolidated School District | May | None | |

**SCHEDULE 2(h)**

**PLAINTIFF'S PROPOSED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

**Findings of Fact**

1. The Plaintiff, Edward Biliski ("Biliski") was formerly employed as a computer technician by the defendant Red Clay Consolidated School District ("District") and defendant Red Clay Consolidated School District Board of Education ("Board"). Biliski's employment with the Board/District commenced on March 20, 2001 and continued through August 8, 2006. Throughout the term of his employment, Biliski was listed as a "Classified" employee.

2. At all relevant times, the defendant Board and the District's employees were acting within the scope of their employment and/or were exercising powers conferred on them under color of the laws of the State of Delaware.

3. On August 8, 2006, Biliski was called off his work assignment and directed to go to the District's human resources office. When he arrived at the office, he met with his immediate supervisor, Ted Ammann ("Ammann") and Debra Davenport ("Davenport"), the District's Manager of Human Resources.

4. At this meeting, plaintiff was given a series of three Memos, which contained allegations relating to plaintiff's job performance. Each Memo was from Ammann and was dated August 7, 2006. At this meeting, Ammann read the memos aloud to him. When Biliski tried to respond to the allegations, Davenport told him to be quiet and listen to Ammann. Biliski wanted to rebut the allegations, but was not given any opportunity to do so. At the conclusion of the meeting, Davenport handed Biliski a letter dated August 8, 2006. The letter stated:

> This letter is a followup to the meeting held today with me and Mr. Ammann. Due to poor work performance, your name will be submitted to the Board of Education for termination. If approved your date of termination will be effective August 11, 2006.

5. Biliski did not receive any advance notice that the meeting was going to take place or that the District intended to terminate his employment. After he was handed the termination letter, Biliski became very agitated and was told to leave the building, which he did.

6.   The letter dated August 8, 2006 that Davenport gave to Biliski  contained no information as to the date, time or place of the Board meeting.  Also, Biliski was not provided with any notice that the subject of his termination would be taken up by the Board on any particular date and time.

7.   After the meeting on August 8, 2006, Biliski did not receive any further notices or communications from either the Board or the District concerning his termination.  After he returned home on August 8th, Biliski re-read the letter that Davenport gave him and realized that the Board had to approve his termination.  He then made phone calls to the individual Board members and left messages on their answering machines to ask them not to fire him until they heard his side of the story.  He received return calls from three of the Board members. On August 16, 2006, Biliski delivered to the District Office a written response that he had composed to the allegations which led to his firing.  Biliski's response was given to Diane Dunmon ("Dunmon"), the Deputy Superintendent for the District, who made copies of the document and had it distributed to the Board members.

8.   The termination of any District employee who is a "classified" employee has to be submitted to the Board for approval.  The decision to terminate an employee is generally initiated by the District, who makes a formal recommendation to the Board.

9.  At the time that Biliski's termination was being considered, the Board had adopted written personnel policies.  Included among the Board's personnel policies was the following:

File: GDPD

SUSPENSION AND DISMISSAL OF CLASSIFIED STAFF MEMBERS

It will be the policy of the Board to strive to assist personnel in every possible way to adjust to their positions and to perform their duties satisfactorily.    Every reasonable effort will be made to avoid dismissing personnel at any level.

No employees will be dismissed except for just and reasonable cause, and only after an investigation has been conducted and written and signed charges have been filed with the Board.  The Board if it decides to proceed on the charges, will notify the employee in writing of the charges and will provide an opportunity for a hearing.

10.  The decision to fire Biliski was initiated by Ammann and was approved by Davenport. Davenport received the three Memos dated August 7th from Ammann, attended the meeting with Ammann and Biliski on August 8th, and then sent a "form" recommendation to Dunmon that Biliski be fired.  The form itself did not specify any reasons for the termination.  Dunmon may have discussed the reasons for Biliski's proposed termination with Davenport, but did not have any specific recollection of any discussions, other than the fact that there were "performance issues." Dunmon never met with or spoke to Biliski concerning any alleged performance issues.   After, she received the "form" from Davenport, Dunmon prepared a recommendation to the Superintendent and Board that Biliski be fired. The Board was not given any other documentation concerning the recommendation other than the recommendation itself.

11.  The subject of Biliski's termination was placed on the Agenda for the Board meeting that took place on August 16, 2007.  At the time of Biliski's termination, the only notification of meetings of the Board and the agenda for the meeting consisted of notices that were posted in each school building in the District.  Personnel matters do not appear on the public agenda.  The personnel recommendations received by the Board from the District are reviewed and voted on by the Board in an "executive session" that takes place before the public meeting of the Board.  In cases involving a termination, the Board typically would get a verbal report of the reasons for the termination, but

-3-

not any documentation.   The discussions that take place in the "executive session" are not recorded. Biliski was not present for the Board meeting.  In personnel matters, the Board generally follows the recommendation made by the District.  Although the  Board has the final say on the subject, as a practical matter, the Board has delegated the fact-finding process leading to a termination recommendation to the District. The Board voted to approve Biliski's termination.

12.   On August 21, 2006, Dunmon received a letter from Biliski requesting a meeting concerning his termination.  Dunmon did not respond to Biliski's request.  The Board/District did not provide Biliski with any form of hearing after the Board voted to approve his termination.

13.   Shortly after Biliski was fired, he filed a claim for unemployment benefits with the Delaware State Department of Labor.  His claim was initially rejected and he filed a timely request for a hearing before an Appeals Referee.  A hearing was scheduled on October 16, 2006 and notice of the hearing was sent to the District.  The District was aware that Biliski had filed a claim for unemployment benefits, but no one from the District attended the Referee Hearing.  At the Referee Hearing, the Referee held that Biliski was fired without "just cause" and was entitled to receive unemployment benefits.

14.   Plaintiff is entitled to an award of back pay from the effective date of his termination, August 11, 2006 through the date (presently unknown) that the defendants provide him with a hearing that meets the minimum requirements of procedural due process.  At the time of his termination, plaintiff's gross annual rate of pay was $40,824.00 or $111.85 per day (excluding the value of fringe benefits).  Plaintiff is also entitled to be reimbursed for COBRA payments in the amount of  $6,097.00 ($496.00 per month for 13 months) and for the sum of $3,000.00 because he was forced to sell his SUV at discount of $3000.00 from fair market value due to unemployment.

## Conclusions of Law

1.   The written personnel policies adopted by the Board/District, which provide that "classified" employees cannot be fired except for "just cause," are sufficient to create a "property interest" in continued employment that is protected under the Due Process Clause of the 14th

Amendment.  See, *Board of Regents v. Roth*, 408 U.S. 564, 576-577 (1972) (claims of entitlement to "property" are not created by the Constitution; rather, they are created by state laws that "secure certain benefits and that support claims of entitlement to those benefits"); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985) (In order to bring a claim for violation of procedural due process based on discharge from a job with a public employer, a claimant must prove that he had a constitutionally protected property right in continued employment); *Kelly v. Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997) (finding "property interest" in continued employment where state law provided that "no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force").

2.  A claim that the plaintiff was deprived of a protected property interest in continued employment without being afforded the minimum requirements of procedural due process is actionable under 42 U.S.C. §1983.  *Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990) (deprivation of property without providing procedural due process is actionable under §1983).

3.  The procedures actually employed by the defendants to terminate plaintiff's employment did not comport with the requirements of procedural due process under the Constitution.  The fundamental requirement of due process is the "opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  In making this determination, the court must balance (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest."  *Gilbert v. Homar*, 520 U.S. 924, 931-932 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Where the deprivation involves the permanent loss of employment, the minimum requirements of due process are well established.  In the absence of unusual circumstances, if an

employee has a property interest in continued employment, as here, that employee is entitled to a pre-termination opportunity to tell his side of the story to the decision-maker.  In *Anapol v. University of Delaware*, 412 F. Supp. 675, 678 n.8 (D. Del.1976), the court determined that the minimum requirements of due process included: (1) clear notice of the charges being considered, (2) a reasonable time interval to marshal facts and evidence, (3) an explanation of the substance of the evidence supporting the charges, and (4) an opportunity to present (plaintiff's) side of the case in a manner which will permit the decision maker to weigh both sides.  These requirements have been consistently adhered to in subsequent decisions in the District of Delaware.  See, *Knotts v. Bewick*, 467 F.Supp. 931, 934-935 (D. Del. 1979); *Hickey v New Castle County*, 428 F.Supp. 606, 610 (D. Del. 1977); *Hawkins v. Board of Public Education*,468 F.Supp. 201, 208 (D. Del. 1979).

In this case, it is clear that the procedures employed by the defendants did not meet *Anapol's* minimum due process requirements.  On August 8, 2006, Biliski was summoned off the job and was directed to attend a meeting with Ammann and Davenport. There is no evidence in the record that Biliski received any advance notice that this meeting was going to take place, or that the purpose of the meeting was to terminate his employment.  At this meeting, he was given a copy of three Memos, all dated August 7, 2006, which contained allegations of poor job performance.  When Biliski attempted to speak up to defend himself, he was told to be quiet and listen to Ammann.  It is also clear that the purpose of this meeting was to terminate Biliski's employment.  At the conclusion of the meeting, Biliksi was handed a fourth Memo, dated August 8, 2006 informing him that his name would be submitted to the Board for termination.  These procedures clearly did not comport with the minimum requirements of due process.  See, *Hawkins*, 468 F.Supp., at 209-210.  Although the August 8th letter informed Biliski that the District was recommending to the Board that his employment be terminated, the letter did not inform Biliski that he could appear before the Board to contest his termination.  The letter also did not inform Biliski as to the time and place of the Board

-6-

meeting.[1]  Such total lack of notice or opportunity to be heard by the Board **before he was terminated** also violated *Anapol's* minimum requirements of due process.  *Id.*, at 210-211.

Even if the Court were to conclude that the pre-termination procedures employed were constitutionally adequate, the defendants were also required to provide Biliski with constitutionally adequate post-deprivation due process.  See, *Loudermill*, 470 U.S. at 545. (The adequacy and formality of the pre-termination process hinges on two components: "the importance of the [property] interest involved and the **nature of the subsequent proceeding")**.  The property right to one's livelihood is extremely important.  *Id.*, at 543 ("The significance of the private interest to retaining employment cannot be gainsaid").  If the subsequent proceedings are limited, or non-existent, the due process requirements for the pre-termination proceedings become more substantial.  In other words, "the [pre-termination] hearing must be more or less elaborate in inverse proportion to the adequacy of post-termination proceedings." *Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523, *14 (D. Del. 1994). See, *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("A public employee dismissible only for cause [is] entitled to a very limited hearing prior to his termination, **to be followed by a more comprehensive post-termination hearing")**.[2]   In other words, merely providing a "limited" pre-termination hearing does not satisfy due process unless "a more comprehensive post-termination hearing" is also provided.  In this case, it is undisputed that Biliski was not provided with any post-termination hearing whatsoever.  Furthermore, it is undisputed that when Biliski arguably made a request for a post-termination hearing, that request was ignored by the

---

[1] There is nothing in the record to suggest that Biliski was directly notified when or where the Board meeting would take place.  Furthermore,  even if the posting of the Board's agenda satisfied the "notice" requirements of due process, the posting was  still deficient because the posted agenda does not inform that personnel matters, such as Biliski's termination, are taken up by the Board **before** the public meeting.

[2] In *Gilbert*, the court held that a pre-termination hearing should be an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action ... pre-termination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story."  *Id.*, at 929.

District.  If a post-termination hearing is either not available, or is not provided, the conclusion inexorably follows that merely providing a *Gilbert* type pre-termination hearing does not satisfy due process.  As the court held in *Hameli*:

> [T]he Court has held that defendants' error was the inadequate procedures afforded plaintiff.  It can be characterized as a failure to provide post-termination procedures, or a failure to provide adequate pre-termination procedures in light of the decision not to provide post-termination procedures.  In any event, the injury is unchanged: plaintiff has lost a valuable property right without due process.

*Id.*, 1994 U.S. Dist. LEXIS at *23..

4.  The defendants are precluded, under the doctrine of collateral estoppel, from claiming that they had "just cause" to terminate plaintiff's employment based on the proceedings held before the Delaware Department of Labor concerning plaintiff's claim for unemployment compensation benefits.  See, *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999) (In order for collateral estoppel to apply, (1) the issue decided in the prior adjudication must be identical to the one presented in the later action, (2) there must be a final judgment on the merits and (3) the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication and have had a full and fair opportunity to litigate the issue in question in the prior action).  In this case all of the requirement for application of the doctrine are present.

5.  The plaintiff is entitled to an award of back pay for the violation of his right to receive procedural due process?  See, *Anapol v. University of Delaware*, 412 F. Supp. 675, 680 (D.Del. 1976) (the appropriate remedy for a defendant's failure to provide constitutionally adequate pre-deprivation or post-deprivation due process is reinstatement with back pay until such time as a proper post-termination hearing is held); *Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523, *23-*25 (D. Del. 1994) (accord).

6. Any back pay award should not be reduced on account of unemployment compensation paid to the plaintiff. See, *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 85 (3d Cir. 1983)

_/s/ Joseph M. Bernstein_
JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
Attorney for Plaintiff

Dated: February 4, 2008

**SCHEDULE 2(h)**

**DEFENDANTS' PROPOSED FINDINGS OF FACT**

1.      In January, 2001, Plaintiff, Edward A. Biliski ("Biliski"), applied for a Computer Technician position at Red Clay.

2.      Biliski was interviewed by Charles Edward "Ted" Ammann ("Ammann"), Red Clay's current Manager of Technology, and Keith Cox, a Network Engineer for Red Clay.

3.      In March, 2001, Biliski was hired as a Computer Technician in Red Clay's Technology Department.

4.      In 2002, Biliski was promoted to Help Desk Coordinator.  Later that same year, Biliski voluntarily returned to his Computer Technician position, because he did not enjoy the Help Desk assignment and disliked two other Help Desk Coordinators.

5.      Biliski remained a Computer Technician until his termination in August 2006.

6.      Biliski's work was satisfactory during first few years of his employment.

7.      As his employment continued, however, he harbored resentments and misconceptions against his supervisors.

8.      He believed that his supervisors were involved in a "conspiracy" to get rid of him.

9.      For example, he believed that his supervisors had placed a "tracking device" in his car, so he parked it on a public roadway where he could watch it.

10.      Biliski also thought a returned shipment to a computer supplier was an effort to set him up for a "theft" claim, even though there was never any indication that anyone from the District thought he had stolen anything.

11.      When a vandal threw a rock through the window in the office where his desk was located, Biliski believed one of his co-workers had done it at the instigation of his boss, Ted Amman.

12.     He saved the rock as "evidence."

13.     Whether as a result of these unrealistic beliefs or otherwise, in 2006, Biliski's attitude and performance declined markedly.

14.     Beginning in March of 2006, Biliski had several performance issues and workplace confrontations that led to his dismissal.

15.     On March 30, 2006, Biliski had a meeting with Cara Gaudino ("Gaudino"), the Service Coordinator for the Technology Department and his direct supervisor, and Ammann.

16.     Biliski's supervisors discussed his performance problems with him.

17.     At the March 30, 2006 meeting, Biliski was criticized for not performing his assignment of cleaning up the Rapid Install Package ("RIP") computer installation files.  Biliski had not completed this assignment.  He was counseled about his failure to complete assigned duties.

18.     At the March 30, 2006 meeting, Biliski was also counseled about his failure to complete another assignment, his responsibilities with respect to the Northwest Evaluation Association ("NWEA") testing preparation.

19.     At the March 30, 2006 performance counseling, Biliski was further counseled for his behavior during a Customer Service Training Seminar.

20.     Gaudino and Ammann found his conduct at the seminar to be embarrassing and inappropriate.

21.     Biliski agrees that his supervisors discussed these performance problems with him on March 30, 2006.

22.     On July 31, 2006, Biliski was again counseled for missing a deadline.

23.    On July 24, 2006, Biliski was given a Work Order to complete a wiring job in the Intermediate Distribution Facility ("IDF") at Conrad Middle School that was required for a construction project.

24.    The deadline for this assignment was July 28, 2006, because outside contractors the District hired could not begin their work until it was completed.

25.    Biliski did not start the assignment and never informed his supervisors that the work would not be completed by the deadline.

26.    On July 28, 2006, Ammann discovered that Biliski had not completed his assignment, and, as a result, he had to assign another Computer Technician at the last minute to complete the work.

27.    On July 31, 2006, Ammann met with Biliski to discuss the missed deadline.

28.    Biliski advised Ammann that he overlooked the Work Order.

29.    Ammann counseled Biliski about his failure to perform his work by the assigned deadline.

30.    Ammann warned Biliski that any future missed deadlines would result in disciplinary action up to and including termination.

31.    Ammann wrote a disciplinary memo outlining the missed assignment and memorializing the discussions he had with Biliski.

32.    Biliski was instructed to return to the office to sign the disciplinary memorandum and that if Ammann was not in the office, he should ask his secretary, Rhonda Henry-Carter ("Henry-Carter"), for the memo.

33.    When Biliski returned to the office, Ammann was not there.  Henry-Carter gave the disciplinary memo to Biliski and asked him to sign it as Ammann had directed.

34.    Biliski became belligerent and told Henry-Carter that he would not sign the "f--king memo."

35.    Biliski left the building without telling Henry-Carter, or his supervisors, where he was going in violation of the policy.

36.    Biliski's performance and attitude continued to deteriorate after his meeting with Ammann on July 31, 2006.

37.    Ammann discussed the situation with Debra Davenport ("Davenport"), Manager of Human Resources, and was instructed to document Biliski's performance problems.

38.    On August 8, 2006, Davenport and Ammann met with Biliski and gave him three disciplinary memoranda.

39.    At the August 8, 2006 meeting, Biliski received a disciplinary memo for his inappropriate conduct and leaving the office without notifying his supervisor, twice, once on July 31, 2006, and once on August 1, 2006.

40.    Biliski admitted that on both occasions, he left the Technology Department without notifying his supervisors and never met with either Norris or Davenport.

41.    At the August 8, 2006 hearing, Biliski also received a disciplinary memo, because he ignored his supervisor's instructions to park in the front of the building during an extensive construction project.

42.    Biliski admitted that he received an email advising him and others that parking was prohibited at that location, but claimed that he closed it before he "finished" reading it.

43.    The third disciplinary memorandum Biliski received at the August 8th meeting was for his refusal to carry out an assignment from Technician Assistant, Barbara Moore ("Moore").

44.     On August 1, 2006, a van arrived at the Technology Office loaded with computer equipment.  Moore went to the Technician Department and asked everyone to help unload the van.

45.     After Moore asked the Technicians to help unload the van, Biliski became belligerent and told Moore he had been working in the schools all day, it was hot, and he was not going to do it.

46.     Because of Biliski's insubordination and his use of profanity, Moore reported the incident to Ammann.

47.     Biliski was disciplined for his conduct at the August 8, 2006 meeting with Ammann and Davenport.

48.     During the August 8 meeting with Davenport and Ammann, Biliski attempted to talk over Davenport and Ammann several times and was asked to wait until they were finished.

49.     After Ammann and Davenport reviewed the three disciplinary memoranda with Biliski, he was given an opportunity to respond to the charges.

50.     Since Biliski offered no explanation for his actions, Davenport handed him a letter informing him that due to his poor work performance, his name would be submitted to the Board for termination.

51.     When Biliski saw the letter, he became extremely angry.

52.     Biliski stood up, took off his I.D. badge, threw the badge at Ammann, and called him a "no good motherf--ker."

53.     Biliski also threw a pencil at Ammann, hitting him in the chest.

54.     Davenport was shaken, told Biliski it was time for him to leave, and he left the building.

55.     Biliski thereafter left the premises.

56.     After Biliski received his termination notice from Davenport, he called individual Board members at home and left messages with some of them on their answering machines.

57.     Biliski asked the Board members to listen to his side of the story and read his rebuttal letter before they voted to terminate his employment.

58.     Irwin J. Becnel, Jr., President of the Board, recalls speaking with Biliski.

59.     Biliski told Becnel that he wanted the Board to review his rebuttal letter and attachments prior to making a decision.

60.     Becnel advised Biliski to take the rebuttal letter and attachments to Robbie Miller, the Board secretary, and she would distribute it to the Board.

61.     Biliski submitted a rebuttal letter to the District Office for copying and submission to the Board.

62.     The District office received Biliski's rebuttal documents and put them in the Board packet for the Board meeting on August 16, 2006.

63.     The Board discussed Biliski's termination during the August 16 Executive Session.

64.     The Board determined that the documents Biliski submitted did not refute the charges supporting the recommendation for termination.

65.     After reviewing Biliski's rebuttal letter, the Board approved Biliski's termination.

66.     Davenport sent Biliski a letter on August 17, 2006, notifying him of the Board's action to terminate his employment and outlining his pension and benefit information.

67.     Biliski was not a member of a collective bargaining unit nor subject to an employment contract.

68.     District officials all believed that he was an "employee at will" subject to discretionary dismissal.

69.     Biliski's rebuttal letter submitted to the Board noted that he did not believe that he had any job protection in his position as a Computer Technician.

70.     The only basis for the allegation in his complaint that he had an expectation of ongoing employment was his claim that the length of his service at Red Clay created such an expenditure.

71.     During the discovery conducted in the case, Red Clay discovered and produced a personnel policy adopted over twenty years ago in 1985.

72.     The policy had never been applied to at-will, non-union employees such as Biliski.

73.     Becnel testified that when the policy was adopted in 1985, there were no non-union classified employees employed by Red Clay.

74.     The policy was established to conform with the union contracts in effect at that time and, in fact, the policy itself references those union contracts.

75.     Biliski was not aware of the policy during his employment and could not have relied on the policy in any way.

76.     No Red Clay officer represented to Biliski that he had a right to continued employment.

## DEFENDANT'S CONCLUSION OF LAW

1.      Biliski did not have a protected property interest in his employment with Red

Clay as a Computer Technician and was not entitled to any procedural due process prior to his

termination.  *Regents of State Colleges v. Roth*, 408 U.S. 564 (1972); *MacNamara v. County*

*Council of Sussex County*, 738 F. Supp. 134, 141 (D. Del. 1990), *aff'd*, 922 F.2d 832 (3d Cir.

1990); *Walls v. City of Milford*, 938 F. Supp. 1218, 1221 (D. Del. 1996) (to support a claim of a

procedural due process in connection with termination from employment, a plaintiff must

"establish that he has a constitutionally protected property interest in his continued

employment.")  "[W]hen the interest deprived is not of a constitutional magnitude, the Due

Process Clause does not apply."  *Blizzard v. Watson*, 892 F. Supp. 587, 592 (D. Del. 1995).

2.      Biliski did not have a "legitimate claim of entitlement to continued employment."

*Morris v. Bd. of Educ. of the Laurel Sch. Dist.*, 401 F. Supp. 188, 208 (D. Del. 1975) (quoting

*Roth*, 408 U.S. at 577).

3.      The sufficiency of a claim of a legitimate entitlement to continued employment is

a question of state, not federal law.  *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *see also Stiner v.*

*Univ. of Del.*, Civ. No. 02-312, 2004 U.S. Dist. LEXIS 17221 (D. Del. Aug. 27, 2004).

4.      As a matter of Delaware state law, the 1985 policy also does not give Biliski a

legitimate claim of entitlement in continued employment because Delaware is an employment-

at-will state.  *Haney v. Laub*, 312 A. 2d 330, 332 (Del. Super. 1973).

5.      Employer policies such as those contained in an employee handbook concerning

grounds for termination of employment or other discipline do not rise to the level of an

employment contract and do not alter an employee's at-will status.  *Gaines v. Wilm. Trust Co.*,

C.A. No. 90C-MR-135, 1991 Del. Super. LEXIS 207 (Del. Super. June 3, 1997); *see also Haney*

*at* 332.

6.    A unilateral expression of a policy by an employer such as that provided in a handbook does not modify an employee's at-will status under Delaware State law.  *Gaines* at *5.

7.    Courts have applied traditional contract principles in determining whether employee handbooks or policies alter the at-will status of an employee.  *Mann v. Cargill Poultry*, C.A. No. 88C-AU37, 1999 Del. Super. LEXIS 225, *19 (Del. Super. June 13, 1990).

8.    Because the 1985 policy was not known to Biliski until after he filed his complaint, he could not relied on it to form the basis of his terms of employment.  In *Hunt v. Chicago Housing Auth.*, 1988 U.S. Dist. LEXIS 3295 (N.D. Ill. 1988), *rev'd on other grounds,* 1992 U.S. App. LEXIS 21810 (7th Cir. 1992).

9.    Biliski was provided with procedural due process that met constitutional standards even if the Court were to conclude that he had a property interest for constitutional law purposes.

10.    Biliski received adequate notice of the reasons for his termination and an opportunity to refute those reasons prior to the decision to terminate him.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  ("Where a discharged public employee is given notice of the charges, an adequate explanation of the evidence, and an adequate opportunity to present his side of the story, his due process rights are not violated.")  See also *Barkauskie v. Indian River School Dist.*, 951 F. Supp. 519, 533 (D. Del. 1996).

11.    Notice of the charges need not be formal and need not be in great detail and need only provide the employee a meaningful opportunity to respond in the sense that he must know the substance of the case the employer has against him.  *Id.*

12.    Procedural due process also requires some kind of a hearing prior to discharge "to provide an initial check against whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action."  *Walls v. City of Milford*, 938 F.

Supp. 1218, 1222 (D. Del. 1996) (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-546 (1985).

13.    The opportunity to be heard need not be elaborate and it can vary depending on the importance of the interests involved and the nature of the subsequent proceedings.

14.    The opportunity to present reasons, either in person or in writing, as to why a proposed action should not be taken, satisfies procedural due process requirements. *Id.*

15.    Biliski was counselled several times before his termination about his performance problems, and his counseling constitutes notice of the reasons for his dismissal for procedural due process purposes.

16.    Biliski's presentation of a rebuttal letter to the defendant Board setting forth the reasons why he should not be terminated satisfied constitutional standards for a notice and opportunity to be heard.

17.    Even if the Court were to find that the 1985 policy applies to Biliski, the failure to follow the specific procedures set forth does not constitute a denial of his federal due process rights.

18.    The fact that a valid school policy or state law is not followed is not by itself significant in determining whether procedural due process has been violated. *See Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 226-27 (4th Cir. 1984) (*citing Atencio v. Bd. of Educ.*, 658 F.2d 774 (10th Cir. 1981)). *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993)("a violation of state law . . . is not a denial of due process, even if the state law confers a procedural right"). "The procedural protections that attach to a constitutionally protected interest are defined by federal constitutional standards of due process and not state procedural rules or statutes whether or not those state procedures fall short of, satisfy, or exceed the constitutional minimum."

*Brandywine Affiliate, NCCEA/DSEA v. Bd. of Educ. of the Brandywine Sch. Dist.*, 555 F. Supp. 852 (D. Del. 1983).

19.     If the Court concludes that Biliski: a) had a constitutionally protected property right and b) his procedural due process rights were violated, Biliski still cannot prevail because he has not suffered any harm and is not entitled to any award for damages.

20.     "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

21.     If a technical violation of procedural due process is found, the Plaintiff is not automatically entitled to an award of damages.

22.     The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. *Nicholas v. Penna. State Univ.*, 227 F.2d 133 (3rd Cir. 2000) (quoting *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976)).

23.     In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, the Court must presume that the official action was regular. *Bishop*, 426 U.S. at 350.

24.     The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions. *Id.*

25.     Defendant has proved that the decision to terminate plaintiff would have been the same even if the correct process were followed.

26.     Biliski has therefore not been harmed even if the Court found a procedure due process violation, and he is not entitled to an award of damages. *Alexander v. Polk*, 750 F. 2d 250, 263 (3d. Cir. 1984); see also *Knotts v. Bewick*, 467 F. Supp. 931, 936 (D. Del. 1979).

27.    Biliski's employment as a Computer Technician does not rise to a fundamental right for constitutional purposes. *Nicholas,* 227 F.2d at 142.

28.    Biliski was not terminated for "arbitrary or irrational" reasons. *Id.* at 142.

29.    The individual Board Members, Irwin J. Becnel, Jr., Charles Cavanaugh, Gary Linarducci, James J. Buckley, Marguerite Vavala, Yvonne Johnson, and Martin A. Wilson, Sr., and Superintendent of Red Clay, Robert J. Andrzejewski, ("Individual Defendants"), as governmental officials, are entitled to qualified immunity.

30.    Qualified immunity gives the Individual Defendants "immunity from suit rather than a mere defense to liability . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original); *We, Inc. v. Philadelphia*, 174 F.3d 322, 325 (3d Cir. 1999)

31.    The Individual Defendants' entitlement to qualified immunity is a question of law, and the burden is on the Plaintiff to defeat their claim of qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987).

32.    Under the qualified immunity doctrine, the Individual Defendants are "shielded from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

33.    Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See also, Harlow*, 547 U.S. at 807 ([O]ur cases make plain that "qualified immunity represents the norm."); *Butz v. Economou*, 438 U.S. 478, 508 (1978) ("qualified immunity from damages should be the general rule for executive officials charged with constitutional violations . . . .").

34.    The Individual Defendants are entitled to an amount of qualified immunity because plaintiff has not established a constitutional violation.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82, 86 (3d Cir. 1998); *In re City of Philadelphia Litig.*, 49 F.3d 945, 961 (3d Cir. 1995) (*quoting Acierno v. Cloutier*, 40 F.3d 606 n.7 (3d Cir. 1994)).

35.    The Individual Defendants cannot be liable unless the constitutional right allegedly violated was "'clearly established' at the time [they] acted."  *Acierno*, 40 F.3d at 606 (citing *Siegert*, 500 U.S. at 232); *Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 678 (D. Del. 1999).

36.    A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Rouse v. Plantier*, 182 F.3d 192, 196 (3d Cir. 1999) (citing *Anderson*, 483 U.S. at 640 (1987)).

37.    "The unlawfulness of [his] action must be <u>apparent</u> from previous court decisions."  *Hameli v. Nazario*, 1994 U.S. Dist. LEXIS 20523, *27 (D. Del. Sept. 2, 1994); *Lee v. Mahalich*, 847 F.2d 66, 69 (3d Cir. 1988) (qualified immunity should be denied only if "a reasonable jury could find that the unlawfulness of the [defendants'] actions was so 'apparent' that no reasonable [official] could have believed his [or her] actions were lawful.").

38.    There must also be at least some factual correspondence between the legal precedents and the issue at hand for the Individual Defendants to be liable.  *Rappa v. Hollins*, 991 F. Supp. 367, 375 (D. Del. 1997) (citing *Anderson*, 483 U.S. at 640).

39.    In this case, the testimony shows that defendants did not believe that the policy that Biliski now relies on was considered to be applicable to him.

40.    Biliski himself was not aware of the policy and therefore could not have as a matter of law relied on the policy with respect to any expectation of continued employment.

41.    There is no dispute that Delaware is an employment-at-will state.

42.    The contours of any claimed constitutional "property interest" in this case were not clearly defined.

43.    The Board acted in good faith by reviewing Biliski's termination in accordance with its usual practice.

44.    A reasonable public official in the role of a school board member would not have known that Biliski's procedural due process rights may have been violated.

45.    Plaintiff's argument that collateral estoppel applies is without merit.

46.    Collateral estoppel is a doctrine of public policy "designed to put an end to litigation once a party has had his day in court and a full opportunity to present his case." *Greene v. Connecticut Mutual of Life Insurance Co*., C. A. No. 4869, 1979 Del. Ch. LEXIS 380, *8 (Del. Ch. Sept. 19, 1979).

47.    In determining whether the doctrine should be applied, courts must weigh the principles of fairness and justice and statutory public policy against the desire to end litigation and avoid conflicting decisions.  *Messick v. Star Enterprise,* 655 A.2d 1209, 1212 (Del. Supr. 1995) (*citing Continental Can Co. v. Hudson Foam Latex Prod.*, 324 A.2d 60, 61-62 (1974)) (the doctrine should be applied "to contribute to the greatest good for the greatest number, so long as fairness is not sacrificed on the altar.")

48.    The policy goal underlying collateral estoppel must be balanced against fundamental fairness to the litigants.

49.    An important consideration in assessing the fairness of applying collateral estoppel is whether the party against whom issue preclusion is invoked had "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."  *Restatement (Second) of Judgments* § 28(5).  *See also PIC, Inc. v. The Prescon, Corp.* 485 F. Supp. 1302,

1311(D. Del. 1980) (noting the importance of the "adversariness and adequacy of the first proceeding.")

50.     The purpose of providing unemployment benefits is to give quick relief to applicants for unemployment insurance.  In *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258 (3d Cir. 1994)

51.     To give preclusive effect to unemployment decisions would undermine the goal of providing quick relief to applicants for unemployment compensation by encouraging vigorous employer defenses against all such claims.  *Id.*

52.     These are the important distinctions between an administrative hearing and litigation in the courts.  The tools available to prosecute a claim in the unemployment context is different from that in an action in federal court.  *Id.* (*citing Restatement (Second) of Judgments* § 29(2), Cmt. d at 291-294 (1982).

53.     The policy goals of the collateral estoppel doctrine are outweighed by the inequity of permitting an administrative determination in the unemployment context to have the future ramification of a binding judgment in a subsequent federal constitution claim.

54.     The requirements for applying the doctrine have not been satisfied in this case even if the Court applied the doctrine.

55.     The test for applying collateral estoppel requires that (1) a question of fact essential to the judgment (2) be litigated, and (3) determined (4) by a valid and final judgment." *Healthtrio, Inc. Margules*, C.A. No. 06C-04-196, 2007 Del. Super. LEXIS 34 at *34 (Del. Super. Jan. 16, 2007) (*quoting Taylor v. State,* 402 A.2d 373 (Del. 1979)).

56.     In this case, the requirements for the application of the doctrine have not been met.

57.    The issue before the Appeals Referee was whether or not Biliski was terminated for "just cause" as that term is defined under the unemployment compensation statute and case law.  *See* 19 *Del. C.* § 3314(2).

58.    Conduct that arises to the level of "just cause" for the denial of unemployment benefits requires showing of "willful or wanton" acts in violation of either the employer's interest or of the employee's duties or expected standard of conduct.  *Abex Corp. v. Todd*, 235 A.2d 271 (Del. Super. 1967).  Just cause for unemployment compensation purposes does not include mere inefficiency, poor performance or failure to perform as a result of inability or incapacity, ordinary negligence, isolated instances, or good faith errors of judgment. *Starky v. Unemployment Appeals Board*, 340 A.2d 165 (Del. Super. 1975).

59.    In this case, the issue considered by the Appeals Referee was whether Biliski was terminated for "willful or wanton misconduct," not just incompetence or inability.

60.    The Defendant Board of Education was not required to use such a high standard in deciding whether to dismiss Biliski.

61.    Because the standards for "just cause" are significantly different, the "questions of fact essential to the judgment" are different in the unemployment compensation administrative hearing from those the Defendant Employer may consider in deciding to terminate Plaintiff's employment.

62.    The Board did not have an opportunity to litigate the issue of whether there was just cause to terminate Biliski in the unemployment proceeding because Red Clay was not aware of the hearing until after it was over and did not attend.

63.    The requirements for the application of collateral estoppel are not satisfied as a matter of law in this case.

64. As a result, the doctrine does not preclude the Defendants from arguing to this Court that Biliski would have been terminated regardless of the process he received and/or that his termination was not arbitrary and capricious.

65. The unemployment finding also does not preclude the Board from finding that Biliski was terminated for just cause under the 1985 policy, if it is found to be applicable in this case.

66. It is clear that the Board would have terminated Biliski regardless of the procedure given to him prior to his termination.

67. As a result, as a matter of law, Biliski has not suffered any harm and is not entitled to recover any damages, even if the court finds that a constitutional procedural due process violation has occurred.